**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WEST FLAGLER ASSOCIATES, LTD., a
Florida Limited Partnership d/b/a MAGIC
CITY CASINO,

BONITA-FORT MYERS CORPORATION,
a Florida Corporation d/b/a BONITA
SPRINGS POKER ROOM,

        *Plaintiffs*,                     Civil Action No.  1:21-cv-02192-DLF

v.

DEB HAALAND, in her official capacity as
SECRETARY OF THE UNITED STATES
DEPARTMENT OF THE INTERIOR,

UNITED STATES DEPARTMENT OF
THE INTERIOR,

        *Defendants*.

---

**SEMINOLE TRIBE OF FLORIDA'S MOTION FOR LIMITED INTERVENTION AND
STATEMENT OF POINTS OF LAW AND AUTHORITIES IN SUPPORT**

      The Seminole Tribe of Florida moves to intervene as of right pursuant to Rule 24(a) of the

Federal Rules of Civil Procedure for the limited purpose of filing a Motion to Dismiss, a copy of

which is filed herewith.[1]  Consistent with Local Rule 7(m), counsel for the Tribe has made a good-

faith effort to determine the positions of Federal Defendants and Plaintiffs.  Federal Defendants

state that they do not oppose the Motion for Limited Intervention and will respond to the Tribe's

---

[1] The Tribe has moved to intervene in this case for the sole and limited purpose of filing this
Motion to Dismiss pursuant to Rule 19 and Rule 12(b)(7) of the Federal Rules of Civil Procedure
and has expressly reserved its immunity from suit.  Recognizing the significance of any such
waiver, the only manner in which the Tribe may lawfully waive its immunity is by resolution duly
enacted by the Tribal Council of the Seminole Tribe of Florida sitting in legal session.  *See*
Seminole Tribe of Florida Ordinance C-01-95, as amended by Ordinance 84-01 (Exhibits A, B).
No such resolution has been adopted by the Tribal Council.

Motion to Dismiss after it is filed.  Plaintiffs state that they oppose this Motion.

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................................1

ARGUMENT .........................................................................................................................3

   I.    Limited Intervention Is Appropriate ...........................................................................4

   II.   The Tribe Has Article III Standing .............................................................................5

   III.  The Tribe Has a Right To Intervene in the Case Under Rule 24(a) ...................................8

        A.  Timeliness .......................................................................................................8

        B.  Interest in Subject Matter ..................................................................................9

        C.  Impairment of Interest ......................................................................................9

        D.  Adequacy of Representation ..............................................................................10

CONCLUSION .......................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*100Reporters LLC v. U.S. Dep't of Just.*,
  307 F.R.D. 269 (D.D.C. 2014)......................................................................5, 8, 9, 10, 11

*Am. Horse Prot. Ass'n, Inc. v. Veneman*,
  200 F.R.D. 153 (D.D.C. 2001)......................................................................................6

*\*Amador Cnty. v. Jewell*,
  312 F.R.D. 11 (D.D.C. 2013), *aff'd sub nom. Amador Cnty. v. U.S. Dep't of the Interior*
  772 F.3d 901 (D.C. Cir. 2014) ...........................................................................5, 6, 9, 10

*Cayuga Nation v. Zinke*,
  324 F.R.D. 277 (D.D.C. 2018).....................................................................................11

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) .............................................................................5, 8, 11

*Dimond v. District of Columbia*,
  792 F.2d 179 (D.C. Cir. 1986) ...................................................................................11

*Eco Tour Adventures, Inc. v. Zinke*,
  249 F. Supp. 3d 360 (D.D.C. 2017) ............................................................................12

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*,
  883 F.2d 890 (10th Cir. 1989) ...................................................................................13

*\*Forest Cnty. Potawatomi Cmty. v. United States*,
  317 F.R.D. 6 (D.D.C. 2016)......................................................................... 6, 9, 10, 12

*\*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ........................................................................... *passim*

*Hodgson v. United Mine Workers*,
  473 F.2d 118 (D.C. Cir. 1972) .....................................................................................8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................................5, 6

