**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WEST FLAGLER ASSOCIATES, LTD., et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-02192-DLF |
| | ) | |
| DEB HAALAND, in her official capacity as | ) | |
| Secretary of the United States Department of | ) | |
| the Interior, et al.; | ) | |
| | ) | |
| *Federal Defendants.* | ) | |
| | ) | |

**FEDERAL DEFENDANTS' RESPONSE TO
SEMINOLE TRIBE OF FLORIDA'S MOTION TO DISMISS**

Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior

("Secretary"), and the United States Department of the Interior ("Interior") (collectively,

"Federal Defendants"), by and through their undersigned counsel, hereby respond to the

Seminole Tribe of Florida's ("Tribe") Motion to Dismiss (ECF 13-4).

Respectfully submitted this 26th day of October 2021.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
OF COUNSEL:                    P.O. Box 7611, Ben Franklin Station
JODY H. SCHWARZ              Washington, DC 20044
Senior Attorney                 Telephone:  (202) 616-3148
Office of the Solicitor           rebecca.ross@usdoj.gov
Division of Indian Affairs        hillary.hoffman@usdoj.gov
                               *Attorneys for Federal Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

STATUTORY AND REGULATORY BACKGROUND..................................................................2

FACTUAL AND PROCEDURAL BACKGROUND.....................................................................4

ARGUMENT .................................................................................................................................5

   I.  Standard of Review ..........................................................................................................5

   II.  The United States is the Only Required and Indispensable Party in APA Suits.................7

**INTRODUCTION**

West Flagler Associates, Ltd. et al. ("Plaintiffs") seek judicial review of the approval, by operation of law, of a Tribal-State Compact negotiated by and entered into between the State of Florida ("State" or "Florida") and the Seminole Tribe of Florida ("Tribe").  ECF 1.  Plaintiffs style their claims against the Secretary of the Interior as claims under the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), and the Equal Protection Clause.

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), provides that where the Secretary did not approve or disapprove the Compact during the statutorily-identified forty-five day review period, "the [C]ompact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of this chapter." *Id.* § 2710(d)(8)(C).  Following the passage of the 45 days, on August 11, 2021, the Compact was thus considered to have been approved ("deemed approved"), *see Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact in the State of Florida*, 86 Fed. Reg. 44,037, 44,037 (Aug. 11, 2021), but only to the extent it is consistent with IGRA.  *Id.*

The Tribe has moved to dismiss this suit pursuant to Rule 19 of the Federal Rules of Civil Procedure, asserting that it is a necessary party to the suit but that it cannot be joined in the suit absent its consent due to its sovereign immunity.  ECF 13-4 ("Motion").  Before reaching the Rule 19 question, however, the Court should address Federal Defendants' previously-filed Motion to Dismiss, ECF 25, on the grounds that Plaintiffs lack standing and have failed to state plausible claims for relief.  As shown in that motion, ECF 25 at 11, the first task for the Court is to determine whether it has the requisite jurisdiction to proceed.  Federal Defendants recognize that the Court "has leeway to choose among threshold grounds for denying audience to a case on the merits."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

1

Nevertheless, the Court's consideration of Federal Defendants' Motion to Dismiss first is warranted because recognition that the Court lacks jurisdiction for the straightforward reasons presented there would resolve this suit in its entirety, eliminating the need for the Court to reach any other issues. Indeed, another suit filed by these Plaintiffs regarding the same Compact was dismissed on standing grounds just last week. *See West Flagler Assoc., Ltd. et al. v. DeSantis et al.*, Order on Dismissal, No. 4:21-CV-270 (N.D. Fla. Oct. 18, 2021) (dismissing suit on standing grounds and rendering moot other motions, including the Tribe's Rule 19-based motion to dismiss filed in the case).

If the Court nonetheless addresses the Tribe's Motion, the position of the United States is that it is the only necessary and indispensable party in APA suits challenging final agency action, and that the public interest in judicial review of final agency actions under the APA would weigh strongly against Rule 19 dismissal of an APA suit.

