**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WEST FLAGLER ASSOCIATES, LTD., et al., )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>DEB HAALAND, in her official capacity as )<br>Secretary of the United States Department of )<br>the Interior, et al., )<br><br>*Federal Defendants*. ) | Civil Action No. 1:21-cv-02192-DLF |

**FEDERAL DEFENDANTS'**
**SUPPLEMENTAL MEMORANDUM**

Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior, and the United States Department of the Interior, by and through their undersigned counsel, hereby file this supplemental memorandum.

Respectfully submitted this 9th day of November, 2021.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rebecca M. Ross
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-3148
rebecca.ross@usdoj.gov
hillary.hoffman@usdoj.gov
*Attorneys for Federal Defendants*

OF COUNSEL:
JODY H. SCHWARZ
Senior Attorney
Office of the Solicitor
Division of Indian Affairs

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................5

    I.      The Indian Gaming Regulatory Act.............................................................5

    II.    The Unlawful Internet Gambling Enforcement Act ......................................7

    III.   The Wire Act...............................................................................................8

ARGUMENT .......................................................................................................................8

    I.      The Compact's Deemed Approval Does Not Violate IGRA .........................8

    II.    The Compact Permissibly Encompasses, Consistent with IGRA, the Tribe's and State's Agreement that the Sports Betting is Deemed to Occur on the Tribe's Indian Lands for Regulatory Purposes ...................................................................12

    III.   Plaintiffs Have Not Established that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act....................................................14

          A.  Neither IGRA Nor *Amador County* Mandates the Secretary to Take Action on a Compact Based on Other Federal Laws or State Law...............................................15

          B.  Plaintiffs Have Failed to Establish the Compact's Deemed Approval Violates Federal Law, the UIGEA, or the Wire Act in Any Event ........................................18

             i.  The Court Should Reject Plaintiffs' Contentions Regarding State Law .........19

             ii.  Plaintiffs Failed to Establish Any UIGEA Violation ....................................21

             iii.  Plaintiffs Failed to Establish Any Wire Act Violation ..................................22

          C.  Federal Defendants' Position Here Does Not Contradict Past Federal Government Positions or Case Law Regarding Internet Gaming ..........................24

    IV.   The Compact's Deemed Approval Does Not Violate the Equal Protection Clause ....25

    V.    The Compact's Deemed Approval Does Not Violate the Trust Obligations the United States Owes to Indian Tribes .........................................................26

    VI.   The Administrative Record........................................................................28

CONCLUSION...................................................................................................................30

## INTRODUCTION

Pursuant to the Court's order dated November 5, 2021, and its instruction during the hearing held on that same date, Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior ("Secretary"), and the United States Department of the Interior ("Interior") (collectively, "Federal Defendants"), hereby respond to the merits arguments presented by Plaintiffs West Flagler Associates, Ltd. et al. ("Plaintiffs") in connection with their *Motion for Summary Judgment or in the Alternative, Preliminary Injunction* (ECF 19).[1]

This suit involves a challenge to the approval, by operation of law ("deemed approval"), of a Tribal-State Compact ("Compact") negotiated by and entered into between the State of Florida ("State" or "Florida") and the Seminole Tribe of Florida ("Tribe").  Plaintiffs' suit seeks relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), and the Equal Protection Clause of the United States Constitution.

Plaintiffs "do not challenge the Secretary's approval of any provisions of the Compact other than the online sports betting provisions."  ECF 19 at 14.  Instead, Plaintiffs argue that the online sports betting provisions of the Compact violate the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), the Unlawful Internet Gambling Enforcement Act, 31 U.S.C.

---

[1] Federal Defendants understand the Court's order as pertaining only to the portion of Plaintiffs' motion concerning summary judgment, and thus do not provide further argument in opposition to the portion of the motion seeking preliminary injunctive relief, beyond stating that the reasons provided herein demonstrate why Plaintiffs are not likely to succeed on the merits of their claims.  By providing the responses herein, Federal Defendants do not waive or otherwise concede arguments and defenses, and Federal Defendants preserve all arguments and defenses in this and any future proceeding.  The Court's order referred to "gamesmanship" by counsel for Federal Defendants; that was certainly not the intent and counsel respectfully disagree that they engaged in gamesmanship.  Counsel asserted positions on behalf of Federal Defendants in good faith, focusing on the issues that Federal Defendants believe necessary to resolve this case, including this Court's jurisdiction, and sought to narrow the issues rather than to delay the proceedings, which remain on track for the November 15, 2021, date that Plaintiffs chose based on their own information.

§§ 5361-67 ("UIGEA"), and the Wire Act of 1961, 18 U.S.C. § 1084 ("Wire Act"), on the basis

that the Compact "authorizes" online sports betting occurring off of the Tribe's Indian lands, in a

jurisdiction—Florida—where they contend online sports betting is "illegal."  ECF 19 at 13.

Plaintiffs further argue that the Compact's deemed approval reflects that the Secretary created or

authorized a "statewide monopoly" for the Tribe on the basis of race in violation of the Equal

Protection Clause of the United States Constitution. *Id.*

Federal Defendants agree that under federal law, the location of the bettor determines

where the bet is placed, *see Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 792-93 (2014),

and thus federal law as to the location of the better cannot be changed or altered through a tribal-

state compact.  Accordingly, if a bet is placed within Florida, but outside the confines of the

Tribe's Indian lands, the bet occurs outside of Indian lands and must be authorized by state law,

rather than IGRA.  *See*, *e.g.*, *State of Cal. v Iipay Nation of Santa Ysabel*, 898 F.3d 960, 968-69

(9th Cir. 2018) ("*Iipay*").  Contrary to Plaintiffs' arguments, however, these requirements of

federal law fail to establish that the Compact violates IGRA or any other provision of law.

Plaintiffs construe the provision of the Compact stating that online sports wagers are

"deemed" to occur on the Tribe's Indian lands as a "legal fiction" that unlawfully authorizes the

placement of online sports wagers in Florida off of those lands.  ECF 19 at 17, 29.  This

characterization reflects a misunderstanding of the Compact, as well as compacting generally

between tribes and states.  The State and Tribe are free to denominate where the gaming occurs

for state or tribal law purposes, and moreover, IGRA permits the Tribe and the State to allocate

jurisdiction and regulatory authority over the gaming activity addressed in the Compact

consistent with federal law, including IGRA.  25 U.S.C. § 2710(d)(3)(C).  Federal Defendants

contend that for federal law purposes, and consistent with federal law, the online sports betting

provisions in the Compact reflect a permissible hybrid approach wherein gaming activity that occurs off of the Tribe's Indian lands is authorized under state law, and gaming activity that occurs on Indian lands is authorized by IGRA pursuant to the Compact.  Nothing in IGRA or other federal law prohibits such a hybrid approach as to the authorizing of Class III gaming consistent with IGRA.  Additionally, IGRA allows the Tribe and the State to negotiate over, and agree to allocate, regulatory jurisdiction to the Tribe over all the gaming activity referenced in the Compact, including sports betting. 25 U.S.C. § 2710(d)(3)(C)(i)-(ii).  And while the Compact only authorizes the gaming activity that occurs on Indian lands, the Tribe may be designated by the State, through the Compact, to regulate activities that occur off of its Indian lands that are "directly related to" that gaming, *see id.* § 2710(d)(3)(C)(vii), including regulating how and under what conditions a person in Florida can place an online sports wager through the Tribe's online sports betting app.

The Court thus should reject Plaintiffs' arguments, because the Compact permissibly only authorizes gaming that occurs on the Tribe's Indian lands, consistent with IGRA, and does not and could not authorize activity occurring off of the Tribe's Indian lands.  When the Compact was presented to the Secretary, she was not presented with a decision whether to "authorize" persons in Florida to place an online sports wager with the Tribe when they are physically located off of the Tribe's Indian lands.  The state law ratifying the Compact had already done that.  *See* ECF 1-2 at 6.  As a result, the question for the Secretary was instead whether to approve, consistent with IGRA, the gaming activities that occur on Indian lands, and whether to approve, disapprove, or take no action on the Compact in light of the provisions reflecting agreement by the Tribe and the State that the gaming activity was deemed to occur on Indian lands for *regulatory* purposes.  It was entirely permissible for the Secretary to take no action on

the Compact to allow it to be considered as approved by operation of law, to the extent consistent with IGRA.

State law authorizes persons in Florida to place the wagers at issue with the Tribe within Florida but off of the Tribe's Indian lands.  The Compact's deemed approval, therefore, does not "authorize" gaming that is "illegal" in the State. ECF 1-2 at 6.  As the Florida Attorney General stated, "Plaintiffs are wrong that online sports betting is illegal in Florida outside of Indian lands." *Amicus Curiae Brief of the State of Florida in Support of the Federal Government's Motion to Dismiss and in Opposition to Plaintiffs' Motion for Summary Judgment* at 9 (ECF 28 at 13) (quotation marks omitted).  The Compact is not to the contrary.  *See* ECF 1-1 at 22 (the "Tribe is authorized to operate [the games set forth in the Compact] on its Indian lands, as defined by [IGRA], in accordance with the provisions of this Compact").  To be sure, the Compact states, under a heading titled "Authorization and Location of Covered Games," that sports wagers placed off of the Tribe's Indian lands are "deemed to take place exclusively where received at the location of the servers or other devices used to conduct such wagering activity at a Facility on Indian lands." *Id.*  But as noted above, the State and Tribe are free to agree, for state law purposes, as well as for regulatory purposes under the Compact, that the gaming activity is deemed to occur on the Tribe's Indian lands, consistent with IGRA and other federal laws.  Thus, the Compact not only complies with federal law, it does not violate state law or any state-law specific mandates that limit the authority of the State to have entered into and ratified the Compact.  Moreover, Plaintiffs have failed to establish that the Compact's deemed approval violates the Wire Act or UIGEA in any way.

For all of these reasons and those already submitted, Federal Defendants respectfully request that the Court reject Plaintiffs' request for summary judgment on its claims.

4

**BACKGROUND**

## I.      The Indian Gaming Regulatory Act

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-21 ("IGRA"), governs gaming on

"Indian lands," which IGRA defines as including "all lands within the limits of any Indian

reservation," as well as "any lands title to which is held in trust by the United States for the

benefit of any Indian tribe" or lands "held by any Indian tribe . . . subject to restriction by the

United States against alienation and over which the Indian tribe exercises government power."

25 U.S.C. § 2703(4)(A)-(B).  It is undisputed that the Tribe has lands that qualify as "Indian

lands" under IGRA in seven distinct locations throughout Florida, *see* ECF 1-1 at 22-23, and the

Tribe previously entered into a tribal-state compact with the State in 2010 and has engaged in

gaming pursuant to that compact up until the time the new Compact went into effect. ECF 1 at

11 (¶¶ 35-36).  The 2021 Compact carries forward the gaming permitted by the 2010 Compact,

*see*, *e.g.*, *id.* (¶ 37), and further permits the Tribe to offer additional table games, including craps

and roulette.  ECF 1-1 at 22 (Section III.FF) (defining "Tables Games" as including certain

enumerated games).

IGRA permits the Secretary "to approve any Tribal-State compact entered into between

an Indian tribe and a State governing gaming on Indian lands of such Indian tribe."  25 U.S.C.

§ 2710(d)(8)(A).  IGRA also provides that the Secretary "may" disapprove a compact if it

violates (1) "any provision of this chapter," *i.e.*, IGRA; (2) "any other provision of Federal law

that does not relate to jurisdiction over gaming on Indian lands"; or (3) "the trust obligations of

the United States to Indians."  *Id.* § 2710(d)(8)(B).  IGRA further states that

> If the Secretary does not approve or disapprove a compact described in
> [§ 2710(d)(8)(A)] before the date that is 45 days after the date on which the
> compact is submitted to the Secretary for approval, the compact shall be

considered to have been approved by the Secretary, but only to the extent the compact is consistent with [IGRA].

*Id.* § 2710(d)(8)(C).

Consistent with this provision and Section 2710(d)(8)(A), Interior regulations set forth what must be submitted to the Secretary to commence the statutory 45-day review period.  To ensure that the submitted compact has been "entered into" by both the Tribe and the State, *see id.* § 2710(d)(8)(A), 25 C.F.R. § 293.8 requires the Tribe and the State to submit (1) an original signed copy of the compact; (2) a "tribal resolution or other document" that certifies "the tribe has approved the compact or [compact] amendment in accordance with applicable tribal law"; and (3) "Certification from the Governor or other representative of the State that he or she is authorized under State law to enter into the compact or amendment."  25 C.F.R. § 293.8(a)-(c).

On June 21, 2021, the Tribe transmitted to Interior an original signed copy of the Compact to the Secretary, together with a tribal resolution confirming that the Tribe approved the Compact consistent with tribal law; and the State submitted a copy of the state law ratifying the Compact. *See* Appendix, filed concurrently herewith.[2]  This submission satisfied 25 C.F.R. § 293.8, thus commencing the Secretary's 45-day statutory review period permitted by IGRA. That review period expired on August 5, 2021 before the Secretary took any action to either approve or disapprove the Compact.  At that point, the Compact was "considered to have been approved," but "only to the extent it is consistent with [IGRA]."  25 U.S.C. § 2710(d)(8)(C). Thereafter, pursuant to IGRA's requirements, *see* § 2710(d)(8)(D), the Secretary published

---

[2] Consistent with Local Civil Rule 7(n), excerpts from the administrative record cited herein are filed with the Court as an Appendix to this pleading.  When, as above, administrative record documents are cited in their entirety, the entire document is provided in the Appendix.  Also consistent with Local Civil Rule 7(n), Federal Defendants did not file the entire administrative record with the Court, but will do so upon the Court's request.

notice of such deemed approval in the *Federal Register.  See Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact in the State of Florida*, 86 Fed. Reg. 44,037, 44,037 (Aug. 11, 2021).

## II.    The Unlawful Internet Gambling Enforcement Act

"The UIGEA was passed to regulate online gambling."  *Iipay*, 898 F.3d at 964 (citing 31 U.S.C. § 5361).  The UIGEA does not provide a private right of action, but instead permits either the United States or a state attorney general to commence civil proceedings "to prevent or restrain a restricted transaction" encompassed by the statute.  31 U.S.C. § 5365(b).[3]  The UIGEA "does not make gambling legal or illegal directly."  *Iipay*, 898 F.3d at 965.  Rather, the statute prohibits a person "engaged in the business of betting or wagering" from "knowingly accept[ing], in connection with the participation of another person in unlawful Internet gambling," certain financial payments.  31 U.S.C. § 5363.  *See also Iipay*, 898 F.3d at 965.  And, "unlawful internet gambling occurs" when a person uses the Internet, at least in part, "to place, receive, or otherwise knowingly transmit" a wager when located in a jurisdiction where it is unlawful to do so under federal or state law.  31 U.S.C. § 5362(10)(A).

"[T]he UIGEA does not prohibit otherwise legal gambling"; the statute instead "create[s] a system in which a 'bet or wager' must be legal both where it is 'initiated' and where it is 'received.'"  *Iipay*, 898 F.3d at 965.  *See id.* at 965-67 (concluding that even if online gaming at issue was "completely legal in the place where the bet is accepted," *i.e.,* on the Indian tribe's Indian lands, "the bets are not legal in the jurisdiction where they are initiated," *i.e.*, California, and "[t]hus, when Iipay accepts financial payments over the internet as part of those bets or wagers, Iipay violates the UIGEA").

---

[3] The UIGEA also imposes criminal penalties for violations of the statute.  *See* 18 U.S.C. § 5366.

### III.     The Wire Act

The Wire Act is a federal criminal statute that consists of two general clauses, each of which prohibits two kinds of wire transmissions, creating four prohibitions in total.  18 U.S.C. § 1084(a).  The first clause bars anyone in the gambling business from knowingly using a wire communication facility to transmit "bets or wagers" or "information assisting in the placing of bets or wagers on any sporting event or contest."  *Id.*  The second clause bars any such person from transmitting wire communications that entitle the recipient to "receive money or credit" either "as a result of bets or wagers" or "for information assisting in the placing of bets or wagers."  *Id.*  The Wire Act does not prohibit "the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests."  *Id.* § 1084(b).  Nor does it prohibit "the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State or foreign country where betting on that sporting event or contest is legal into a State or foreign country in which such betting is legal."  *Id.*  The Wire Act defines "State" as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a commonwealth, territory or possession of the United States."  *Id.* § 1084(e).

ARGUMENT

### I.       The Compact's Deemed Approval Does Not Violate IGRA

Federal Defendants do not dispute that IGRA only affirmatively authorizes "gaming activity" taking place on "Indian lands."  *Bay Mills*, 572 U.S. at 795.  Nor do Federal Defendants dispute that the placement of a wager or bet is "gaming activity" under IGRA—including when the wager is transmitted over the Internet or through other electronic means.  *Iipay*, 898 F.3d at 965-69.  Federal Defendants thus recognize that when persons in Florida physically located off of the Tribe's Indian lands place wagers, they are not doing so on the Tribe's Indian lands.  But

this does not mean that the Compact at issue here violates IGRA, because consistent with federal law, the Compact itself only authorizes gaming activity occurring on the Tribe's Indian lands, even though the Compact reflects broader tribal regulatory authority—as permissibly negotiated between the Tribe and the State—with respect to sports betting.  *See infra* Section II.

Plaintiffs challenge the sports betting provisions only to the extent that the Compact "authorizes" persons in Florida, who are physically located off of the Tribe's Indian lands, to place online sports wagers with the Tribe.  *E.g.*, ECF 19 at 10-11, 13, 27, 29.[4]  Federal Defendants disagree with such characterization, as the Compact only authorizes, and could only authorize, the gaming activity occurring on the Tribe's Indian lands—*i.e.*, all gaming activity occurring on the Tribe's Indian lands, including the receipt of wagers placed off of the Tribe's Indian lands.  That the Compact does not authorize the placement of bets off of the Tribe's Indian lands does not render that wager unlawful, however, because state law—not the Compact—authorizes the placement of such wagers off of Indian lands, and as a matter of state law, it was permissible for the State to deem such gaming to occur on the Tribe's lands.  Plaintiffs' challenge assumes that the State and Tribe sought to alter federal law requirements through the Compact.  That assumption is incorrect: the Compact only authorizes gaming activity that occurs on the Tribe's Indian lands, and further permissibly allows the Tribe to regulate sports betting, and thus does not violate IGRA.

---

[4] Under the Compact, the Tribe may offer in-person sports betting to patrons, or online sports betting wherein a patron physically places a wager on the Tribe's Indian lands where it is also received.  ECF 1-1 at 6 (defining "Covered Game" and "Covered Gaming Activity" as including "sports betting" among other games); *id.* at 22-23 (authorizing the Tribe to conduct "Covered Games" and "Covered Gaming Activities" on its Indian lands).  Under either scenario, IGRA and the Compact authorizes all of the activity because in both instances, wagers are both placed and received on the Tribe's Indian lands.  Plaintiffs do not challenge these aspects of the sports betting provisions of the Compact. ECF 19 at 14, 53.

When the State and the Tribe submitted the Compact to the Secretary, the State had already, through the state law ratifying the Compact, *see* ECF 1-2, authorized persons in Florida to place online sports wagers with the Tribe when such persons were physically located off of the Tribe's Indian lands. Fla Stat. § 285.710(13)(b)(7). The state law contemplates, for state law purposes, that the placement of wagers off of the Tribe's Indian lands are deemed to occur there. This is not a novel approach; several other states have enacted similar laws. For example, the New Jersey Constitution generally prohibits gaming in the state except at casinos in Atlantic City. N.J. Const. art. 4, § 7, ¶ 2(D). Notwithstanding this limitation, New Jersey enacted a law allowing players throughout the state to place online sports wagers, and deemed such placement to occur at the servers located in Atlantic City. *See* N.S. Stat. Ann. § 5:12-95.20. Other states have adopted similar laws. *See*, *e.g.*, 42 R.I. Gen. Laws. Ann. § 42-61.2-1(16) (deeming placement of online wagers to occur at facility where received, enacted despite state constitutional provision, R.I. Const. art. VI, § 22, requiring voter referendum on expanding types and location of gaming); Mich. Comp. Laws Ann § 432.304(2) (deeming placement of online sports wagers as being placed at the "internet gaming operator's casino" regardless of where the bet is physically placed). Thus, for state law purposes, Florida adopted an approach identical to the approach taken in several other states, which deems the placement of online sports betting to occur where the bet is received. And as the State has explained, this does not run afoul of the Florida Constitution, because Amendment 3—the state constitutional provision generally requiring a citizens' initiative to authorize gaming—excludes from its scope gaming that is conducted on the Tribe's Indian lands for which the Tribe and State have entered into a tribal-state compact. Fla. Const. art. X Sec. 30(a) ("[N]othing herein shall be construed to limit the ability of the state or [the Tribe] to negotiate gaming compacts pursuant to the Federal [IGRA]

for the conduct of casino gambling on tribal lands . . .").  *See also Monterra MF, LLC et al. v.*
*Haaland et al.*, No. 21-CV-2513, *Amicus Curiae Brief of the State of Florida in Support of the*
*Federal Government's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary*
*Judgment* at 14-16 (ECF 47 at 18-19) (D.D.C. Nov. 1, 2021) (explaining why the gaming
contemplated here falls within the scope of Amendment 3's exception to the citizens' initiative
and thus does not violate state law).

The Secretary, in reviewing the Compact, was therefore not presented with a decision
whether to "authorize" a person in Florida to place an online sports wager with the Tribe when
they are physically located off of the Tribe's Indian lands, as the state law ratifying the Compact
had already done that.  *See* ECF 1-2 at 6 (authorizing sports betting, and providing that the
placement of sports wagers "by players physically located within the state using a mobile or
other electronic device" are "deemed to be exclusively conducted by the Tribe where the servers
or other devices used to conduct such wagering activity on the Tribe's Indian lands are
located."); *id.* ("Games and gaming activities authorized under this subsection and conducted
pursuant to a gaming compact ratified and approved . . . do not violate the laws of this state").

The Compact, in contrast, authorizes the Tribe to operate certain games identified in the
Compact "on its Indian lands, as defined in [IGRA], in accordance with the provisions of this
Compact."  ECF 1-1 at 22.  Thus the Compact properly approves, consistent with IGRA, all
gaming activity, including the receipt of sports wagers, when received by the Tribe on its Indian
lands.  Thus as a matter of both state law, *see* ECF 1-2 at 6, and as provided by the Compact
consistent with IGRA, *see* ECF 1-1 at 16-17 (Section III.CC.2), the Tribe may accept online
sports bets lawfully placed with the State pursuant to State law on  its Indian lands.  This hybrid
gaming approach ensures that (1) it is legal under state law for a person in Florida to place an

online sports wager if they are not physically located on the Tribe's Indian lands; (2) it is legal under IGRA for the Tribe to receive such wager on its Indian lands; and (3) it is legal for the Tribe to engage in sports betting when the wager is both placed and received on the Tribe's Indian lands.  The Compact's deemed approval, consistent with IGRA, *see* 25 U.S.C. § 2710(d)(8)(A), therefore only authorized the gaming activity contemplated by the Compact that occurs on the Tribe's Indian lands—*i.e.*, the receipt of wagers, including online sports wagers.  There is nothing novel about compacts that contemplate a key component of the gaming activity occurring off of the Indian lands.  For example, compacts have long permitted Indian tribes to offer patrons the opportunity for simulcast wagering, which involves wagering on the tribes' Indian lands on a race occurring off of such lands.  *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1053 (9th Cir. 1997) (discussing compacts that governed the tribes' "operation of simulcast wagering" related to horse races occurring off of the tribes' respective Indian lands).

II.     **The Compact Permissibly Encompasses, Consistent with IGRA, the Tribe's and State's Agreement that the Sports Betting is Deemed to Occur on the Tribe's Indian Lands for Regulatory Purposes**

Plaintiffs construe certain provisions of the Compact that "deem" the location of the sports betting as "authorizing" such activity through the Compact, *e.g.*, ECF 19 at 10-11, 13, 27, 29, but such interpretation is flawed.  The Compact provisions deeming the placement of the bet as occurring on Indian lands instead reflect the State's agreement in the Compact that the Tribe *regulates* all sports betting activity—the placement of the wager, as well as its receipt—even if such wager is placed by a person physically located off of the Tribe's Indian lands.

IGRA permits the Tribe and State to negotiate over the application of each entity's civil laws and regulations over gaming and other activities directly related thereto; as well as the

allocation of civil jurisdiction between the State and the Tribe as "necessary for the enforcement of such laws and regulations."  25 U.S.C. § 2710(d)(3)(C)(i)-(ii).[5]  The Compact contains provisions setting forth how the Tribe is to regulate the gaming addressed in the Compact, including the regulation of all sports betting gaming activity.  *See*, *e.g.*, ECF 1-1 at 24-32 (Part V) (setting forth the minimum regulatory requirements the Tribe is to enforce in connection with the gaming addressed in the Compact, including sports betting and other games).

And because the placement of the online sports wager physically off of the Tribe's Indian lands is an activity that is "directly related to the operation of gaming activities" authorized by the Compact—*i.e.*, the receipt by the Tribe of such wager on its Indian lands authorized by the Compact consistent with IGRA—it is a permissible subject that can be addressed in the Compact.  25 U.S.C. § 2710(d)(3)(C)(vii).  IGRA sets forth seven categories of subjects that a state and Indian tribe can negotiate over and agree to in a Compact.  *Id.* § 2710(d)(3)(C)(i)-(vii).  Courts have construed the last of these provisions, which covers "any other subjects that are directly related to the operation of gaming activities," *id.* § 2710(d)(3)(C)(vii), as an ambiguous catch-all provision that can reach other subjects or activities that are "directly related" to the Class III gaming that the Compact approves.  *See*, *e.g.*, *Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*, No. 19-CV-0024, 2021 WL 1212712, *2 (E.D. Cal. Mar. 31, 2021), *appeal filed*, No. 21-15751 (9th Cir.) (the "catch-all" provision allowing a tribe and state to negotiate over and agree to subjects "directly related to the operation of gaming activities" in a compact); *Fort Indep. Indian Cmty. v. California*, 679 F. Supp. 2d 1159, 1173-76, 1178-79 (E.D. Cal.

---

[5] *See also* S. Rep. No. 100-446, at 14 (1988), as reprinted in 1988 U.S.C.C.A.N. 3071, 3084 ("A compact may allocate most or all of the jurisdictional responsibility to the tribe, to the State or to any variation in between.").

2009) (provision is ambiguous, and the court extended *Skidmore* deference to the agency for its interpretation that it encompasses revenue sharing agreed to in the compact).[6]

Here, the placement of wagers off of the Tribe's Indian lands is an activity that is "directly related to" the Tribe's "operation of gaming activities" authorized by the Compact—*i.e.*, the receipt of such online wager to consummate the betting transaction.  Thus, consistent with IGRA, the Tribe and the State negotiated over and agreed to allocate the State's regulatory jurisdiction to the Tribe over the placement of online sports wagers by persons in Florida physically located off of the Tribe's Indian lands.  The allocation of tribal and state jurisdiction is a permissible subject for a compact, § 2710(d)(3)(C)(i)-(ii); and the placement of the wager off of the Tribe's Indian lands is an activity that is "directly related" to the Tribe's receipt of such wagers, § 2710(d)(3)(C)(vii).  This allocation of tribal civil regulatory jurisdiction to the Tribe in the Compact is therefore permissible under IGRA.  Accordingly, the Compact does not violate IGRA.  Plaintiffs' arguments to the contrary should therefore be rejected.

III.     **Plaintiffs Have Not Established that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act**

Plaintiffs argue that the Compact violates the Wire Act because it allegedly allows the Tribe and gaming participants to use wire communications to place, receive, and facilitate sports betting as between the Tribe's Indian lands and other locations in Florida.  ECF 19 at 13, 41-43.  Plaintiffs further argue that the Compact violates the UIGEA because it purportedly allows the

---

[6] Federal Defendants note that Interior recently issued a compact disapproval that discusses the "directly related to gaming" provision of IGRA.  *See* Letter from Bryan Newland, Assistant Secretary–Indian Affairs, to Claudia Gonzales, Chairwoman, Picayune Rancheria of Chukchansi Indians of California (Nov. 5, 2021), *available at* https://www.bia.gov/as-ia/oig/departmental-gaming-decisions.  This recent decision, which concerned activities not directly related to gaming, is fundamentally different from the facts here.  Nevertheless, Federal Defendants notify the Court and the parties of such decision.

Tribe and gaming participants to transfer payments relating to bets between the Tribe's Indian lands, situated within Florida, and other locations in Florida.  ECF 19 at 13, 39-41.  As set forth below, the Secretary was not required to disapprove the Compact on such grounds, and *Amador County* does not hold otherwise.  Nevertheless, Plaintiffs' contentions lack merit in any event and should be rejected.

### A.  Neither IGRA Nor *Amador County* Mandates the Secretary Take Action on a Compact Based on Other Federal Laws or State Law

Plaintiffs have already conceded that IGRA "does not expressly demand that the Secretary determine whether such compacts are valid."  ECF 19 at 48 (citing generally 25 U.S.C. § 2710).  This concession aligns with the text and structure of IGRA, and D.C. Circuit case law does not hold otherwise.  IGRA broadly authorizes the Secretary to approve gaming compacts, 25 U.S.C. § 2710(d)(8)(A), and provides that the Secretary may disapprove a compact "only if" it violates (1) "any provision of this chapter," (*i.e.*, IGRA); (2) "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or (3) "the trust obligations of the United States to Indians.  *Id.* § 2710(d)(8)(B)(i)-(iii).

Plaintiffs read the provision referring to "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," *id.* § 2710(d)(8)(B)(ii), as imposing a mandate that the Secretary, during the limited 45-day statutory review period, review and make determinations as to a compact's compliance with this provision.  While they contend that the Secretary should have at least done so with respect to confirming compliance with the UIGEA (which, under Plaintiffs' theory, requires investigation of the validity of such gaming under state law) and the Wire Act, Plaintiffs' position puts no limitation on the scope of such "mandate." Plaintiffs' reading, taken to its extreme, suggests that the Secretary is required by IGRA to examine, in the 45-day period, an untold number of statutory provisions contained within an

untold number of federal statutes "that do[] not relate to jurisdiction over gaming on Indian lands," as well as the case law interpreting them, contained in the United States Code.

Such construction—which requires reading the IGRA provision in isolation to produce absurd results—is not warranted here, because the Court should read the provision in the context of IGRA as a whole, and especially in the context of the statutory provision that immediately follows, wherein IGRA grants the Secretary the authority to take no action on gaming compacts. *Id.* § 2710(d)(8)(C). This provision states that if the Secretary does not approve or disapprove the compact within the 45-day window, the compact will be considered to have been approved, but "only to the extent the compact is consistent with the provisions of [IGRA]." *Id.* Thus, IGRA provides a check on compacts that are deemed approved by the Secretary but may have provisions that are inconsistent with IGRA. And that provision establishes no mandate that the Secretary engage in legal analysis of all potentially relevant federal and state laws prior to the end of the 45-day review period. *Id.* Nor could that provision be read to require such an exercise. Viewed against the 45-day review period, Congress clearly did not intend to ensnare the Secretary in lengthy expeditions through the United States Code, federal agency regulations, or a state's statutes, regulations, and common law.[7] Moreover, in connection with compact reviews, the Secretary is entitled to rely on representations by the State that it had validly entered

---

[7] The only congressional report in IGRA's legislative history does no more than describe the provisions of § 2710(d)(8). S. Rep. No. 100-446, at 19 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3089. However, the report shows that Congress "concluded that the use of compacts between tribes and states is the best mechanism to assure that the interests of both sovereign entities are met with respect to the regulation of complex gaming enterprises." *Id.* at 13. "The legislative history thus shows that Congress looked to the compacting process primarily as a means of balancing state and tribal interests." *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 726 (9th Cir. 2003). Thus, the Secretary's role in the compacting process is limited, and Congress's decision to allow the Secretary to pass on expressly approving or disapproving a compact is consistent with the overall statutory goals and structure.

into the Compact consistent with state law, and she is not required to resolve state law questions

such as those posed by Plaintiffs here. *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th

Cir. 1997) ("a compact is not *valid* unless properly authorized, but the Secretary is not expected

to *resolve* state law issues regarding that authority in the 45-day period given to [her] to approve

the compact") (emphasis in original).

      *Amador County v. Salazar*, 640 F.3d 373 (D.C. Cir. 2011), is not to the contrary. *Amador

County* addressed whether a statutory deemed approval of a compact was judicially reviewable

under the APA, and concluded it was to the extent that the Compact was contrary to IGRA. *Id.*

at 380-383. And while the *Amador County* court did state in the context before it that IGRA

obligates the Secretary to disapprove (rather than not act upon) a compact that violates

provisions of IGRA, *see id.* at 381, the *Amador County* court did not find that Section

2710(d)(8)(C) mandated that the Secretary disapprove for an alleged violation of other federal or

state law. In fact, *Amador County* suggested the contrary:

> That short [45-day] time period, the Secretary insists, suggests that
> Congress was concerned that the Secretary would act too slowly, and thus
> "Congress's intent was not to embroil the Secretary in lengthy
> investigations into whether the compact violated federal law, IGRA, or
> trust obligations." Appellees' Br. 45. *While this may be correct as to
> compliance with other federal law* and trust obligations, the caveat
> demonstrates that Congress had no intention of trading compliance with
> IGRA's requirements for efficiency in agency proceedings.

*Id.* at 381 (emphasis added).

      Bedrock principles of statutory construction prevent reading *Amador County* as holding

the Secretary must disapprove a compact for purported violation of other federal or state law.

That interpretation would significantly rewrite Section 2710(d)(8)(C) if the only options the

Secretary retains under Section (d)(8) is to approve under (d)(8)(A) or to be mandated to

disapprove under (d)(8)(B). *See Amador County*, 640 F.3d at 381; *see also Hibbs v. Winn*, 542

U.S. 88, 101 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181-186 (rev. 6th ed. 2000)) ("'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'").[8] Because there is no mandate in IGRA obligating the Secretary to analyze potentially pertinent other federal and state laws prior to the 45-day window closing under Section 2710(d)(8)(C), Plaintiffs' allegations that the Secretary violated IGRA in her deemed approval of the Compact because the Compact purportedly violates the Wire Act and the UIGEA are unfounded.

**B. Plaintiffs Have Failed to Prove that the Compact's Deemed Approval Violates Florida Law, the UIGEA, or the Wire Act in Any Event**

As a preliminary matter, to the extent Plaintiffs contend otherwise or request relief under these statutes, they have no private right of action under either the UIGEA or the Wire Act. *See, e.g.*, *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (no private right of action from a criminal statute); *McDonnell Douglas Corp. v. Widnall*, 57 F.3d 1162, 1164 (D.C. Cir. 1995) (same); 31 U.S.C. § 5365(b)(1)-(2) (authorizing only the United States or a state attorney general to initiate proceedings). Because there is no private right of action for either of these statutes, Plaintiffs are entitled to no relief under these laws. But insofar as Plaintiffs allege that Interior and the Secretary violated IGRA in allowing the Compact to go into effect because the Compact purportedly violates the UIGEA and the Wire Act, those arguments are flawed and also warrant no relief.

---

[8] To be clear, the *Amador County* court provides seemingly inconsistent statements regarding Section 2710(d)(8)(B) and 2710(d)(8)(C). First, the Court said that the Secretary "must" disapprove a compact if it falls within any of the subsections of 2710(d)(8)(B). 640 F.3d at 381. But then the Court seems to pivot, saying that Section 2710(d)(8)(C)'s forty-five-day time frame may be too short to assume Congress intended the Secretary to participate in an analysis of whether a compact violates federal law generally. *Id*. The case is therefore subject to interpretation, and it is the United States' position that, so to not render Section 2710(d)(8)(C) meaningless, the Court should not hold that the Secretary must analyze all potentially pertinent federal and state laws prior to the close of the statutorily-prescribed 45-day window.

Moreover, and even if the Court disagrees with the United States' position regarding the Secretary's duty to analyze all pertinent federal and state laws prior to the close of the 45-day window, no relief is warranted on Plaintiffs' UIGEA and Wire Act allegations.

### i. The Court Should Reject Plaintiffs' Contentions Regarding State Law

The crux of Plaintiffs' UIGEA argument is that the gaming contemplated in the Compact is illegal in Florida. ECF 19 at 39-41. The premise underlying this assertion is Plaintiffs' theory that when the Florida Legislature enacted the state law ratifying the Compact, it did so without complying with Amendment 3's voter approval requirement, and thus the state law could not make online sports betting legal in the State. ECF 19 at 15-18.

But as set forth above, Florida contends otherwise. *See* ECF 28 at 13 ("Plaintiffs are wrong that 'online sports betting is illegal in Florida outside of Indian lands.'"). As the State explains, when enacting the state law ratifying the Compact, "the Florida Legislature specifically excepted gaming 'conducted pursuant to a gaming compact ratified and approved' under state law from otherwise-applicable state law criminal prohibitions." *Id.* (citing Fla. Stat. § 285.710(13)(7) and § 285.710(13)(b)(7)). The State has further explained that the Compact falls within Amendment 3's "IGRA-compact exception," specifically, the provision of Amendment 3 that states that nothing in it "limit[s] the ability of the state or Native American tribes to negotiate gaming compacts pursuant to the Federal Indian Gaming Regulatory Act for the conduct of casino gambling on tribal lands." *Monterra MF, LLC et al. v. Haaland et al.*, No. 21-CV-2513, *Amicus Curiae Brief of the State of Florida in Support of the Federal Government's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment* at 14-16 (ECF 47 at 18-19) (D.D.C. Nov. 1, 2021). The State also argues why Amendment 3 should not be construed so narrowly so as to make the IGRA-compact exception contained within it meaningless. *Id.* at 20.

The State has refuted Plaintiffs' arguments to the contrary, and the views of the State as to the lawfulness of state legislation under its own constitution should be given considerable weight in the Court's analysis. *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006) ("[F]ederal courts construe state statutes to avoid constitutional difficulty when fairly possible . . .") (internal quotation marks omitted)). *See also Jones v. United States*, 529 U.S. 848, 857 (2000) ("guiding principle that 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter'") (quotation omitted).  To hold otherwise would interject into this proceeding the details and validity of state law, when the State is not before the Court, which among other things, could raise abstention concerns.

A finding by the Court that the state law violates the Florida constitution would significantly impact the interests, including financial interests, of the State and local municipalities related to the Compact. *See Iowa Indep. Bankers v. Bd. of Gov'rs of Fed. Res. Sys.*, 511 F.2d 1288, 1301 (D.C. Cir. 1975) (stating that abstention only warranted "where some important value unrelated to the precedential weight of the forum is involved," and that "state law must be sufficiently unclear that a substantial likelihood exists that a state court resolution of the state law issues will forward the goal that the abstention was meant to achieve").  *See also* ECF 1-1 at 10 (discussing minimum payments from the Tribe to the State under the Compact); ECF 1-2 at 4 (allocating portions of the revenue shared from the Tribe's gaming to certain municipalities).

A federal court may reach questions of local law, and abstention generally is narrowly applied, but if the Court were to reject the State's arguments concerning the state constitutionality of the state law ratifying the Compact, that could suggest that the state law's

constitutionality under the Florida Constitution is "sufficiently unclear" so as to warrant

abstention. *Iowa Indep. Bankers*, 511 F.2d at 1301 (discussing this requirement for abstention);

*Reetz v. Bozanich*, 397 U.S. 82, 86-87 (1970) (concluding abstention warranted because "the nub

of the whole controversy may be the state constitution" and the case fit squarely within the

principle underlying the abstention doctrine, specifically "'the avoidance of needless friction'

between federal pronouncements and state policies'") (quoting *Railroad Comm'n of Tex. v.

Pullman Co.*, 312 U.S. 496, 500 (1941)).  The Court should consider refraining from reaching

such questions as Plaintiffs presumably could and should resolve these issues in an appropriate

state forum.  Indeed, since many of the claims and relief sought in these cases involve the State

and state law, a state forum would be the more appropriate for any such challenge.  But here, the

State has represented to the Secretary and this Court that it entered into and ratified the Compact

consistent with state law, including the Florida Constitution.  The Court should rely on those

contentions and reject Plaintiffs' unsubstantiated arguments to the contrary.

### ii.  Plaintiffs Failed to Establish Any UIGEA Violation

Plaintiffs' UIGEA allegations fail to establish any violation of the statute.  Again, that

statute "does not make gambling legal or illegal directly." *Iipay,* 898 F.3d at 965.  Rather,

UIGEA prohibits anyone "engaged in the business of betting or wagering" from "knowingly

accept[ing]" certain types of payments "in connection with the participation of another person in

unlawful Internet gambling." 31 U.S.C. § 5363.  And "unlawful Internet gambling" means

placing, receiving, or otherwise knowingly transmitting a bet or wager "by any means which

involves the use, at least in part, of the Internet where such bet or wager is unlawful under any

applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated,

received, or otherwise made." 31 U.S.C. § 5362(10)(A).

Here, as set forth above, the placement of an online sports wager in Florida but off of the Tribe's Indian lands is legal under state law and the receipt of such wager by the Tribe on its Indian lands is legal under IGRA.  Thus, the circumstances here are fundamentally different than those in *Iipay*, because the sports betting is "legal both where it is 'initiated' and where it is 'received,'" 898 F.3d at 965. Plaintiffs' claims to the contrary thus fail.

Federal Defendants agree with the State that the Court "need not—and should not—interpret Florida's constitution in this case." *Monterra MF, LLC et al. v. Haaland et al.*, No. 21-CV-2513, *Amicus Curiae Brief of the State of Florida in Support of the Federal Government's Motion to Dismiss and in Opposition to Plaintiff's Motion for Summary Judgment* at 14 (ECF 47 at 18) (D.D.C. Nov. 1, 2021).  Plaintiffs contend that they are not asking the Court to find that the state law ratifying the Compact violates the Florida Constitution, but such finding would be necessary to hold in favor of Plaintiffs on their UIGEA arguments.  ECF 19 at 39-43.  But where, as here, state law authorizes the placement of online sports betting by persons in Florida who are physically located off of the Tribe's Indian lands, where IGRA authorizes the Tribe to receive such wagers on its Indian lands, and where Plaintiffs have not proved any other violation of federal or state law, the UIGEA is not implicated at all.

### iii.  Plaintiffs Failed to Establish Any Wire Act Violation

Plaintiffs allege that the Compact violates the Wire Act, 18 U.S.C. § 1084(a), because it purportedly allows  bets or wagers, information assisting in the placement of bets or wagers, or bank wire transfers in connection to those bets or wagers, to be transmitted "in interstate or foreign commerce," *id*; ECF 19 at 41-43.  Plaintiffs also argue that the Compact violates the Wire Act because "communications . . . are likely to travel across state lines given the interconnected nature of the interstate wire facilities."  ECF 19 at 42.

To the extent that the Compact contemplates online sports betting that occurs entirely within the State of Florida, the Wire Act is not implicated at all. *See* 18 U.S.C. 1084(a) ("in interstate or foreign commerce").  That is, if bets are being placed off the Tribe's Indian lands in Florida and received on the Tribe's Indian lands—all of which are wholly within Florida—and no "transmissions" of "bets or wagers" occur outside of Florida, then there is no violation of the Wire Act.  *See United States v. Lyons*, 740 F.3d 702, 713 (1st Cir. 2014) ("the Wire Act prohibits interstate gambling without criminalizing lawful intrastate gambling").  Plaintiffs ignore the text of the statute, 18 U.S.C. 1084(a) ("*interstate* or foreign") (emphasis added), arguing that the Wire Act "should apply when the communication is between a person in a state and a person on an Indian reservation."  ECF 19 at 42.  They offer no support for this position, and thus it should be rejected outright.  *See also* ECF 28 at 14.  To be clear, it is the United States' position that if a bet or wager is placed and received intrastate, but that bet or wager or information facilitating that bet or wager is transmitted or routed outside of that state at any time, then the Wire Act may be implicated and violated. *Cf.* 18 U.S.C. § 1084(b).  However, Plaintiffs have not alleged any facts establishing that the Wire Act *is* being violated here.  Plaintiffs' Wire Act arguments therefore fails.[9]

---

[9] Moreover, the Court in this civil matter should avoid making pronouncements on matters of federal criminal law so to avoid overstepping criminal procedure principles and prosecutorial discretion.  *See Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1249 (11th Cir. 1999).  In that case, the Eleventh Circuit explained that "two negative consequences" could result from mandating civil remedies, like an injunction, on matters of criminal law.  *Id.*  First, if the court pronounces a violation of federal criminal law, the individuals or entities said to be violating those federal criminal laws "would be deprived of [their] congressionally-recognized right to invoke the safeguards of criminal procedure."  *Id.* Second, "the discretion of the United States not to prosecute the [person or entity] would be severely restricted in light of the court's" pronouncement in the civil action.  *Id.*

### C.  Federal Defendants' Position Here Does Not Contradict Past Federal Government Positions or Case Law Regarding Internet Gaming

The cases cited by Plaintiffs and the federal government's prior positions regarding internet gaming all involved fundamentally different factual circumstances than those at issue here.  Those cases and circumstances all involved Indian tribes acting unilaterally without any compact, without any jurisdictional allocation, and without any state law approval.  That renders them all fundamentally distinguishable from this case.

In *Iipay*, the tribe argued that the gaming activity that was illegal in the state could be made legal by the tribe's unilateral use of a proxy play. 898 F.3d at 966-67.  Because the gaming was illegal in the state, the Court concluded the tribe's gaming violated the UIGEA. *Id.* at 967.  Here, in contrast, not only is the gaming *legal* in Florida, the Tribe and State have a Compact agreeing to this type of gaming.  There is simply no conflict with the circumstances in this case and those in *Iipay*.  The United States' position there did not address the issues presented here, and to the extent that there is conflict, this brief sets forth the sUnited States' position.

Likewise, the facts and circumstances in *AT&T Corp. v. Coeur D'Alene Tribe*, 45 F. Supp. 2d 995 (D. Idaho 1998), *rev'd on other grounds*, 283 F.3d 1156 (9th Cir. 2002), are readily distinguishable from those here.  In that case, the Indian tribe and the State of Idaho had a compact, *id.* at 998, but because the Indian tribe did not have a compact with other affected states, the tribe could not receive online sports wagers originating from those jurisdictions, *id.* at 1002.  As the court explained, "IGRA does not contemplate that a tribe's class III gaming operation can be operated in a state without first addressing, through the negotiation of a compact, that state's legitimate interest in regulating gaming activities within its borders."  *Id.*  The court further explained that the Indian tribe's unilateral "interjection of gaming activities into states with which it has no compact, upset the balance Congress struck in IGRA between

'the need for state enforcement of gaming laws [and] the federal and tribal interests in traditional

tribal sovereignty." *Id.* (quoting *Wilson*, 124 F.3d at 1060).  Here the State's "legitimate interest

in regulating gaming activities within its borders" was addressed through the Compact, and thus

this case poses no barriers to the Compact under IGRA or other federal laws.

And the National Indian Gaming Commission ("NIGC") opinions Plaintiffs cite, *see* ECF

1-7; ECF 19 at 32-33, are not contrary to the positions reflected herein.  Those opinions reflect

NIGC's view that IGRA does not authorize any activities occurring off of Indian lands, and that,

because the proposed gaming transaction included gaming activity that was at least partially

located off of Indian lands, IGRA alone could not authorize such activity.  Just as IGRA cannot

authorize activities occurring off of Indian lands, nor does IGRA render such off-Indian lands

activity unlawful.  *See*, *e.g.*, *Coeur D'Alene Tribe*, 45 F. Supp. 2d at 1004 (national lottery at

issue "[did] not 'violate' IGRA, it simply is not covered by that statute to the extent its

operations occur off reservation," and when occurring "out-of-state and outside the limits of any

reservation, state law applies to regulate that conduct").

For all the reasons stated above, Plaintiffs have failed to establish that the Compact's

deemed approval violates Florida law, the UIGEA, or the Wire Act, and thus Plaintiffs are

entitled to no relief on the basis of their contrary allegations.

**IV.        The Compact's Deemed Approval Does Not Violate the Equal Protection Clause**

Federal Defendants' prior filings and argument demonstrate why Plaintiffs' Equal

Protection claim lacks merit and should be rejected in the context of summary judgment, and

Federal Defendants rely on that argument to oppose Plaintiffs' claim on the merits.  Briefly,

however, Federal Defendants reiterate that the doctrine of constitutional avoidance instructs that

courts should not reach a constitutional question "if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tenn Vall. Auth.*, 297 U.S. 288, 347 (1936).

Additionally, the Court should reject Plaintiffs' argument that the cases upholding federal statutes enacted for the benefit of Indian tribes in the context of an Equal Protection Clause challenge only did so because they were "presented with classifications that occurred *on or near Indian lands*." ECF 19 at 45 (emphasis in original). Controlling precedent is not so constrained. *See Morton v. Mancari*, 417 U.S. 535, 553-55 (1974) (federal statutory preference in hiring for members of federally recognized Indian tribes, including Interior employees located in Washington, D.C., did not violate the Equal Protection Clause); *Am. Fed'n of Gov't Emps. v. United States*, 330 F.3d 513, 516, 521 (D.C. Cir. 2003) (affirming contracting preference that was "not restricted to Indian activities on or near reservations or Indian land").

## V.     The Compact's Deemed Approval Does Not Violate the Trust Obligations the United States Owes to Indian Tribes

Plaintiffs briefly allege, without reference to supportive case law, that they can maintain a cause of action for an alleged violation of the "trust obligations in failing to consider the Compact's illegality under federal law, and in failing to disapprove it on that basis." ECF 19 at 47 (citing to 25 U.S.C. § 2710(d)(8)(B)).[10]

---

[10] Plaintiffs lack both Article III and prudential standing to bring such a breach-of-trust claim. Plaintiffs have failed to establish how they can assert third-party standing, as "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). They are not tribal members, are not an Indian tribe, and cannot be the beneficiary of any trust to the extent any is created by IGRA. To the extent that IGRA created any duty that could support the type of breach of trust claim asserted here (and it did not), such a claim must be brought by a federally-recognized Indian tribe. *See, e.g., Warren v. United States*, 859 F. Supp. 2d 522, 527 (W.D.N.Y. 2012), *aff'd*, 517 F. App'x 54 (2d Cir. 2013) (finding no standing in case in which non-tribal plaintiff "claim[ed] that the United States, by failing to adhere to existing regulations and to promulgate and implement new regulations under IGRA, violated its trust obligation toward Indian nations and tribes.").

Moreover, Plaintiffs' claim entirely lacks merit because they have not identified a specific, enforceable trust duty that has supposedly been violated. Plaintiffs appear to argue that there is an enforceable trust obligation to "disapprove" a compact if there is any argument (apparently, regardless of who advances it or its validity) that it violates federal law. That is, of course, not what IGRA actually says. The cited provision states that the "Secretary *may* disapprove a compact described in subparagraph (A) only if such compact violates—(i) any provision of this chapter, (ii) any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands, or (iii) the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B) (emphasis added). The "Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 174, 177 (2011). To succeed on such a claim, then, even an Indian tribe must "identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003). This analysis "must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id*. But courts have held that IGRA "does not create a fiduciary duty; it is a regulatory scheme that balances the competing interests of the states, the federal government and Indian tribes." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States*, 259 F. Supp. 2d 783, 790 (W.D. Wis. 2003). *See also Vizenor v. Babbitt*, 927 F. Supp. 1193, 1201 (D. Minn.1996) ("no fiduciary duty created by [IGRA's] elaborate regulatory scheme"); *Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1297 (D.N.M. 1996) (IGRA "does not in itself . . . impose duties upon the United States such as those applicable to private trustees"). Plaintiffs cannot identify a

specific enforceable trust obligation to deny a proposed compact, and therefore do not present a valid basis for any relief on these grounds.

## VI.      The Administrative Record

Pursuant to the Court's order, Federal Defendants have filed, concurrently herewith, a certified list of the contents of the Administrative Record, *see* ECF 40, and also concurrently herewith, provided a copy of the Administrative Record to Plaintiffs.[11]

In APA cases, "'[i]t is well settled that judicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made." *Am. Bottling Co. v. Nat'l Labor Relations Bd.*, 992 F.3d 1129, 1140 (D.C. Cir. 2021) (quoting *Env't Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981)).  This is because under the APA, a court must review agency action "based on the record the agency presents to the reviewing court," *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), "not some new record made initially in the reviewing court," *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "Exceptions to th[is] rule are quite narrow and rarely invoked[,] . . . primarily limited to cases where the procedural validity of the agency's action remains in serious question, or the agency

---

[11] Federal Defendants' understanding is that the court in *Amador County* did not have before it the agency's administrative record.  That court concluded the plaintiff's challenge alleged the deemed approval was "contrary to law," and on that basis, stated that it did not need "agency reasoning."  640 F.3d at 382.  Federal Defendants note, however, that on remand to the district court, the United States did submit an administrative record to the Court.  *Amador County v. S.M.R. Jewell*, No. 05-CV-658, *Notice of Filing of Certified Administrative Record Contents* (D.D.C. May 14, 2015).  *See also Amador County v. S.M.R. Jewell*, 170 F. Supp. 3d 135, 141 (D.D.C. 2016) (setting out APA standards governing judicial review on an agency's record, but stating that, "this is not a typical APA case" because the matter was remanded "specifically for a factual determination with respect to the parties' intent in executing the 1987 *Hardwick* stipulated judgment . . . [i]t is not the administrative record that is determinative of this issue; rather this Court must consider documents outside the administrative record and judicially noticeable matters that are germane to the remand question.")

affirmatively excluded relevant evidence." *Banner Health v. Price*, 867 F.3d 1323, 1335 (D.C. Cir. 2017) (quoting *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014)).

This case is unlike most APA cases, in that the final agency action—the Compact's deemed approval—does not involve a written decision from Interior setting forth its rationale. Plaintiffs point to a letter issued, after the final agency action, by then-Acting Assistant Secretary–Indian Affairs Bryan Newland, *see* ECF 1-6, in making their merits arguments. There is no statutory or regulatory mandate obligating the Secretary or other Interior officials to issue letters in connection with deemed approved compacts. The letter, moreover, does not constitute an agency decision, nor is it final agency action. Because the letter was issued after the only final agency action at issue here (the Compact's deemed approval), the letter is not part of the administrative record. Nevertheless, to the extent the Court concludes that the letter, despite it being extra-record evidence, helps address the Court's questions about the final agency action here, controlling precedent permits the Court to consider it in its review. *See*, *e.g.*, *Price*, 867 F.3d at 1335. To the extent the letter is construed as inconsistent with the positions set forth here and in other filings made on behalf of Federal Defendants in this case, the position set forth in such briefs governs as the position of the United States.

In addition, and as set forth above, the Secretary published notice of the Compact's deemed approval in the *Federal Register* on August 11, 2021. This publication, as it occurred after the final agency action at issue here, is also outside the administrative record. The Court is nevertheless entitled to take judicial notice of *Federal Register* publications. 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number."). Federal Defendants

contend it is proper for the Court to do so here, as it reflects the Secretary's ministerial

compliance with IGRA's publication requirement following the Compact's deemed approval.

## CONCLUSION

For the foregoing reasons, Federal Defendants request that the Court deny Plaintiffs'

Motion for Summary Judgment, or in the Alternative, Preliminary Injunction (ECF 19).

Respectfully submitted this 9th day of November, 2021.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

OF COUNSEL:                P.O. Box 7611, Ben Franklin Station
JODY H. SCHWARZ      Washington, DC 20044
Senior Attorney           Telephone:  (202) 616-3148
Office of the Solicitor      rebecca.ross@usdoj.gov
Division of Indian Affairs    hillary.hoffman@usdoj.gov
                           *Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I, Rebecca M. Ross, hereby certify that on November 9, 2021, I caused the foregoing

FEDERAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM to be sent electronically to

the registered participants as identified on the Notice of Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice