**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WEST FLAGLER ASSOCIATES, LTD., a
Florida Limited Partnership d/b/a MAGIC
CITY CASINO,

BONITA-FORT MYERS CORPORATION,
a Florida Corporation d/b/a BONITA
SPRINGS POKER ROOM,

        *Plaintiffs*,

v.

DEB HAALAND, in her official capacity as
SECRETARY OF THE UNITED STATES
DEPARTMENT OF THE INTERIOR,

UNITED STATES DEPARTMENT OF
THE INTERIOR,

        *Defendants*.

Civil Action No.  1:21-cv-02192-DLF

**SEMINOLE TRIBE OF FLORIDA'S MOTION FOR STAY PENDING APPEAL AND
MOTION FOR EXPEDITED CONSIDERATION
AND STATEMENT OF POINTS OF LAW AND AUTHORITIES IN SUPPORT**

The Seminole Tribe of Florida moves for a stay pending appeal of this Court's November

22, 2021 Order, ECF No. 42, and Memorandum Opinion, ECF No. 43, pursuant to Local Civil

Rule 7 and Federal Rule of Appellate Procedure 8(a)(1)(A).  In accordance with Local Civil Rule

7(m), the Tribe has conferred in good faith with counsel for Federal Defendants and Plaintiffs.

Federal Defendants state that they take no position on the Tribe's Motion.  Plaintiffs state that they

do not consent to the Tribe's Motion.

The Tribe further moves for expedited consideration of this Motion for a Stay Pending

Appeal, and respectfully requests that the Court resolve this Motion no later than November 24,

2021 so that, if necessary, the Tribe can promptly seek relief in the D.C. Circuit.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................1

ARGUMENT .......................................................................................................................2

    A.  The Seminole Tribe Is Likely to Succeed on the Merits Because it Raised
         Substantial Legal Questions Deserving of Resolution on Appeal
         .........................................................................................................................4

            a.   The Tribe was entitled to limited intervention as of right under Rule 24 ........5

            b.   The Tribe was a necessary party under Rule 19(a) ..........................................7

            c.   The Tribe was an indispensable party under Rule 19(b).................................7

            d.   The Tribe's sovereign immunity prevented its joinder ....................................9

    B.  The Seminole Tribe Will Suffer Irreparable Harm if a Stay Is Not Granted
         Because Failure to Dismiss the Case Due to the Tribe's Sovereign Immunity
         Constitutes a Substantial Blow to the Tribe's Sovereign and Economic
         Interests ...........................................................................................................9

    C.  Granting a Stay Will Not Harm Plaintiffs or Federal Defendants Because it
         Will Merely Maintain the Status Quo and Plaintiffs' Claimed Injuries Are
         Speculative ....................................................................................................13

    D.  A Stay Is in the Public Interest Because it Maintains the Status Quo,
         Including the Economic and Employment Benefits Flowing to Florida
         Citizens ..........................................................................................................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Aamer v. Obama*,
  742 F.3d 1023 (D.C. Cir. 2014) .................................................................................3

*\*Akiachak Native Cmty. v. Jewell*,
  995 F. Supp. 2d 7 (D.D.C. 2014) ....................................................................4, 10, 14

*Aviles-Wynkoop v. Neal*,
  978 F. Supp. 2d 15 (D.D.C. 2013) ...........................................................................14

*Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*,
  513 F. Supp. 3d 154 (D.D.C. 2021) .....................................................................3, 10

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ..................................................................................10

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
  904 F.3d 1014 (D.C. Cir. 2018) (per curiam) ....................................................3, 4, 9

*Confederated Tribes of Chehalis Rsrv. v. Mnuchin*,
  456 F. Supp. 3d 152 (D.D.C. 2020) ..........................................................................11

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
  772 F.2d 972 (D.C.Cir. 1985) (per curiam) .......................................................13, 14

*Doe 2 v. Mattis*,
  344 F. Supp. 3d 16 (D.D.C. 2018) ............................................................................14

*Elrod v. Burns*,
  427 U.S. 347 (1976) (plurality opinion) ...................................................................10

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ....................................................................................6

*Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kan. v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995) ................................................................................7, 9

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) .........................................................................10, 13, 14

*\*Mashpee Wampanoag Tribe v. Bernhardt*,
  No. 18-2242 (PLF), 2020 WL 3034854 (D.D.C. June 5, 2020), *appeal dismissed*,
  No. 20-5237, 2021 WL 1049822 (D.C. Cir. Feb. 19, 2021) .............................10, 13

*Michigan v. Bay Mills Indian Cmty.*,
  572 U.S. 782 (2014) ............................................................................... 11

*Mills v. District of Columbia*,
  571 F.3d 1304 (D.C. Cir. 2009) ............................................................. 10

*M.M.V. v. Barr*,
  459 F. Supp. 3d 1 (D.D.C. 2020) ............................................................. 4

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................... 3, 9

*Population Inst. v. McPherson*,
  797 F.2d 1062 (D.C. Cir. 1986) ............................................................... 4

*\*PPI, Inc. v. Kempthorne*,
  No. 08-cv-248-SPM, 2008 WL 2705431 (N.D. Fla. July 8, 2008) ......................... 8, 9

*Prairie Band of Potawatomi Indians v. Pierce*,
  253 F.3d 1234 (10th Cir. 2001) ............................................................. 10

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978) ................................................................................. 11

*Shawnee Tribe v. Mnuchin*,
  984 F.3d 94 (D.C. Cir. 2021) ................................................................. 11

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ................................................................. 3

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*,
  476 U.S. 877 (1986) ............................................................................... 11

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ................................................................................. 6

*Ute Indian Tribe of Uintah & Ouray Rsrv. v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) ............................................................. 10

*Va. Petroleum Jobbers Assoc. v. Fed. Power Comm'n*,
  259 F.2d 921 (D.C. Cir. 1958) ............................................................... 14

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841 (D.C. Cir. 1977) ............................................................. 3, 4

iii

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008).................................................................................3

*Wis. Gas Co. v. F.E.R.C.*,
  758 F.2d 669 (D.C. Cir. 1985) (per curiam) .................................9, 10, 13

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006) .................................................................10

## RULES

Fed. R. Civ. P. 19.................................................................................3, 4, 12

Fed. R. Civ. P. 19(a) .................................................................................7

Fed. R. Civ. P. 19(b) .................................................................................5, 7

Fed. R. Civ. P. 24.................................................................................3, 5

Fed. R. Civ. P. 24(a) .................................................................................3, 6

## REGULATIONS

86 Fed. Reg. 44,037 (Aug. 11, 2021).................................................................................1

## MISCELLANEOUS

D.C. Circuit Handbook of Practice and Internal Procedures (2021) .................................3

U.S. Const. art. I, § 8, cl. 3.................................................................................10

U.S. Const. art. II, § 2, cl. 2.................................................................................10

U.S. Const. art. IV, § 3, cl. 2.................................................................................11

## INTRODUCTION

The Seminole Tribe of Florida (Tribe) has appealed the Court's denial of its Motion for Limited Intervention and its Motion to Dismiss, and it now moves to stay the Court's November 22, 2021 Order and Memorandum Opinion, ECF Nos. 42 and 43, pending resolution of its appeal.

The denial of the Tribe's Motion for Limited Intervention and Motion to Dismiss poses substantial legal questions that warrant a stay pending appeal.  The following four factors determine whether a stay pending appeal should be granted in the D.C. Circuit: (1) the movant's likelihood of success on the merits of its appeal; (2) the prospect of irreparable injury to the movant if relief is withheld; (3) the possibility of substantial harm to other interested parties if relief is granted; and (4) where the public interest lies.  The Tribe conclusively meets all four of these factors, and its Motion for a Stay Pending Appeal should be granted.

## BACKGROUND

In 2021, the Tribe and the State entered into a new gaming compact under the Indian Gaming Regulatory Act (IGRA) (2021 Compact).  The 2021 Compact was signed by Ron DeSantis, Governor of Florida, and Marcellus Osceola, Jr., Chairman of the Tribal Council of the Seminole Tribe of Florida, on April 23, 2021, 2021 Compact, ECF No. 1-1, and was amended by the parties on May 17, 2021, 2021 Compact Amend., ECF No. 1-5.  On May 19, 2021, it was ratified by an overwhelming bipartisan majority in both houses of the Florida Legislature and was enacted as Chapter 2021-268, Florida Statutes.  *See* Compl., ECF No. 1 ¶ 49; Ratifying Law, ECF No. 1-2.  The ratifying legislation was signed into law by Governor DeSantis on May 25, 2021, and became effective that day.  *See* Compl., ECF No. 1 ¶ 51.  The 2021 Compact was federally approved by operation of law, and notice of that approval was published in the Federal Register on August 11, 2021.  86 Fed. Reg. 44,037 (Aug. 11, 2021).

1

Among other things, the 2021 Compact allows the Tribe to accept wagers placed by patrons physically located outside the Tribe's Indian lands but within the State.  In order to regulate the gaming under IGRA, such wagers are deemed to take place where they are received by servers at the Tribe's facilities on Indian lands.  *See* 2021 Compact Part III.CC.2, ECF No. 1-1, at 17; *id.* Part III.CC.3(d), at 19; *id.* Part IV.A, at 22.  Both the federal government and the State have taken the position that this arrangement fully complies with all applicable laws.  *See, e.g.*, Defs.' Suppl. Mem., ECF No. 41 at 2–4; Letter from Bryan Newland, Principal Deputy Assistant Sec'y – Indian Affairs, Dep't of the Interior, to Marcellus Osceola, Jr., Chairman, Seminole Tribe of Florida (Aug. 6, 2021), ECF No. 1-6; Fla.'s Amicus Curiae Br. in Supp. of Defs., ECF No. 28; Ratifying Law, ECF No. 1-2.

Plaintiffs filed their Complaint on August 16, 2021, alleging that the online sports betting provisions in the 2021 Compact are unlawful.  *See* Compl., ECF No. 1.  The Tribe filed a Motion for Limited Intervention on September 17, 2021, for the sole purpose of filing a Motion to Dismiss for failure to join it as a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure.  *See* Tribe's Mot. Limited Intervention, ECF No. 13.  The Court set an expedited briefing schedule on September 15, 2021, and held a hearing on November 5, 2021.  On November 22, 2021, this Court issued an Order granting Plaintiffs' Motion for Summary Judgment, denying Federal Defendants' Motion to Dismiss, and denying as moot the Seminole Tribe of Florida's Motion for Limited Intervention.

## ARGUMENT

In the D.C. Circuit, courts employ the following four factors in considering a motion to stay pending appeal:

(1)  The movant's likelihood of success on the merits of its appeal;
(2)  The prospect of irreparable injury to the movant if relief is withheld;

(3) The possibility of substantial harm to other interested parties if relief is granted; and
(4) Where the public interest lies.

*See Nken v. Holder*, 556 U.S. 418, 434 (2009).[1]  The D.C. Circuit has traditionally evaluated these factors using a "sliding scale" approach in which "a strong showing on one factor could make up for a weaker showing on another."  *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). However, the first two factors are the "most critical."  *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (quoting *Nken*, 556 U.S. at 434).[2]

The Tribe can satisfy all four factors of the test for evaluating motions for stays pending appeal.  The Tribe has a strong likelihood of success on the merits because it demonstrated that it was entitled to limited intervention under Rule 24 of the Federal Rules of Civil Procedure and that it was a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure. The Tribe in its Motion for Limited Intervention established that it met every factor of the Rule 24(a) test for intervention as of right and in its Motion to Dismiss established that the factors of

---

[1] Courts in the D.C. Circuit have interchangeably used the *Nken* factors and the substantially similar factors from *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  The D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021) restates the *Holiday Tours* factors, but recent Circuit precedent has relied on *Nken*.

[2] Several courts have noted that Supreme Court precedent—specifically, *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008)—casts doubt on the continued validity of this sliding scale approach.  *See, e.g.*, *Sherley*, 644 F.3d at 393 ("[W]e read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement'" (citation omitted)); *Cath. Legal Immig. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 166 (D.D.C. 2021) (relying on *Sherley*).  However, the D.C. Circuit has not definitively resolved this issue, and it remains an "open question" whether the *Winter* standard prevails over the sliding scale approach.  *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (citing *Sherley*, 644 F.3d at 393); *Cath. Legal*, 513 F. Supp. 3d at 166 ("[N]either the Supreme Court nor the D.C. Circuit has expressly overruled [the sliding scale] approach.").  Regardless, the Tribe has a strong likelihood of success on the merits and meets all four factors even without the benefit of the sliding scale approach.

Rule 19 weighed in favor of the Tribe's status as a necessary and indispensable party. Further, the Tribe established its sovereign immunity from suit. Accordingly, the case should have been dismissed for failure to join a necessary and indispensable party that could not be joined due to sovereign immunity.

The Tribe's economic and sovereign interests will be irreparably injured if a stay is not issued pending resolution of the serious legal issues posed on the Tribe's appeal. Any harm to other parties is still speculative at best, and the public interest weighs in favor of maintaining the public benefits of the 2021 Compact and preserving the status quo, which is to allow an activity approved under federal, State, and tribal law to continue pending the outcome of the appeal.

### A. The Seminole Tribe Is Likely to Succeed on the Merits Because it Raised Substantial Legal Questions Deserving of Resolution on Appeal

To satisfy the first factor of the stay test, the likelihood of success on the merits must be "substantial." *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Failure to meet this first factor is "an arguably fatal flaw for a stay application." *Citizens for Resp. & Ethics*, 904 F.3d at 1019. Yet, "a movant 'need not establish an absolute certainty of success on the merits: It will ordinarily be enough that the movant has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them a fair ground of litigation and thus for more deliberative investigation.'" *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 13 (D.D.C. 2014) (quoting *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)). As a result, a court should issue a stay pending appeal when a movant's claims present "substantial" legal questions. *See Akiachak*, 995 F. Supp. 2d at 13–14, 18–19 (granting stay pending appeal because, even "[t]hough the Court disagrees with Alaska's position, and finds there to be a low likelihood of success on the merits, it recognizes that the case presented difficult and substantial legal

4

questions regarding the balance between federal and state regulation of Indian land, and that its decision was at times, a close one").

Whether this case should have been dismissed in the absence of the Tribe, which could not be joined due to its sovereign immunity, poses a substantial legal question.  It involves resolution of whether the Administrative Procedure Act's waiver of the federal government's immunity allows a plaintiff to mount a collateral attack on the United States to seek to chill the actions of a non-present tribe that has not waived its sovereign immunity from suit.  In addition, there is a substantial legal question as to whether the United States could ever be said to have adequately represented the interests of the Tribe when it actively opposed the Tribe's Motion to Dismiss, *see* Defs.' Resp. to Tribe's Mot. to Dismiss, ECF No. 34, was not prepared to argue the merits of the case during the November 5, 2021 telephonic hearing, *see* Min. Order, Nov. 5, 2021, and "forfeited any request for severance by omitting it from its motions to dismiss, its corresponding replies, and its supplemental briefs," Memorandum Opinion, ECF No. 43 at 24, n.8.  Finally, the Tribe established that it had a right to limited intervention under Rule 24 and that it was a necessary and indispensable party under Rule 19 that could not be joined due to sovereign immunity.  As a result, this Court should grant a stay pending resolution of these substantial legal questions by the D.C. Circuit.

### a.  The Tribe was entitled to limited intervention as of right under Rule 24.

In its Memorandum Opinion, in order "to conserve judicial resources," this Court exercised its discretion to determine whether the Tribe is an indispensable party under Rule 19(b) before resolving the Tribe's Motion for Limited Intervention.   ECF No. 43 at 13.  Because it found that the case could proceed "in equity and good conscience" under Rule 19(b), the Court denied the Tribe's Motion for Limited Intervention as moot.  ECF No. 43 at 17.  As discussed below, the

Tribe is likely to succeed on its Motion to Dismiss for failure to join it as an indispensable party, so its Motion for Limited Intervention is not moot.

In its Motion for Limited Intervention, the Tribe established that intervening for the limited purpose of asserting its sovereign immunity from suit is appropriate and recognized in this Circuit, ECF No. 13 at 4–5, and established that the relief sought by Plaintiffs to prevent the Tribe from conducting online sports betting would cause the Tribe significant injuries that are sufficient to grant it Article III standing, ECF No. 13 at 5–8.

The Tribe also demonstrated that it met the four-factor test used to determine whether intervention under Rule 24(a) is appropriate.  The Tribe satisfied the first factor because it demonstrated that its Motion for Limited Intervention was timely, as it was filed on September 17, 2021, just one month after the Complaint was filed on August 16, 2021, and before any responsive pleading or motion had yet been filed.  *See* Tribe's Mot. Limited Intervention, ECF No. 13 at 8–9.  The Tribe satisfied the second factor because it demonstrated that it has standing in this case, which is sufficient for showing a legally protected interest in this action.  ECF No. 13 at 9.  The Tribe showed it met the third factor because it demonstrated that denying intervention in this action would impair and impede the Tribe's ability to protect its interests.  ECF No. 13 at 9–10.  Finally, as discussed below, the Tribe showed it met the fourth factor because the Tribe met the "minimal" burden to demonstrate that it was not adequately represented by Federal Defendants.  *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (citation omitted); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted) (describing this burden as "not onerous").

As the Tribe explained in its Motion for Limited Intervention, Federal Defendants do not share the Tribe's economic or sovereign interests in defending the 2021 Compact and do not

6

adequately represent the Tribe's interest in this case.  ECF No. 13 at 10–14; *see also* Tribe's Reply to Pls.' Opp., ECF No. 24, at 8–15.  Subsequent developments in this case have demonstrated this is in fact true.  Far from taking a position that advanced the Tribe's interests in its own sovereignty, the United States actively opposed the dispositive Motion to Dismiss filed by the Tribe that sought to advance those interests, *see* Defs.' Resp. to Tribe's Mot. to Dismiss, ECF No. 34, was unprepared to argue the merits during the November 5, 2021 telephonic hearing, *see* Min. Order, Nov. 5, 2021, and "forfeited any request for severance by omitting it from its motions to dismiss, its corresponding replies, and its supplemental briefs," Memorandum Opinion, ECF No. 43 at 24, n.8.  Based on these facts, the United States cannot be said to have adequately represented the interests of the Tribe in this case.

### b.  The Tribe was a necessary party under Rule 19(a).

In its Memorandum Opinion, the Court found that the Tribe was a required or necessary party under Rule 19(a).  As a result, the Tribe is likely to succeed in demonstrating this requirement.

### c.  The Tribe was an indispensable party under Rule 19(b).

This Court's Memorandum Opinion holds that the Tribe is not an indispensable party under the four-factor test in Rule 19(b).  As an initial matter, while the Court's Memorandum Opinion recognizes that in the D.C. Circuit "there is very little room for balancing of other factors" where a necessary party is immune from suit, ECF No. 43 at 14 (citing *Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995)), the Court fails to note that the decision goes on to say "immunity may be viewed as one of those interests compelling by themselves," and it fails to give that rule any effect.  This raises a substantial legal question that must be resolved on appeal.

The Court's Memorandum Opinion states this case will not implicate the Tribe's immunity because it will not bind the Tribe or its agents.  ECF No. 43 at 14.  While the Tribe is not bound by the decision, this aspect of the Court's decision raises a substantial legal question regarding whether Plaintiff may lawfully conduct an end run around of the Tribe's immunity by filing suit against the United States.  The Court also held that, while the Tribe had a financial interest in the Compact, it was unclear how proceeding in the Tribe's absence would prejudice the Tribe because the United States and the State adequately represented its interests.  There is a substantial legal question regarding whether the United States can be said to have adequately represented the interests of the Tribe in this case given its litigating tactics.  The United States actively opposed the Tribe's dispositive Motion to Dismiss, *see* Defs.' Resp. to Tribe's Mot. to Dismiss, ECF No. 34, was not prepared to argue the merits of the case during the November 5, 2021 telephonic hearing, *see* Min. Order, Nov. 5, 2021, and "forfeited any request for severance by omitting it from its motions to dismiss, its corresponding replies, and its supplemental briefs," Memorandum Opinion, ECF No. 43 at 24, n.8.  In addition, the United States does not share the Tribe's economic and sovereign interests in defending the suit.  The Court claims the Tribe never identified how its interests diverge from those of the United States, ECF No. 43 at 15, yet the Tribe did so in its Motion to Intervene, ECF No. 13 at 10–13, its Motion to Dismiss, ECF No. 13-4 at 1–4, and its Reply, ECF No. 24 at 16–17.

The Tribe demonstrated in its Motion to Dismiss that it is indispensable in this case for the same reasons the court in *PPI, Inc.* concluded it was indispensable in that litigation.  *See* ECF No. 13-4 at 6–11; *see also* Tribe's Reply to Pls.' Opp., ECF No. 24 at 19–22.  In *PPI, Inc. v. Kempthorne*, No. 08-cv-248-SPM, 2008 WL 2705431, at *4 (N.D. Fla. July 8, 2008), the court held that the Tribe's interests would be prejudiced if parts of its 2007 Compact with the State were

8

invalidated and that "[a] declaratory judgment could not be tailored to reduce the harm to the Seminole Tribe's interests and at the same time afford meaningful relief to [the plaintiff]." There is no reasoned basis why the Tribe could be found to be indispensable in the *PPI, Inc.* case but not here. At the very least, this aspect of the Court's Memorandum Opinion raises "substantial legal questions" that the D.C. Circuit needs an opportunity to weigh in on before the Order goes into effect.

### d. The Tribe's sovereign immunity prevented its joinder.

Despite its status as a necessary and indispensable party, the Tribe's sovereign immunity from suit prevented its joinder in this case. *See Kickapoo Tribe of Indians*, 43 F.3d at 1495 ("One reason joinder may be infeasible is that the absent party enjoys sovereign immunity."). Indeed, in its Memorandum Opinion, the Court found the Tribe could not be joined due to its sovereign immunity. ECF No. 43 at 13.

As the Tribe explained in its Motion to Dismiss, tribal sovereignty may only be abrogated by Congress or waived by a tribe itself, and the Tribe's Motion for Limited Intervention does not diminish its sovereign immunity from suit. *See* ECF No. 13-4, at 4–6; *see also* Tribe's Reply to Pls.' Opp., ECF No. 24, at 17–18. There is no tribal waiver or congressional abrogation here, so the Tribe could not be joined due to its sovereign immunity. Because the Tribe is a necessary and indispensable party, equity and good conscience dictate that the case should have been dismissed.

### B. The Seminole Tribe Will Suffer Irreparable Harm if a Stay Is Not Granted Because Failure to Dismiss the Case and Allow the Tribe to Intervene Constitutes a Substantial Blow to the Tribe's Sovereign and Economic Interests.

The second factor of the stay test requires more than a mere "possibility" of irreparable harm. *Nken*, 556 U.S. at 434–35. The harm must be "both certain and great" and "actual and not theoretical." *Citizens for Resp. & Ethics*, 904 F.3d at 1019 (quoting *Wis. Gas Co. v. F.E.R.C.*, 758

F.2d 669, 674 (D.C. Cir. 1985) (per curiam)).  In other words, it should be more than merely "speculative." *Id.*  The potential injury must also be "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co.*, 758 F.2d at 674)).  Finally, the harm must be "beyond remediation."  *Cath. Legal*, 513 F. Supp. 3d at 175 (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016)).

Courts in the D.C. Circuit have held that the loss of sovereignty, including "loss of sovereign authority, self-government, and jurisdiction over the land[,] is unquestionably an irreparable harm."  *Mashpee Wampanoag Tribe v. Bernhardt*, No. 18-2242 (PLF), 2020 WL 3034854, at *3 (D.D.C. June 5, 2020) (citing *Akiachak*, 995 F. Supp. 2d at 17), *appeal dismissed*, No. 20-5237, 2021 WL 1049822 (D.C. Cir. Feb. 19, 2021).  Similarly, the Tenth Circuit "has 'repeatedly stated that . . . an invasion of tribal sovereignty can constitute irreparable injury.'"  *Ute Indian Tribe of Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1005 (10th Cir. 2015) (quoting *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255 (10th Cir. 2006)).  Loss of sovereignty is irreparable in part because it is a harm that cannot be calculated monetarily.  *Mashpee*, 2020 WL 3034854, at *3; *see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1252 (10th Cir. 2001) (finding that injuries to tribal self-government are irreparable because they are "not easily subject to valuation").

The D.C. Circuit has held that "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  The United States Constitution recognizes tribes as sovereign entities.  *See, e.g.*, U.S. Const. art. I, § 8, cl. 3 (Indian commerce clause); U.S. Const. art. II, § 2, cl. 2 (treaty clause); U.S.

Const. art. IV, § 3, cl. 2 (territory clause).  Tribes are "separate sovereigns pre-existing the Constitution" that continue to "exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (citations and internal quotation marks omitted). Immunity from suit is one of the "core aspects of sovereignty that tribes possess," *id.* (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)), and is "a necessary corollary to Indian sovereignty and self-governance," *id.* (quoting *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 476 U.S. 877, 890 (1986)).

Additionally, economic harm is considered irreparable under certain circumstances, especially when it is irretrievable or when combined with other types of injury.  *See Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 101–03 (D.C. Cir. 2021) (finding tribe likely to succeed on the merits of challenge to government's allocation of CARES Act funds); *Confederated Tribes of Chehalis Rsrv. v. Mnuchin*, 456 F. Supp. 3d 152, 163–65 (D.D.C. 2020) (finding tribes' potential diminishment of CARES Act funds was an irreparable injury).

As discussed above, and in the Tribe's previous filings, the Tribe has legally protected interests in the validity of the 2021 Compact as a contracting party, as an economic beneficiary, and as a sovereign entity.  The Tribe stands to lose substantial revenue if a stay is not granted pending appeal, including specifically from online sports betting.  This revenue is used in part to fund important programs for the Tribe, Osceola Decl. ¶ 10 and 11, such that its loss, even for a short time, would interfere with the Tribe's self-government.  The Tribe, through Seminole Hard Rock Digital, LLC, has invested over $25 million in its online sports betting efforts and expects to invest $45 million in total by the end of the year.  Osceola Decl. ¶ 8.  With the recent launch of its online sportsbook, the Tribe is now generating millions in revenue per week, Osceola Decl. ¶ 10, which would be immediately lost without a stay along with the Tribe's investment, Osceola Decl.

¶ 11.[3]  Moreover, if a stay is not granted pending the Tribe's appeal, hundreds of jobs could be lost.  Osceola Decl. ¶ 11.  These economic harms will be irretrievable if a stay is not granted.

The Tribe has also resumed significant revenue sharing payments to the State that are required by the 2021 Compact.  Osceola Decl. ¶ 5.  In October 2021, the Tribe made its first revenue sharing payment under the 2021 Compact of over $37 million to the State.  Osceola Decl. ¶ 5.  The Tribe made a similar payment on November 15, 2021, and is required to make additional payments to the State each month.  Osceola Decl. ¶ 5.  Without a stay, the State would lose tens of millions per month in revenue sharing payments from the Tribe.  Osceola Decl. ¶ 12.  Thus, the State (and, by extension, Florida citizens) will suffer irreparable harm as well.

Failure to dismiss the case under Rule 19 disregards the Tribe's sovereign immunity.  Plaintiffs here sued the United States rather than the entity they alleged would cause their injury— the Tribe—because they knew they could not sue the Tribe directly due to its immunity from suit.  Failure to dismiss the case based on Rule 19 accomplishes Plaintiffs' goals of securing an end run around the Tribe's immunity.  Sovereignty is a foundational aspect of any government, and its loss, like the loss of a constitutional freedom, is an irreparable harm even if for only a short time.

---

[3] Under the 2021 Compact, the Tribe was permitted to launch its online sports betting operation on October 15, 2021, but it did not launch it until November 1, 2021.  Plaintiffs repeatedly represented to this Court that the Tribe would not launch until November 15, 2021, apparently based on a conversation with a representative of Seminole Hard Rock Digital, LLC in late May or early June, before the 2021 Compact was even submitted to the Department for approval.  *See* Pls.' Mot. Summ. J., ECF No. 19 at 8 n.4, 44; Pls.' Consolidated Mem. in Opp. to Defs. and Reply Mem. Supp. Mot. Summ. J., ECF No. 30 at 30, 33.  The Court in its Memorandum Opinion repeats these allegations.  ECF No. 43 at 5.  However, the Tribe never represented that it would delay launching until November 15, 2021, and Plaintiffs never contacted the Tribe or the Tribe's legal counsel for an update on the projected launch date.  Additionally, as discussed below, since the 2021 Compact became effective, the Tribe has had to pay the State revenue sharing payments that are predicated on the Tribe's authorization to conduct online sports betting.  Thus, the Tribe had a legal right to launch online sports betting beginning October 15, 2021, and was paying revenue sharing payments for that right.

The Tribe's inability to protect its sovereign immunity in this suit constitutes an irreparable harm, and a stay should be granted until these substantial legal questions can be resolved upon appeal.

Without a stay preventing the 2021 Compact's invalidation pending appeal, the Tribe will suffer concrete, imminent, and irreparable economic and sovereign harm.  The Court should therefore grant the Tribe's Motion for a Stay Pending Appeal.

### C.  Granting a Stay Will Not Harm Plaintiffs or Federal Defendants Because it Will Merely Maintain the Status Quo and Plaintiffs' Claimed Injuries Are Speculative.

Granting a stay in this case will merely maintain the status quo.  It will not harm Federal Defendants because no affirmative action will be required of them, *see Mashpee*, 2020 WL 3034854, at *4 (citation omitted), and Plaintiffs' allegations of harm are minor and speculative, especially compared to the harm the Tribe faces.  Courts test harm to other parties "for substantiality, likelihood of occurrence and adequacy of proof."  *Cuomo v. Nuclear Regul. Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985) (citing *Wis. Gas Co.*, 758 F.2d at 674).  For this factor to weigh against the Tribe, the harm to other parties must be "[]sufficiently grave to overcome" the "countervailing harms" faced by the Tribe.  *See League of Women Voters*, 838 F.3d at 13.

Plaintiffs' Declarations alleged only speculative harm that might occur at some future date. They failed to establish that future economic injury was "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters*, 838 F.3d at 7–8.  Plaintiffs offered the Court no basis whatsoever to conclude that, because some customers may try online or in-person sports betting, such customers would abandon Plaintiffs' businesses altogether or otherwise not access such sports betting through Plaintiffs' marketing services for the Tribe.  Nor did their Declarations constitute the "competent evidence" required to support their claims of possible future economic

13

injury.  *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21–22 (D.D.C. 2013).  Plaintiffs made broad generalizations about speculative financial impacts without any independent, demonstrable support.  Granting a stay will not "substantially injure" them.  *See League of Women Voters*, 838 F.3d at 12 (citation omitted).

### D.  A Stay Is in the Public Interest Because it Maintains the Status Quo, Including the Economic and Employment Benefits Flowing to Florida Citizens.

Of the four factors, "the calculation of the public interest is perhaps the most difficult." *Cuomo*, 772 F.2d at 978; *see also Va. Petroleum Jobbers Assoc. v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) ("The public interest may, of course, have many faces . . . .").  This factor generally requires more than a "bare assertion" and should be accompanied by "corroborating evidence."  *Doe 2 v. Mattis*, 344 F. Supp. 3d 16, 31 (D.D.C. 2018).  A "high likelihood of success on the merits is a strong indicator that a [stay] would serve the public interest."  *League of Women Voters*, 838 F.3d at 12.

The 2021 Compact was approved by the Governor of Florida, the Florida Legislature, and the Department.  The public interest weighs in favor of preserving the status quo, which is to allow an ongoing activity that was approved under federal, State, and tribal law to continue pending the outcome of the Tribe's appeal.  *See, e.g.*, *Akiachak*, 995 F. Supp. 2d at 18 ("The public interest is best served when established contract and property rights are enforced." (citation omitted)).

The 2021 Compact also creates significant public economic and employment benefits that would be impaired without a stay pending appeal.  Once the 2021 Compact went into effect, it required the Tribe to resume significant revenue sharing payments to the State as part of its guarantee of at least $2.5 billion in revenue sharing payments to the State over the first five years of the 2021 Compact.  Osceola Decl. ¶ 3.  The Tribe's first revenue sharing payment to the State in October 2021 amounted to $37.5 million—before the Tribe generated any revenue from online

14

sports betting.  Osceola Decl. ¶ 5.  The Tribe made a second payment of $37.5 million to the State on November 15, 2021, and additional payments are due each month.  Osceola Decl. ¶ 5.  In addition to the Tribe's own employees, Seminole Hard Rock Digital, LLC has 237 employees, has hired 30 more who have not yet started, and has 35 vacancies.  Osceola Decl. ¶ 9.  In addition, the Tribe has outsourced 146 customer service representatives and has engaged more than 50 outside suppliers and vendors.  *Id*.  The Tribe launched its online sportsbook on November 1, 2021, and its online revenues now contribute to the revenues the Tribe has agreed to share with the State under the revenue sharing provisions of the 2021 Compact.  *See* Osceola Decl. ¶ 10.  If the Tribe is not permitted to operate under the 2021 Compact, the State would lose tens of millions per month in revenue sharing, Osceola Decl. ¶ 12, and the associated jobs could be lost, Osceola Decl. ¶ 11.  The Tribe, the State, and the public would suffer serious economic and employment consequences.

The impacts of the 2021 Compact extend beyond the Tribe via revenue sharing and employment opportunities that provide significant benefits to the State public at large.  Indeed, that is why it was overwhelmingly approved by the State legislature.  With years of negotiation and approval by various State and federal entities, the 2021 Compact has been thoroughly vetted, and the public interest lies in maintaining the status quo—at least until the Tribe's appeal is resolved.

## CONCLUSION

For the foregoing reasons, the Tribe respectfully requests the Court grant its Motion for Stay Pending Appeal.

Respectfully submitted this 23rd day of November, 2021.

15

/s/ Joseph H. Webster
Joseph H. Webster (D.C. Bar No. 448458)
Kaitlyn E. Klass (D.C. Bar No. 1032219)
Elliott A. Milhollin (D.C. Bar No. 474322)
HOBBS STRAUS DEAN & WALKER, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com
kklass@hobbsstraus.com
emilhollin@hobbsstraus.com

/s / Barry Richard
Barry Richard (D.C. Bar No. 419850)
GREENBERG TRAURIG, P.A.
101 East College Avenue
Tallahassee, FL  32301
Telephone: (850) 222-6891
Facsimile: (850) 681-0207
richardb@gtlaw.com
greenel@gtlaw.com
flservice@gtlaw.com

*Attorneys for Intervenor,
Seminole Tribe of Florida*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2021, I electronically filed the foregoing **Seminole Tribe of Florida's Motion for Stay Pending Appeal and Motion for Expedited Consideration and Statement of Points of Law and Authorities in Support** with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system.  All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Joseph H. Webster*
Joseph H. Webster
HOBBS STRAUS DEAN & WALKER, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
jwebster@hobbsstraus.com

17