*\*MGM Glob. Resorts Dev., LLC v. U.S. Dep't of the Interior*,
  No. 19-2377 (RC), 2020 WL 5545496 (D.D.C. Sept. 16, 2020)........................... *passim*

*\*PPI, Inc. v. Kempthorne*,
  No. 08-cv-248-SPM, 2008 WL 2705431 (N.D. Fla. July 8, 2008) .................4, 7, 10, 13

ii

*Rincon Band of Luiseño Mission Indians v. Schwarzenegger*,
   602 F.3d 1019 (9th Cir. 2010) ................................................................3

*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ...............................................................9

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
   331 F.R.D. 5 (D.D.C. 2019) .................................................................12

*Smoke v. Norton*,
   252 F.3d 468 (D.C. Cir. 2001) ...............................................................8

*Texas v. New Mexico*,
   482 U.S. 124 (1987) ............................................................................12

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) ............................................................................11

*Tucker v. Nat'l Linen Serv. Corp.*,
   200 F.2d 858 (5th Cir. 1953) ...............................................................12

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) .............................................................11

*Vann v. Kempthorne*,
   534 F.3d 741 (D.C. Cir. 2008) ...............................................................5

*Ward v. Deavers*,
   203 F.2d 72 (D.C. Cir. 1953) ...............................................................12

## STATUTES

25 U.S.C. § 2710(d)(3)(B) ........................................................................7
25 U.S.C. § 2710(d)(4) ............................................................................3
Fla. Stat. § 285.710(13) ..........................................................................2
Fla. Stat. § 285.710(13)(b) ......................................................................2
Fla. Stat. § 285.710(13)(b)(7) ..................................................................2

## RULES

Fed. R. Civ. P. 12(b)(7) ...........................................................................5
Fed. R. Civ. P. 19 ............................................................................4, 5, 13
Fed. R. Civ. P. 24(a) .....................................................................4, 8, 9, 10
Fed. R. Civ. P. 24(a)(2) ........................................................................8, 9

iii

**REGULATIONS**

86 Fed. Reg. 44,037 (Aug. 11, 2021).....................................................................1

**MISCELLANEOUS**

3B J. Moore, Federal Practice 24.09-1 (4) (1969) .............................................11

## BACKGROUND

In 2010, the Seminole Tribe of Florida (Tribe) and the State of Florida (State) entered into an Indian Gaming Regulatory Act (IGRA) gaming compact.  2010 Compact, ECF No. 1-4.  The 2010 Compact authorized the Tribe to offer various forms of class III casino-style gaming on its Florida reservations.  In consideration for obtaining a substantial degree of exclusivity in exchange for those gaming rights, the Tribe agreed to pay to the State a significant share of its revenue from gaming profits.  The 2010 Compact was due to expire in 2030.

In 2021, after several years of extensive negotiations, the Tribe and the State executed the 2021 Compact to replace the 2010 Compact.  2021 Compact, ECF No. 1-1.  The 2021 Compact was signed by Ron DeSantis, Governor of Florida, and Marcellus Osceola, Jr., Chairman of the Seminole Tribe of Florida, on April 23, 2021, and was amended by the parties on May 17, 2021. 2021 Compact Amendment, ECF No. 1-5.  On May 19, 2021, the 2021 Compact was ratified by an overwhelming bipartisan majority in both houses of the Florida Legislature and was enacted as Chapter 2021-268, Florida Statutes.  *See* Compl., ECF No. 1 ¶ 49; Ratifying Law, ECF No. 1-2. The ratifying legislation was signed into law by Governor DeSantis on May 25, 2021, and became effective that day.  *See* Compl. ¶ 51.  The 2021 Compact was federally approved by operation of law, and notice of that approval was published in the Federal Register on August 11, 2021.  86 Fed. Reg. 44,037 (Aug. 11, 2021).  The 2021 Compact is now in effect.

The term of the 2021 Compact extends to July 31, 2051.  The 2021 Compact adds several new forms of gaming exclusively made available to the Tribe, including sports betting.  Under the 2021 Compact, the Tribe may conduct sports betting through use of electronic devices connected via the internet.  The 2021 Compact deems wagers placed by patrons physically located outside the Tribe's Indian lands but within the State to take place where they are received by servers at the

Tribe's facilities on Indian lands, stating:

> All such [sports betting] wagering shall be deemed at all times to be exclusively conducted by the Tribe at its Facilities where the sports book(s), including servers and devices to conduct the same, are located, including any such wagering undertaken by a Patron physically located in the State but not on Indian Lands using an electronic device connected via the internet, web application or otherwise, including, without limitation, any Patron connected via the internet, web application or otherwise of any Qualified Pari-mutuel Permitholder(s) and regardless of the location in Florida at which a Patron uses the same.

2021 Compact Part III.CC.2, ECF No. 1-1, at 17; *see also* 2021 Compact Part III.CC.3(d), ECF No. 1-1, at 19; 2021 Compact Part IV.A, ECF No. 1-1, at 22.

The State ratifying legislation approving the 2021 Compact contains similar language, stating "[w]agers on sports betting, including wagers made by players physically located within the state using a mobile or other electronic device, shall be deemed to be exclusively conducted by the Tribe where the servers or other devices used to conduct such wagering activity on the Tribe's Indian lands are located." Fla. Stat. § 285.710(13)(b)(7).

The State ratifying legislation also makes it explicitly clear that gaming under the 2021 Compact, including online sports betting, does not violate State law, providing that "[g]ames and gaming activities authorized under this subsection and conducted pursuant to a gaming compact ratified and approved under subsection (3) do not violate the laws of this state." Fla. Stat. § 285.710(13). The State ratifying legislation also provides that, "[f]or the purpose of satisfying the requirement in 25 U.S.C. s. 2710(d)(1)(B) that the gaming activities authorized under an Indian gaming compact must be permitted in the state for any purpose by any person, organization, or entity," certain games are "hereby authorized to be conducted by the Tribe pursuant to the compact," including "sports betting." Fla. Stat. § 285.710(13)(b).

In return for the State's meaningful concession of substantial economic benefit to the Tribe in the form of exclusive gaming rights provided to the Tribe, the Tribe agreed to make significant

revenue share payments to the State, including an unprecedented guaranteed minimum payment of $2.5 billion during the first five years of the 2021 Compact. Without such meaningful concessions, IGRA prohibits revenue share payments to a state. *See* 25 U.S.C. § 2710(d)(4) (prohibiting states from imposing taxes on tribes' IGRA gaming); *Rincon Band of Luiseño Mission Indians v. Schwarzenegger*, 602 F.3d 1019, 1033 (9th Cir. 2010) (permitting states to receive revenue share payments from tribes in exchange for meaningful concessions that provide substantial economic benefits).

The Department of the Interior (Department) issued a letter dated August 6, 2021, explaining its reasons for allowing the 2021 Compact to take effect by operation of law. Letter from Bryan Newland, Principal Deputy Assistant Sec'y – Indian Affairs, Dep't of the Interior, to Marcellus Osceola, Jr., Chairman, Seminole Tribe of Florida (Aug. 6, 2021), ECF No. 1-6. The Department's letter provided a detailed analysis of the legality of the mobile sports betting provisions, and it concluded that "[t]he Department must apply the law in a manner that ensures tribes are not hindered from utilizing new technology in an evolving industry." *Id.* at 6.

Plaintiffs' Complaint seeks an order from this Court vacating and setting aside the Department's deemed approval of the 2021 Compact. It claims the 2021 Compact is unlawful, alleging that it violates IGRA, other federal statues, and the United States Constitution because it includes provisions through which the Tribe will accept wagers on sports betting made by patrons located physically throughout the State, including locations outside the Tribe's Indian lands.

## ARGUMENT

The Tribe has indisputable and vital interests in this litigation, which seeks to invalidate an important compact with significant economic implications that the Tribe negotiated on a government-to-government basis with the State. These interests would be significantly impaired

if this case were to proceed in the Tribe's absence, since Defendants cannot adequately represent the Tribe's unique sovereign and economic interests.   Indeed, in a previous case against the Department challenging the Tribe's 2007 compact, the court found the Tribe's interests were sufficient and the Department's representation inadequate such that the Tribe was a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure.   *PPI, Inc. v. Kempthorne*, No. 08-cv-248-SPM, 2008 WL 2705431, at *4 (N.D. Fla. July 8, 2008) (denying preliminary injunction motion in part for failure to demonstrate substantial likelihood of success). This Motion is timely filed in the early stages of this case, and there is therefore no risk of prejudice to any of the parties due to the timing of the Tribe's Motion.   For these reasons, the Tribe has Article III standing and a right to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

## I.      Limited Intervention Is Appropriate.

This Court recently addressed the appropriateness of limited intervention so that a tribe may protect its sovereign immunity from suit and also ensure that litigation challenging its IGRA compact does not proceed without it.   In *MGM Global Resorts Development, LLC v. U.S. Department of the Interior*, tribes were granted limited intervention for the purpose of filing a motion to dismiss in a case against the Department challenging, among other things, deemed approval of an IGRA compact.   No. 19-2377 (RC), 2020 WL 5545496, at *1 (D.D.C. Sept. 16, 2020).   The tribes intended to argue in their motion to dismiss that they were necessary and indispensable parties under Rule 19 of the Federal Rules of Civil Procedure that could not be joined due to their sovereign immunity.   *Id.* at *3.[2]   The plaintiffs in that case argued unsuccessfully that

---

[2] After briefing on the tribes' motion to dismiss, the plaintiff filed a notice of dismissal without prejudice, and the Court entered the voluntary dismissal without ruling on the tribes' motion to dismiss.

4

the tribes were required to intervene as full parties or not at all.  *Id.* at *5–6.  This Court allowed the tribes to intervene on a limited basis for the purpose of filing their motion to dismiss, preserving their sovereign immunity from suit while doing so.  *Id.* at *6.

The D.C. Circuit in other cases has also allowed limited intervention as an appropriate mechanism through which parties may file motions to dismiss under Rule 19 of the Federal Rules of Civil Procedure based on sovereign immunity.  *See, e.g.*, *Vann v. Kempthorne*, 534 F.3d 741, 745 (D.C. Cir. 2008); *see also Amador Cnty. v. Jewell*, 312 F.R.D. 11, 15 (D.D.C. 2013), *aff'd sub nom. Amador Cnty. v. U.S. Dep't of the Interior*, 772 F.3d 901, 904 (D.C. Cir. 2014).

Here, like the tribes in *MGM Global*, the Tribe seeks to intervene for the limited purpose of filing its Motion to Dismiss.  In its Motion to Dismiss under Rule 12(b)(7) of the Federal Rules of Civil Procedure, the Tribe will establish that it is a necessary and indispensable party under Rule 19 that cannot not be joined due to the Tribe's sovereign immunity.  Such limited intervention is appropriate and indeed necessary.

## II.      The Tribe Has Article III Standing.

The D.C. Circuit requires a party seeking to intervene, even when intervening as a defendant, to establish Article III standing.  *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003); *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 274 (D.D.C. 2014).

To establish standing, a prospective intervenor must show "(1) injury-in-fact, (2) causation, and (3) redressability."  *Fund for Animals, Inc.*, 322 F.3d at 732–33 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To establish injury-in-fact, the injury alleged by the plaintiff must be "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).  To establish causation, the claimed injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citation and alterations omitted).  To establish redressability, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" of the court.  *Id.* at 561 (citation and internal quotation marks omitted).

When a party is seeking intervention to join the government in defending a governmental action, "the party must establish that it [would] be 'injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'" *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2016) (quoting *Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001)).

Under these familiar principles, there is no question that a tribe has standing when intervening in a case to uphold the action of the federal government where approval of an IGRA compact is challenged.

In *Amador County v. Jewell*, a tribe sought to intervene in litigation challenging the Department's approval of the tribe's IGRA compact.  312 F.R.D. at 12.[3]  This Court found the tribe had Article III standing, stating:

> A judgment favoring the County would vacate the Secretary's approval of the Amended Compact, strip the Rancheria of its designation as "Indian lands," and thereby enjoin the Tribe from engaging in Class III gaming activities.  These legally cognizable injuries to the Tribe's financial and sovereign interests trace directly to the County's initiation of this action and would be redressed by the action's dismissal.

---

[3] The Court ultimately concluded the tribe's motion was untimely, where it was filed years after the case was initiated.  *Amador Cnty.*, 312 F.R.D. at 15–16.

*Id.* at 14.  The Court also noted as "a significant factor" the tribe's sovereign interest in not having its rights adjudicated in its absence.  *Id.* at 15 n.6.

More recently, in *MGM Global Resorts Development, LLC v. U.S. Department of the Interior*, discussed above, tribes sought limited intervention in part to defend the Department's deemed approval of an amendment to an IGRA compact.  2020 WL 5545496, at \*1.  This Court found the tribes had standing, *id.* at \*4, and the tribes were permitted to intervene in the case for the limited purpose of seeking to dismiss the case because they were necessary and indispensable parties and their sovereign immunity prevented their joinder, *id.* at \*7.

Plaintiffs in this action seek an order from this Court vacating and setting aside the Department's deemed approval of the 2021 Compact as unlawful.  In so doing, they also request a decision from this Court invalidating key provisions of the 2021 Compact relating to online sports betting.

The Tribe, as a party to the 2021 Compact, has a critically important and undeniable economic interest in the Compact's continued effectiveness and a sovereign interest in not having its legal rights determined in its absence.  *See PPI, Inc.*, 2008 WL 2705431, at \*4.  The Tribe is a party to the 2021 Compact—a carefully negotiated contractual agreement between two sovereign entities.  If the Department's deemed approval of the 2021 Compact were to be vacated and set aside, as Plaintiffs request, critical provisions of the 2021 Compact would no longer be in effect. *See* 25 U.S.C. § 2710(d)(3)(B); 2021 Compact Part XVI.A, ECF No. 1-1, at 71.  The Tribe would be injured because it would no longer be authorized to operate the new types of games allowed in the 2021 Compact, including online sports betting, which would result in the loss of a very substantial economic opportunity for the Tribe.

These legally cognizable potential injuries to the Tribe's economic and sovereign interests

trace directly to Plaintiffs' initiation of this action and would be redressed by the action's dismissal. Setting aside the 2021 Compact would be the direct cause of the Tribe's injury, and the injury would not occur if the Department's decision to deem the 2021 Compact approved were not set aside. The Tribe has Article III standing.

### III.     The Tribe Has a Right To Intervene in the Case Under Rule 24(a).

The right to intervene "implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *100Reporters LLC*, 307 F.R.D. at 274 (quoting *Hodgson v. United Mine Workers*, 473 F.2d 118, 130 (D.C. Cir. 1972)). Rule 24(a)(2) of the Federal Rules of Civil Procedure provides:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The following four-factor test is used to determine whether Rule 24(a)(2) is met:

> (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals, Inc.*, 322 F.3d at 731 (citation and quotation marks omitted); *see also Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 320.

### A.  Timeliness

The timeliness of a motion is "judged in consideration of all the circumstances," *100Reporters LLC*, 307 F.R.D. at 274 (quoting *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir.

2001)), and "a court must weigh whether any delay in seeking intervention unfairly disadvantaged the original parties," *id.* at 275 (quoting *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014)). The Complaint was filed on August 17, 2021, and no responsive pleading or motion has yet been filed. Intervention at this time will not delay the action or otherwise disadvantage the parties. The Tribe's Motion is timely.

## B.  Interest in Subject Matter

Courts in the D.C. Circuit "generally treat the standing analysis for intervention as of right as equivalent to determining whether the intervenor has a 'legally protected' interest under Rule 24(a)." *100Reporters LLC*, 307 F.R.D. at 276. Therefore, a court's conclusion that the intervenor has Article III standing is "alone sufficient to establish that [the intervenor] has 'an interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals, Inc.*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)(2)).

Courts in the D.C. Circuit have repeatedly found tribes have both standing and a legally protected interest for purposes of their motions to intervene under Rule 24(a) when they request to join the federal government as a defendant where the approval of an IGRA compact is at stake. *See, e.g.*, *MGM Glob. Resorts Dev., LLC*, 2020 WL 5545496, at *4; *Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 13; *Amador Cnty.*, 312 F.R.D. at 14.

As the Tribe has Article III standing to join this litigation, demonstrated above, it also has a legally protected interest for purposes of Rule 24(a) to join the Department in defending the 2021 Compact.

## C.  Impairment of Interest

In evaluating whether an intervenor is so situated that the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect its interest, courts consider

9

the "practical consequences" of denying intervention. *Fund for Animals, Inc.*, 322 F.3d at 735 (citation omitted); *100Reporters LLC*, 307 F.R.D. at 278. Such practical consequences may include economic consequences. *Fund for Animals, Inc.*, 322 F.3d at 735.

Courts in the D.C. Circuit have found that the interests of intervening tribes attempting to defend the Department's IGRA compact decisions would be impaired if the tribes were not joined. *See, e.g.*, *MGM Glob. Resorts Dev., LLC*, 2020 WL 5545496, at \*4; *Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 14; *Amador Cnty.*, 312 F.R.D. at 14.

It cannot be denied that the Tribe is so situated that the disposition of the action may, as a practical matter, impair or impede the Tribe's ability to protect its interests. The Tribe as a party to the 2021 Compact would be adversely affected by a determination of this action favorable to Plaintiffs—where such a determination would undermine an agreement the Tribe and the State negotiated as sovereign entities. *See PPI, Inc.*, 2008 WL 2705431, at \*4 ("The Seminole Tribe has an interest in the compact that would be prejudiced if [the plaintiff] obtains a declaratory judgment invalidating parts of the compact.").

In addition, the Tribe expects to realize significant increased profits from expanded gaming under the 2021 Compact, including from the online sports betting specifically challenged in this case. Those profits would be lost if the Department's deemed approval of the 2021 Compact were vacated and set aside, as Plaintiffs request. These practical, economic consequences qualify as a sufficient impairment of interest.

Therefore, disposition of the action without the Tribe would undeniably impair the Tribe's ability to protect its interests.

### D. Adequacy of Representation

The burden required for showing inadequate representation for purposes of Rule 24(a)

"should be treated as minimal," where the requirement "is satisfied if the applicant shows that representation of his interest '*may be*' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, Federal Practice 24.09-1 (4) (1969)) (emphasis added); *see also Fund for Animals, Inc.*, 322 F.3d at 735–36; *100Reporters LLC*, 307 F.R.D. at 279; *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 283 (D.D.C. 2018). This requirement is "not onerous." *Fund for Animals, Inc.*, 322 F.3d at 735 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). An intervenor "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Id.* (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)); *see also Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321. Mere "general alignment" of interests is not sufficient to establish adequacy of representation. *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321.

With regard to intervenors seeking to join a case alongside the federal government, "[a]lthough the intervenor and the government entity involved in the litigation frequently may agree on a legal position or course of action, the D.C. Circuit nonetheless 'often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors.'" *100Reporters LLC*, 307 F.R.D. at 279 (quoting *Fund for Animals, Inc.*, 322 F.3d at 736); *see also Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 ("[W]e look skeptically on government entities serving as adequate advocates for private parties."). In such cases, the "government entity's overarching 'obligation is to represent the interests of the American people,' while the intervenor's obligation is to represent its own interests." *100Reporters LLC*, 307 F.R.D. at 279 (quoting *Fund for Animals, Inc.*, 322 F.3d at 736). The courts have said that "[t]he federal government . . . represents the public interest of its citizens as a whole, and would be 'shirking its duty were it to advance [a] narrower interest at the expense of its representation of the general

11

public interest.'"  *Forest Cnty. Potawatomi Cmty.*, 317 F.R.D. at 15 (quoting *Fund for Animals.*

*Inc.*, 322 F.3d at 737).  When it comes to tribal gaming, courts have confirmed that tribes have "a

narrow financial interest that the Government does not share."  *Sault Ste. Marie Tribe of Chippewa*

*Indians v. Bernhardt*, 331 F.R.D. 5, 13 (D.D.C. 2019).

In *MGM Global Resorts Development, LLC v. U.S. Department of the Interior*, discussed

above, this Court explained that "[e]ven in cases . . . where the intervenor and the government may

agree in broad terms on a legal position or course of action, the D.C. Circuit nonetheless 'often

[has] concluded that governmental entities do not adequately represent the interests of aspiring

intervenors.'"  2020 WL 5545496, at *5 (quoting *Fund for Animals, Inc.*, 322 F.3d at 736).  The

Court noted that the Department did not share the tribes' interest in the casino that the compact

amendments would authorize.  *Id.*  It also noted the Department did not share the tribes' interest

in asserting and protecting their sovereign immunity.  *Id.*

In *Forest County Potawatomi Community v. United States*, this Court found that the

Department's defense of its decision to disapprove an IGRA compact did not adequately represent

the interests of the intervening tribe, which also sought to defend the disapproval.  317 F.R.D. at

15.  The Court reasoned that the intervening tribe was "concerned with preserving [its] own rights

and opportunities, including [its] specific economic development goals, both under the IGRA and

in [its] capacit[y] as [a] sovereign entit[y]."  *Id.*

Additionally, parties to contracts are generally permitted to join cases to protect their

contracts.  *See, e.g.*, *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 390 (D.D.C. 2017)

("There is a general rule that where rights sued upon arise from a contract all parties to it must be

joined.") (quoting *Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953)); *Tucker v. Nat'l Linen Serv.*

*Corp.*, 200 F.2d 858, 863 (5th Cir. 1953).  The 2021 Compact is a contract.  *See Texas v. New*

*Mexico*, 482 U.S. 124, 128 (1987).  In *PPI, Inc.*, the plaintiff argued the Tribe was not an indispensable party under Rule 19 of the Federal Rules of Civil Procedure because its interests were adequately represented by the Department.  2008 WL 2705431, at *4.  The court found the Tribe was necessary and indispensable, noting the Tribe's interest in defending the compact as a contracting party.  *Id.* at *3.  It also noted "the Seminole Tribe's interest 'in its sovereign right not to have its legal duties judicially determined without consent.'"  *Id.* at *4 (quoting *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989)).

It is clear that the Tribe's interests in the 2021 Compact, and specifically its online sports betting provisions, would not be adequately represented by Federal Defendants Secretary of the Interior and the Department.  Neither the Secretary nor the Department has an economic incentive to defend the 2021 Compact or its online sports betting provisions commensurate with that had by the Tribe.  Such economic incentive is specific to the Tribe and is a narrow financial interest that the federal government does not share.  Only the Tribe can represent its financial interests and economic development goals adequately.  Further, only the Tribe can represent its own interests as a sovereign entity that negotiated and entered into the 2021 Compact with the State and its interests in asserting its own sovereign immunity from suit.

Additionally, the sports betting provisions are severable from the remainder of the 2021 Compact, so this Court could choose to invalidate those provisions and leave intact the remainder of the 2021 Compact approved by the Department—giving the current Defendants even less reason to vigorously defend the online sports betting provisions of the Compact.

Like the decision in *PPI, Inc.* in which the Tribe was found to be a necessary and indispensable party in a case against the Department challenging its approval of the Tribe's previous compact, the Tribe should be allowed to intervene in this case to represent its own

13

interests.

## CONCLUSION

For the foregoing reasons, the Tribe respectfully requests the Court grant its Motion for

Limited Intervention.


*/s/ Joseph H. Webster*
Joseph H. Webster (D.C. Bar No. 448458)
Kaitlyn E. Klass (D.C. Bar No. 1032219)
Elliott A. Milhollin (D.C. Bar No. 474322)
HOBBS STRAUS DEAN & WALKER, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com
kklass@hobbsstraus.com
emilhollin@hobbsstraus.com

*/s / Barry Richard*
Barry Richard (D.C. Bar No. 419850)
GREENBERG TRAURIG, P.A.
101 East College Avenue
Tallahassee, FL  32301
Telephone: (850) 222-6891
Facsimile: (850) 681-0207
richardb@gtlaw.com
greenel@gtlaw.com
flservice@gtlaw.com

Attorneys for Intervenor,
Seminole Tribe of Florida

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2021, I electronically filed the foregoing **Seminole Tribe of Florida's Motion for Limited Intervention and Statement of Points of Law and Authorities in Support** with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system.  All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Joseph H. Webster*
Joseph H. Webster

15