## STATUTORY AND REGULATORY BACKGROUND

IGRA "creates a framework for regulating gaming activity on Indian lands." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014). In enacting IGRA, Congress sought to establish a system that would balance the competing interests of two sovereigns: tribal and state governments. On the one hand, IGRA aims "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1); *Confederated Tribes of the Grand Ronde Cmty. of Or. v. Jewell*, 830 F.3d 552, 557 (D.C. Cir. 2016) ("[T]he whole point of the IGRA is to 'provide a statutory basis for the operation of gaming by Indian tribes as means of promoting tribal economic development, self-sufficiency, and strong tribal governments.'") (quoting *Diamond Game Enters. v. Reno*, 230 F.3d 365, 366-67 (D.C. Cir. 2000)). On the other hand, the

statute contemplates a regulatory and supervisory role for the states and the federal government to prevent the infiltration of "organized crime and other corrupting influences."  25 U.S.C. § 2702(2).[1]

IGRA divides gaming into three classes. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 48 (1996).  The third of these—Class III gaming—is implicated here and includes "casino games" such as blackjack, roulette and slot machines.  *See Bay Mills Indian Cmty.*, 572 U.S. at 785.  Class III gaming can occur on Indian lands only if "conducted in conformance with" an approved tribal-state compact "entered into by the Indian tribe and the State," 25 U.S.C. § 2710(d)(1)(C), or pursuant to procedures issued by the Secretary, *id.* § 2710(d)(7).  "The rationale for the compact system is that 'there is no adequate Federal regulatory system in place for Class III gaming, nor do tribes have such systems for the regulation of Class III gaming currently in place,' and thus 'a logical choice is to make use of existing State regulatory systems' through a negotiated compact."  *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1549 (10th Cir. 1997) (quoting S. Rep. No. 100-446, at 13-14, reprinted in 1988 U.S.C.C.A.N. 3071, 3083-84).

IGRA provides no role for the federal government in the compact negotiation process between tribes and states.  The Secretary holds authority to approve or, for limited reasons, disapprove a compact to which the state and the tribe do agree.  25 U.S.C. § 2710(d)(8)(A)-(B).  Congress also directed, however, that "[i]f the Secretary does not approve or disapprove a compact . . . before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of [IGRA]."  *Id.*

---

[1] Congress passed IGRA in response to the Supreme Court's decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221-222 (1987), which had held that states lacked regulatory authority over gaming on Indian lands. *See Bay Mills Indian Cmty.*, 572 U.S. at 794.

§ 2710(d)(8)(C).  Such compacts are generally referred to as having been "deemed approved." Compacts affirmatively approved by the Secretary, or "considered to have been approved" by operation of statute when the Secretary does not approve or disapprove, become effective after the Secretary publishes notice in the *Federal Register*.  *See id.* § 2710(d)(3)(B), (d)(8)(D).

As discussed in the Federal Defendants' Motion to Dismiss and below, IGRA is properly understood to limit judicial review of a "deemed approval" to the sort of stark and fundamental IGRA question presented in *Amador County v. U.S. Dep't of Interior*, 640 F.3d 373 (D.C. Cir. 2011) ("*Amador County*")—whether the compact violates IGRA, not other federal law or state law.  (In *Amador County*, the question was whether the lands on which the compact authorized gaming were Indian lands, such that any gaming would be consistent with IGRA.  *Id.* at 375.)

## FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2021, the State and the Tribe submitted the Compact to the Secretary, together with a tribal resolution and state certification, ECF 1-6 at 2 n.1, as required by 25 C.F.R. § 293.8.  This submission commenced the statutorily-identified forty-five day review period allowed under IGRA.  25 U.S.C. § 2710(d)(8).  The State and the Tribe further submitted a copy of a state statute that ratified and approved the Compact.  ECF 1-6 at 2 n.1; *see also* ECF 1 at 3-4 (¶ 5) (discussing the state statute implementing the Compact).  The Secretary took no action on the Compact within the forty-five day review period (*i.e.*, on or before August 5, 2021), and thus, by operation of law, the Compact "shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of [IGRA]."  *Id.* § 2710(d)(8)(C).  On August 11, 2021, and as required by the statute, *id.* § 2710(d)(8)(D), the Secretary published notice in the *Federal Register* that the Secretary took no action on the Compact within the 45-day statutory period and thus, the Compact is considered to have been

approved, but only to the extent it is consistent with IGRA. *See Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact in the State of Florida*, 86 Fed. Reg. 44,037, 44,037 (Aug. 11, 2021) (Because the "Secretary took no action on the Compact between the Tribe and the State . . . the Compact is considered to have been approved, but only to the extent it is consistent with IGRA.").

On August 16, 2021, Plaintiffs filed this suit, asserting two claims. Plaintiffs assert in Count I that the Secretary's deemed approval action violated the APA because it purportedly violates IGRA, the Wire Act of 1961, 18 U.S.C. §§ 1801 *et seq*.; and the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361 *et seq*., and the Equal Protection Clause of the Fifth Amendment to the United States Constitution, and thus, they allege, the Secretary was required to disapprove the Compact. ECF 1 at 39-41 (¶¶ 124-34). Plaintiffs assert in Count II that the deemed approval violates the Equal Protection Clause of the Fifth Amendment to the United States Constitution because it purportedly authorizes a "race-based monopoly" in the State of Florida. *Id.* at 41-42 (¶¶ 136-144).

## ARGUMENT

### I.      Standard of Review

Fed. R. Civ. P. 12(b)(7) authorizes dismissal of suits for failure to join a necessary and indispensable party under Rule 19. The Court employs a multi-step analysis to determine whether to dismiss a suit on these grounds. *Ali v. Carnegie Inst. of Wash.,* 306 F.R.D. 20, 25 (D.D.C. 2014). The Court first determines whether a party is "required" and must therefore be joined if feasible. Rule 19(a)(1). A nonparty is "required" if the court cannot accord complete relief among existing parties in the nonparty's absence. Rule 19(a)(1)(A). A nonparty is also "required" if the nonparty claims an "interest relating to the subject of the action" and their

absence may "impair or impede" their ability to protect that interest or could leave an existing

party subject to substantial risk of duplicate or inconsistent obligations.  Rule 19(a)(1)(B).

If the nonparty is required under Rule 19(a), the Court must consider if it is feasible to

join the nonparty.  *Ali*, 306 F.R.D. at 25.  If the required nonparty cannot be joined—as, for

example, when the nonparty is protected from suit by sovereign immunity—the final step is for

the Court to determine whether in "equity and good conscience" the action should proceed in

that nonparty's absence or should be dismissed, *i.e.*, whether the nonparty is "indispensable" to

the action. Rule 19(b).  Rule 19(b) enumerates four factors the Court considers in determining

whether to proceed, including if prejudice, *vel non*, to the nonparty could be lessened or avoided;

if judgment rendered in the nonparty's absence would be adequate; and if the plaintiff would

have an adequate remedy were the case to be dismissed for nonjoinder.  *Id.*  But, these factors are

neither exclusive nor dispositive.

The Court's determination in many contexts is case-specific and heavily influenced by

the facts and circumstances of each case.  *Republic of Philippines v. Pimentel*, 553 U.S. 851,

862-63 (2008); *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d

1491, 1495 (D.C. Cir. 1995) ("*Kickapoo II*") (Rule 19 "calls for a pragmatic decision based on

practical considerations in the context of particular litigation").  The factors "are not rigid,"

technical tests, "but rather 'guides the overarching equity and good conscience determination.'"

*Ali*, 306 F.R.D. at 27 (quoting *Cloverleaf Standardbred Owners v. Nat'l Bank*, 699 F.2d 1274,

1279 n.11 (D.C. Cir. 1983)); *see also Davis v. United States*, 192 F.3d 951, 961 (10th Cir. 1999)

(quoting *Sokaogon Chippewa Cmty. v. Wisconsin, Oneida Cty.*, 879 F.2d 300, 304 (7th Cir.

1989)) ("The nature of the Rule 19(b) inquiry—a weighing of intangibles—limits the force of

precedent and casts doubt on generalizations . . . .").

Thus, in some circumstances, when a civil action involves the interests of a sovereign government entity that cannot be joined due to sovereign immunity, Rule 19 may require dismissal. *See Pimentel*, 553 U.S. at 872 (discussing foreign sovereigns). But the Federal Defendants' position is that tribal and state sovereign immunity and Rule 19 do not require dismissal of every suit where an absent tribe, tribal entity, or state claims an interest, and in particular does not require dismissal of an APA suit seeking judicial review of agency action (or inaction). *See*, *e.g.*, *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1352 (D.C. Cir. 1996), amended (Aug. 6, 1996) (holding tribes were not required parties); *Pyramid Lake*, 70 F. Supp. 3d at 541 (same); *Three Affiliated Tribes*, 637 F. Supp. 2d at 33 (same); see also *Alto v. Blac*k, 738 F.3d 1111, 1125-29 (9th Cir. 2013) (holding that tribe was not a required party in APA challenge to federal resolution of a tribal enrollment dispute); *Sac and Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1258-60 (10th Cir. 2001) (affirming district court decision to exercise jurisdiction despite impacts on tribal interests). *See also Carcieri v. Salazar*, 555 U.S. 379 (2009) (in a challenge to a trust acquisition for the Narragansett Tribe, neither the Supreme Court, nor the courts below, regarded the Tribe as a necessary and indispensable party).

## II.     The United States is the Only Required and Indispensable Party in APA Suits

While Rule 19 provides the usual framework for evaluating whether a federal lawsuit may proceed in a nonparty's absence, the Supreme Court has recognized an exception to traditional joinder rules "[i]n a proceeding . . . narrowly restricted to the protection and enforcement of public rights." *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 363 (1940). In such cases, "there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." *Id.*

Those considerations counsel against dismissing APA challenges on Rule 19 grounds. *See generally Conner v. Burford*, 848 F.2d 1441, 1459–62 (9th Cir. 1988) (applying public rights exception to APA challenge to federal approvals); *but see Dine Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 923 F.3d 843, 860 (9th Cir. 2019) (declining to apply exception where vacating challenged agency action would render tribal lease invalid).  The only question to be decided in APA litigation is whether an agency action will be sustained or held invalid; the APA does not authorize any relief against non-federal entities.  *See* 5 U.S.C. §§ 702, 706.  An adverse judgment setting aside the agency action, while it could have consequences for nonparties, in the typical APA case, leaves those nonparties in a state no different from that in which would have found themselves had the agency never taken the challenged action in the first place.  Thus, an APA action generally threatens no interests beyond the interest in seeing agency action upheld, which typically the agency itself would adequately represent.  In any event, such a suit involves an issue of public rights that the APA itself makes subject to challenge by a proper plaintiff, unless one of the exceptions in the APA itself applies.

By contrast, finding that non-federal entities are nevertheless necessary for an APA action to proceed would undermine important public rights crafted by Congress.  Congress waived the United States' sovereign immunity as to suits properly brought under the APA to allow persons who are aggrieved as a result of agency action to appeal to the courts, subject to the exceptions set forth in the APA itself.  *See* 5 U.S.C. § 702.  Allowing joinder rules to preclude judicial review of agency action in situations where the APA itself authorizes review would frustrate that statute.  Dismissal under Rule 19 is therefore inappropriate in APA cases.

In Rule 19 terms, the starting point for a reviewing court is to ask whether the absent party is required for the adjudication of the dispute and must therefore be joined if feasible.  Rule

19(a)(1). In cases challenging final agency action consistent with the APA standard of review, the position of the United States is that it is the only required or necessary party in such suits. In such cases, the focus of the challenge is typically on federal action (or inaction); the adequacy of the agency's rationale for the challenged action (or inaction); and any relief is properly sought only against the federal government. *See*, *e.g.*, *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, (D.D.C. 2017) ("the purely legal question of whether" the agency "violated the APA may be resolved without requiring the joinder" of absent parties). The joinder of absent non-parties is not required under Rule 19(a)(1) in such cases, at least where the federal government itself adequately represents the non-parties' interest in seeing the government's action upheld. *Ramah Navajo Sch. Bd., Inc.*, 87 F.3d at 1351 ("the United States may adequately represent [a nonparty's] interest as long as no conflict exists between the United States and the nonparty."); *but see Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1497 (D.C. Cir. 1997); *Kickapoo II*, 43 F.3d at 1495; *Wichita and Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986).[2]

Here too, assuming the Court conducts review consistent with the APA, the Federal Defendants adequately represent the Tribes' interest in seeing the deemed approval upheld. Such merits review must be based on an "administrative record and consistent with the APA standard of review." *Zemeka v. Holder*, 963 F. Supp. 2d 22, 24 (D.D.C. 2013). And, critically, under the terms of IGRA and controlling precedent, that review should be limited to the question whether there is a fundamental conflict between the compact and IGRA itself. *See Amador County*, 640 F.3d at 383. IGRA's short, 45-day period before a submitted compact is "deemed approved" is properly read to require the Secretary to consider only whether the compact is

---

[2] Federal Defendants contend that these cases are distinguishable from the facts presented here.

consistent with IGRA, not with other federal law or state law.  *Compare* 25 U.S.C.

§ 2710(d)(8)(B) (allowing but not obligating the Secretary to disapprove a compact that violates

IGRA or other federal law or trust obligations) *with id.* § 2710(d)(8)(C) ("If the Secretary does

not approve or disapprove a compact . . . [within] 45 days . . . the compact shall be considered to

have been approved by the Secretary, but only to the extent the compact is consistent with the

provisions of" IGRA).

      This analysis is consistent with the D.C. Circuit's decision in *Amador County.*  The issue

presented in that case was whether any of the lands at issue constituted Indian lands, without

which gaming would not be permissible at all under IGRA.  That is, the Court was confronted

with an all-or-nothing argument about facial consistency between the compact and IGRA itself.

*See Amador Cty.*, 640 F.3d at 383 ("we hold that where, as here, a plaintiff alleges that a

compact violates IGRA, thus requiring the Secretary to disapprove the compact, nothing in the

APA precludes judicial review of a subsection (d)(8)(C) no-action approval."); *see also id.* at 381

("While [a particular argument against reviewability] may be correct as to compliance with other

federal law and trust obligations, the caveat demonstrates that Congress had no intention of

trading compliance with IGRA's requirements for efficiency in agency proceedings.").

Plaintiffs, in contrast, seek a provision-by-provision review of the Compact under various other

federal and state laws.  So too, Plaintiffs' Equal Protection Claim is not a facial challenge under

IGRA, but is predicated on their APA claim and the details of the Compact, which they contend

authorizes an unconstitutional "race-based monopoly" with respect to sports betting because the

State has not authorized entities other than the Tribe to offer the game.  ECF 1 at 12-13 (¶ 43).

      Federal Defendants are positioned to defend the deemed approval on those issues that

Federal Defendants think are properly before the Court and do so in a way that adequately

represents the Tribe's interests in seeing the deemed approval upheld.  In any event, if the Court

were to deem the non-parties required and proceed to Rule 19(b), the public's interest in ensuring

the reviewability of federal action under the APA would weigh against dismissal, for the reasons

discussed above.  *See Manygoats v. Kleppe*, 558 F.2d 556, 558-59 (10th Cir. 1977); *but see Dine*

*Citizens*, 943 F.3d at 960-61.

      Respectfully submitted this 26th day of October 2021.

<div style="margin-left:40%;">

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Tel:  (202) 616-3148
rebecca.ross@usdoj.gov
hillary.hoffman@usdoj.gov

*Attorneys for Federal Defendants*

</div>

OF COUNSEL:
JODY H. SCHWARZ
Senior Attorney
Office of the Solicitor
Division of Indian Affairs

11

**CERTIFICATE OF SERVICE**

I, Rebecca M. Ross, hereby certify that on October 26, 2021, I caused the foregoing

FEDERAL DEFENDANTS' RESPONSE TO SEMINOLE TRIBE OF FLORIDA'S MOTION

TO DISMISS to be sent electronically to the registered participants as identified on the Notice of

Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice