APPEAL,CLOSED,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:21-cv-02192-DLF
## Internal Use Only

WEST FLAGLER ASSOCIATES, LTD. et al v. HAALAND et al
Assigned to: Judge Dabney L. Friedrich
 Case:  1:21-cv-02513-DLF
Case in other court: 21-05265
                    United States District Court for the Northern Dist,
                    4:21-cv-270
Cause: 05:702 Administrative Procedure Act

Date Filed: 08/16/2021
Date Terminated: 11/22/2021
Jury Demand: None
Nature of Suit: 899 Administrative Procedure
Act/Review or Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

## Plaintiff

**WEST FLAGLER ASSOCIATES, LTD.**
*a Florida Limited Partnership*
*doing business as*
MAGIC CITY CASINO

represented by  **Amy Lynn Neuhardt**
BOIES, SCHILLER & FLEXNER, LLP
1401 New York Avenue, NW
11th Floor
Washington, DC 20005
(202) 274-1137
Fax: (202) 237-6131
Email: aneuhardt@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chloe M. Houdre**
BOIES SCHILLER FLEXNER LLP
1401 New York Ave, NW
Washington, DC 20005
202-237-2727
Fax: 202-237-6131
Email: choudre@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon Lester Mills**
2727 Nw 58th Blvd
Gainesville, FL 32606
352-538-0380
Email: jmills@bsfllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel C. Kaplan**
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
202-237-2727
Email: skaplan@bsfllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Hamish P.M. Hume
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
(202) 237-6131
Fax: (202) 237-6131
Email: hhume@bsfllp.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BONITA-FORT MYERS CORPORATION**
*a Florida Corporation*
*doing business as*
BONITA SPRINGS POKER ROOM

represented by **Amy Lynn Neuhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chloe M. Houdre**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon Lester Mills**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel C. Kaplan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hamish P.M. Hume**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DEB HAALAND**
*in her official capacity as Secretary of the*
*United States Department of the Interior*

represented by **Rebecca M. Ross**
U.S. DEPARTMENT OF JUSTICE
Indian Resources Section, Environment and
Natural Resources
P.O. Box 7611
Washington, DC 20044
(202) 616-3148
Email: rebecca.ross@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary Hoffman**
DOJ-ENRD
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
202-598-3147

Email: hillary.hoffman@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF THE INTERIOR**                 represented by **Rebecca M. Ross**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hillary Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**SEMINOLE TRIBE OF FLORIDA**                  represented by **Barry Richard**
GREENBERG TRAURIG, P.A
101 E College Avenue
Tallahassee, FL 32301
850-251-9678
Email: richardb@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph H. Webster**
HOBBS, STRAUS, DEAN & WALKER, LLP
1899 L Street, NW
Ste 1200
Washington, DC 20036
202-822-8282
Fax: 202-296-8834
Email: jwebster@hobbsstraus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elliott A. Milhollin**
HOBBS, STRAUS, DEAN & WALKER, LLP
1899 L Street, NW
Suite 1200
Washington, DC 20036
(202) 822-8282
Email: emilhollin@hobbsstraus.com
*ATTORNEY TO BE NOTICED*

**Kaitlyn Elizabeth Klass**
HOBBS, STRAUS, DEAN & WALKER, LLP
1899 L Street, NW
Suite 1200
Washington, DC 20036
(202) 822-8282
Email: KKlass@hobbsstraus.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF FLORIDA**                           represented by **Henry Charles Whitaker**
FLORIDA OFFICE OF THE ATTORNEY
GENERAL

PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3688
Email: henry.whitaker@myfloridalegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/16/2021 | 1 | COMPLAINT against DEPARTMENT OF THE INTERIOR, DEB HAALAND ( Filing fee $ 402 receipt number ADCDC-8672128) filed by WEST FLAGLER ASSOCIATES, LTD., BONITA-FORT MYERS CORPORATION. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Civil Cover Sheet, # 10 Related Case Form, # 11 Summons Haaland, # 12 Summons Department of the Interior, # 13 Summons US Attorney for DC, # 14 Summons USAG)(Hume, Hamish) (Entered: 08/17/2021) |
| 08/17/2021 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by WEST FLAGLER ASSOCIATES, LTD. (Hume, Hamish) (Entered: 08/17/2021) |
| 08/17/2021 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by BONITA-FORT MYERS CORPORATION (Hume, Hamish) (Entered: 08/17/2021) |
| 08/17/2021 | 4 | NOTICE OF RELATED CASE by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. Case related to (adh, ) (Entered: 08/17/2021) |
| 08/17/2021 | | Case Assigned to Judge Dabney L. Friedrich. (adh, ) (Entered: 08/17/2021) |
| 08/17/2021 | 5 | SUMMONS (4) Issued Electronically as to DEPARTMENT OF THE INTERIOR, DEB HAALAND, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(adh, ) (Entered: 08/17/2021) |
| 08/17/2021 | 6 | STANDARD ORDER for Civil Cases. See text for details. Signed by Judge Dabney L. Friedrich on August 17, 2021. (lcdlf1) (Entered: 08/17/2021) |
| 09/13/2021 | 7 | NOTICE of Appearance by Hillary Hoffman on behalf of DEPARTMENT OF THE INTERIOR, DEB HAALAND (Hoffman, Hillary) (Entered: 09/13/2021) |
| 09/13/2021 | 8 | NOTICE of Appearance by Rebecca M. Ross on behalf of DEPARTMENT OF THE INTERIOR, DEB HAALAND (Ross, Rebecca) (Entered: 09/13/2021) |
| 09/14/2021 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 7 NOTICE of Appearance by Hillary Hoffman on behalf of DEPARTMENT OF THE INTERIOR, DEB HAALAND (Hoffman, Hillary).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-admissions-and-renewal-information.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 9/21/2021. (znmw) Modified on 9/16/2021 (znmw). (Entered: 09/14/2021) |
| 09/14/2021 | 9 | Joint MOTION for Briefing Schedule by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Hume, Hamish) (Entered: 09/14/2021) |

| 09/15/2021 | | MINUTE ORDER. Upon consideration of the parties' 9 Joint Motion To Set Briefing Schedule, it is ORDERED that the following schedule shall govern further proceedings: the plaintiffs shall file a motion for summary judgment, a motion for preliminary injunction, or both in the alternative on or before September 21, 2021; the defendants shall file any response to the plaintiffs' motion and any cross-motion they deem appropriate on or before October 12, 2021; the plaintiffs shall file a reply brief in support of their initial motion and any response to the defendants' cross-motion on or before October 19, 2021; and the defendants shall file any reply brief in support of their cross-motion on or before October 26, 2021. So Ordered by Judge Dabney L. Friedrich on September 15, 2021. (lcdlf1) (Entered: 09/15/2021) |
|---|---|---|
| 09/15/2021 | | NOTICE of Hearing: Motion Hearing set for 11/5/2021 at 10:00 AM via video before Judge Dabney L. Friedrich. (zjch, ) (Entered: 09/15/2021) |
| 09/15/2021 | | Set/Reset Deadlines: Cross Motions due by 10/12/2021. Response to Cross Motions due by 10/19/2021. Reply to Cross Motions due by 10/26/2021. Summary Judgment motions due by 9/21/2021. Response to Motion for Summary Judgment due by 10/12/2021. Reply to Motion for Summary Judgment due by 10/19/2021. (zjch) (Entered: 09/15/2021) |
| 09/15/2021 | 10 | NOTICE of Appearance by Chloe M. Houdre on behalf of All Plaintiffs (Houdre, Chloe) (Entered: 09/15/2021) |
| 09/15/2021 | 11 | NOTICE of Appearance by Amy Lynn Neuhardt on behalf of All Plaintiffs (Neuhardt, Amy) (Entered: 09/15/2021) |
| 09/15/2021 | 12 | NOTICE of Appearance by Samuel C. Kaplan on behalf of All Plaintiffs (Kaplan, Samuel) (Entered: 09/15/2021) |
| 09/17/2021 | 13 | MOTION to Intervene *for Limited Purpose of Moving to Dismiss* by SEMINOLE TRIBE OF FLORIDA. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order for Motion to Intervene, # 4 Proposed Motion to Dismiss, # 5 Exhibit A for Motion to Dismiss, # 6 Exhibit B for Motion to Dismiss, # 7 Text of Proposed Order for Motion to Dismiss)(Webster, Joseph) (Entered: 09/17/2021) |
| 09/17/2021 | | MINUTE ORDER. The plaintiffs shall file any response to the SEMINOLE TRIBE OF FLORIDA's 13 Motion to Intervene on or before September 24, 2021. In lieu of a separate response, the plaintiffs may instead address the 13 Motion to Intervene in their forthcoming Motion for Summary Judgment. So Ordered by Judge Dabney L. Friedrich on September 17, 2021. (lcdlf1) (Entered: 09/17/2021) |
| 09/17/2021 | 14 | NOTICE of Appearance by Joseph H. Webster on behalf of SEMINOLE TRIBE OF FLORIDA (Webster, Joseph) (Entered: 09/17/2021) |
| 09/17/2021 | 15 | NOTICE of Appearance by Kaitlyn Elizabeth Klass on behalf of SEMINOLE TRIBE OF FLORIDA (Klass, Kaitlyn) (Entered: 09/17/2021) |
| 09/17/2021 | 16 | NOTICE of Appearance by Elliott A. Milhollin on behalf of SEMINOLE TRIBE OF FLORIDA (Milhollin, Elliott) (Entered: 09/17/2021) |
| 09/17/2021 | | Set/Reset Deadlines: Responses to Motion to Intervene due by 9/24/2021 (zjch) (Entered: 09/20/2021) |
| 09/20/2021 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 16 NOTICE of Appearance by Elliott A. Milhollin on behalf of SEMINOLE TRIBE OF FLORIDA (Milhollin, Elliott). <br><br> Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the |

| | | | |
|---|---|---|---|
| | | | appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-admissions-and-renewal-information.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 9/27/2021. (znmw) Modified on 9/21/2021 (znmw). (Entered: 09/20/2021) |
| 09/20/2021 | 🔒🔒 | 17 | (Court only) Attorney Membership Renewal Fees paid for Bar Number 474322, for in the amount of $25, receipt number ADCDC-8743467. The original information was Correct. (Milhollin, Elliott) (zpk). (Entered: 09/20/2021) |
| 09/21/2021 | | 18 | Unopposed MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Jon L. Mills, Filing fee $ 100, receipt number ADCDC-8748692. Fee Status: Fee Paid. by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Hume, Hamish) (Entered: 09/21/2021) |
| 09/21/2021 | | 19 | MOTION for Summary Judgment *or in the Alternative* MOTION for Preliminary Injunction by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Statement of Facts, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Text of Proposed Order, # 6 Text of Proposed Order) (Hume, Hamish). Added MOTION for Preliminary Injunction on 9/22/2021 (zeg). (Entered: 09/21/2021) |
| 09/22/2021 | | | MINUTE ORDER granting the plaintiff's 18 Unopposed MOTION for Leave for Jon L. Mills to Appear Pro Hac Vice. Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). For instructions visit: https://www.dcd.uscourts.gov/sites/dcd/files/NextGEN_Tutorial_for_Registering_for_E-filing.pdf. So Ordered by Judge Dabney L. Friedrich on September 22, 2021. (lcdlf1) (Entered: 09/22/2021) |
| 09/23/2021 | | 20 | Consent MOTION for Extension of Time to File Response/Reply as to 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss and to Set Briefing Schedule* by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Text of Proposed Order)(Hume, Hamish) (Entered: 09/23/2021) |
| 09/24/2021 | | | MINUTE ORDER granting the plaintiffs' 20 Consent Motion for Extension of Time. Accordingly, the plaintiffs will file an opposition to the Tribe's motion to intervene and conditional motion to dismiss on or before October 1, 2021; the Tribe will reply to the plaintiffs' opposition on or before October 8, 2021; the defendants will respond to the Tribe's conditional motion to dismiss on or before October 19, 2021; and the Tribe will reply to the defendants' response on or before October 26, 2021. So Ordered by Judge Dabney L. Friedrich on September 24, 2021. (lcdlf1) (Entered: 09/24/2021) |
| 09/28/2021 | | 21 | NOTICE of Appearance by Jon Lester Mills on behalf of All Plaintiffs (Mills, Jon) (Entered: 09/28/2021) |
| 10/01/2021 | | 22 | Memorandum in opposition to re 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss and Opposition to Motion to Dismiss* filed by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Hume, Hamish) (Entered: 10/01/2021) |
| 10/04/2021 | | | MINUTE ORDER. Upon review of the complaints and filings in West Flager Associates, Ltd. et al. v. Haaland et al., 21-cv-2192-DLF, and Monterra MF, LLC et al. v. Haaland et al., 21-cv-2513-DLF, it appears that it would be most efficient to consider the cases simultaneously. Summary judgment briefing in West Flager is expected to be complete on or before October 26, 2021. The Court has also scheduled a hearing in that case for November 5, 2021. As of today, the parties in Monterra have not filed any dispositive motions, and the Court has not set a briefing schedule. Accordingly, the Court directs the parties in both cases to confer and inform the Court, on or before |

| | | |
|---|---|---|
| | | October 8, 2021, (1) whether the Court should consolidate the cases, and (2) if so, whether the above briefing schedule and hearing date should be modified. So Ordered by Judge Dabney L. Friedrich on October 4, 2021. (lcdlf1) (Entered: 10/04/2021) |
| 10/04/2021 | | Set/Reset Deadlines: Confer and inform the Court by 10/8/2021. (zjch, ) (Entered: 10/05/2021) |
| 10/08/2021 | 23 | RESPONSE TO ORDER OF THE COURT re Order,,, *(Joint Response)* filed by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Hume, Hamish) (Entered: 10/08/2021) |
| 10/08/2021 | 24 | REPLY to opposition to motion re 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss* filed by SEMINOLE TRIBE OF FLORIDA. (Webster, Joseph) (Entered: 10/08/2021) |
| 10/12/2021 | 25 | MOTION to Dismiss *and Response in Opposition* by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Attachments: # 1 Proposed Order)(Ross, Rebecca) (Entered: 10/12/2021) |
| 10/12/2021 | 26 | WITHDRAWN PURSUANT TO NOTICE FILED 10/25/2021.....MOTION to Transfer Case *to the United States District Court for the Northern District of Florida*, MOTION to Stay by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Attachments: # 1 Proposed Order, # 2 Proposed Order)(Ross, Rebecca). Added MOTION to Stay on 10/20/2021 (eg). Modified on 10/27/2021 (zeg). (Entered: 10/12/2021) |
| 10/12/2021 | 32 | Memorandum in opposition to re 19 MOTION for Summary Judgment *or in the Alternative, a Preliminary Injunction* MOTION for Preliminary Injunction filed by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (See Docket Entry 25 to view document). (eg) (Entered: 10/20/2021) |
| 10/16/2021 | 27 | MOTION for Extension of Time to File Response/Reply as to 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss* by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Attachments: # 1 Proposed Order)(Ross, Rebecca) (Entered: 10/16/2021) |
| 10/18/2021 | | MINUTE ORDER granting the government's 27 Motion for Extension of Time. Accordingly, the government shall file any response to the SEMINOLE TRIBE OF FLORIDA's [13-4] Motion to Dismiss on or before October 26, 2021. The Court is not inclined to grant any further extensions. So Ordered by Judge Dabney L. Friedrich on October 18, 2021. (lcdlf1) (Entered: 10/18/2021) |
| 10/18/2021 | | Set/Reset Deadlines: Response to Dispositive Motions due by 10/26/2021. (zjch, ) (Entered: 10/18/2021) |
| 10/19/2021 | 28 | AMICUS BRIEF by STATE OF FLORIDA. (Whitaker, Henry) (Entered: 10/19/2021) |
| 10/19/2021 | 29 | NOTICE of Appearance by Henry Charles Whitaker on behalf of STATE OF FLORIDA (Whitaker, Henry) (Entered: 10/19/2021) |
| 10/19/2021 | 30 | REPLY to opposition to motion re 25 MOTION to Dismiss *and Response in Opposition*, 19 MOTION for Summary Judgment *or in the Alternative, a Preliminary Injunction* MOTION for Preliminary Injunction *Reply to opposition to motion re 19 Motion for Summary Judgment; Opposition to 25 Motion to Dismiss* filed by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Text of Proposed Order)(Hume, Hamish) (Entered: 10/19/2021) |
| 10/19/2021 | 31 | Memorandum in opposition to re 26 MOTION to Transfer Case *to the United States District Court for the Northern District of Florida* filed by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Hume, Hamish) (Entered: 10/19/2021) |
| 10/25/2021 | 33 | NOTICE OF WITHDRAWAL OF MOTION re 26 MOTION to Transfer and Stay by |

| | | |
|---|---|---|
| | | DEPARTMENT OF THE INTERIOR, DEB HAALAND (Hoffman, Hillary) Modified to add link on 10/27/2021 (znmw). (Entered: 10/25/2021) |
| 10/25/2021 | | MINUTE ORDER. Upon consideration of the government's 33 Notice of Withdrawal of Motion, the government's 26 Motion to Transfer Case is dismissed as moot. So Ordered by Judge Dabney L. Friedrich on October 25, 2021. (lcdlf1) (Entered: 10/25/2021) |
| 10/26/2021 | 34 | RESPONSE re 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss* filed by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Attachments: # 1 Proposed Order)(Ross, Rebecca) (Entered: 10/26/2021) |
| 10/26/2021 | 35 | REPLY to opposition to motion re 25 MOTION to Dismiss *and Response in Opposition* filed by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Ross, Rebecca) (Entered: 10/26/2021) |
| 10/29/2021 | 36 | MOTION for Leave to File *Response to Amicus Curiae Brief of the State of Florida* by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD.. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit 1)(Hume, Hamish) (Entered: 10/29/2021) |
| 11/01/2021 | 37 | REPLY to opposition to motion re 13 MOTION to Intervene *for Limited Purpose of Moving to Dismiss* filed by SEMINOLE TRIBE OF FLORIDA. (Webster, Joseph) (Entered: 11/01/2021) |
| 11/02/2021 | | MINUTE ORDER granting the plaintiffs' 36 Motion for Leave to File Response to Amicus Curiae Brief of the State of Florida. So Ordered by Judge Dabney L. Friedrich on November 2, 2021. (lcdlf1) (Entered: 11/02/2021) |
| 11/02/2021 | 38 | NOTICE of Appearance by Barry Richard on behalf of SEMINOLE TRIBE OF FLORIDA (Richard, Barry) (Entered: 11/02/2021) |
| 11/03/2021 | 39 | NOTICE *of Material Factual Development and Intent to Rely Upon Additional Evidence at Hearing* by BONITA-FORT MYERS CORPORATION, WEST FLAGLER ASSOCIATES, LTD. (Attachments: # 1 Exhibit A)(Hume, Hamish) (Entered: 11/03/2021) |
| 11/05/2021 | | Minute Entry for proceedings held before Judge Dabney L. Friedrich: Motion Hearing held on 11/5/2021 re (25 in 1:21-cv-02192-DLF) MOTION to Dismiss *and Response in Opposition* filed by DEB HAALAND, DEPARTMENT OF THE INTERIOR, (19 in 1:21-cv-02192-DLF, 19 in 1:21-cv-02192-DLF) MOTION for Summary Judgment *or in the Alternative, a Preliminary Injunction* MOTION for Preliminary Injunction filed by WEST FLAGLER ASSOCIATES, LTD., BONITA-FORT MYERS CORPORATION, (37 in 1:21-cv-02513-DLF) MOTION for Summary Judgment filed by 2060 BISCAYNE BOULEVARD, LLC, 2060 NE 2ND AVE., LLC, 2020 BISCAYNE BOULEVARD, LLC, 246 NE 20TH TERRACE, LLC, MONTERRA MF, LLC, JAMES CARR, NORMAN BRAMAN, ARMANDO CODINA, NO CASINOS, (35 in 1:21-cv-02513-DLF) MOTION to Dismiss filed by UNITED STATES DEPARTMENT OF THE INTERIOR, DEB HAALAND, (Supplemental Brief due by 11/9/2021.). Court Reporter Sara Wick. (zjch, ) (Entered: 11/05/2021) |
| 11/05/2021 | | MINUTE ORDER. Upon review of the record in this case, the Court is concerned by the government's refusal, both in its briefing and at oral argument, to respond to the plaintiffs' 19 Motion for Summary Judgment. Although the government insists that it had no obligation to address that motion at this stage of the proceeding, and further that it may be entitled to an additional round of briefing on the arguments contained therein, the record soundly refutes its position. To start, in signing the parties' 9 Joint Motion for Briefing Schedule, the government agreed to a briefing schedule that would "present to the Court the purely legal issues in this case in a time frame that will allow for a decision on those issues by or before November 15, 2021." Dkt. 9 at 2. Later, when the Court adopted that schedule, it ordered the government to "file any response to the plaintiffs' motion and any cross-motion they deem appropriate on or before October 12, |

| | | |
|---|---|---|
| | | 2021," which made clear that the government was obliged to file its complete response to the plaintiffs' motion by the above date. See Minute Order of September 15, 2021. The Government appeared to recognize as much in its dispositive motion, which it styled in part as an "Opposition to Plaintiffs' Motion for Summary Judgment." See Dkt. 25. And no subsequent filing from the government advanced the novel argument that its filing a motion to dismiss could toll a briefing schedule adopted by this Court. For related reasons, the Court is concerned by the government's failure to file any materials from the administrative record. Local Rule 7(n) provide that, "unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record... simultaneously with the filing of a dispositive motion." LCvR 7(n)(1). "Thereafter," the Rule provides, "counsel shall provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum." Id. Here, the Court ordered no exemption from Rule 7(n). And although the government argues that the Rule does not apply here, its argument lacks any basis in either the Rule's text or controlling precedent. In these circumstances, the Court could, but will not, construe the above errors to forfeit any argument omitted from the government's prior briefing. At the same time, to minimize prejudice to the plaintiffs and discourage further gamesmanship by government counsel, the Court will require the government to file any supplemental brief on an expedited basis. Accordingly, the government is ORDERED to both submit any supplemental brief and comply with Local Rule 7(n) on or before November 9, 2021. Because the Court has received thorough briefing from the plaintiffs in both this case and the Monterra action, it does not anticipate that further briefing from those parties will be helpful. Should the Court reach a contrary conclusion, however, it will both notify those parties on or before November 11, 2021, and give them adequate time to prepare a response. So Ordered by Judge Dabney L. Friedrich on November 5, 2011. (lcdlf1) (Entered: 11/05/2021) |
| 11/09/2021 | 40 | NOTICE *of Filing of the Certified List of the Contents of the Administrative Record* by DEPARTMENT OF THE INTERIOR, DEB HAALAND (Ross, Rebecca) (Entered: 11/09/2021) |
| 11/09/2021 | 41 | SUPPLEMENTAL MEMORANDUM to *Address Merits Arguments* filed by DEPARTMENT OF THE INTERIOR, DEB HAALAND. (Attachments: # 1 Appendix) (Ross, Rebecca) (Entered: 11/09/2021) |
| 11/22/2021 | 42 | ORDER granting the plaintiffs' 19 Motion for Summary Judgment, denying the government's 25 Motion to Dismiss, and denying as moot the Seminole Tribe of Florida's 13 Motion to Intervene. See text for details. The Clerk of Court is directed to close this case. Signed by Judge Dabney L. Friedrich on November 22, 2021. (lcdlf1) (Entered: 11/22/2021) |
| 11/22/2021 | 43 | MEMORANDUM OPINION regarding the plaintiffs' 19 Motion for Summary Judgment, the government's 25 Motion to Dismiss, and the Seminole Tribe of Florida's 13 Motion to Intervene. See text for details. Signed by Judge Dabney L. Friedrich on November 22, 2021. (lcdlf1) (Entered: 11/22/2021) |
| 11/22/2021 | 🔒 | (Court only) ***Civil Case Terminated. (zjch, ) (Entered: 11/23/2021) |
| 11/23/2021 | 44 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 42 Order on Motion to Dismiss,, Order on Motion to Intervene,, Order on Motion for Summary Judgment,, Order on Motion for Preliminary Injunction, 43 Memorandum & Opinion, by SEMINOLE TRIBE OF FLORIDA. Filing fee $ 505, receipt number ADCDC-8886094. Fee Status: Fee Paid. Parties have been notified. (Webster, Joseph) (Entered: 11/23/2021) |
| 11/23/2021 | 45 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 44 Notice of Appeal to DC Circuit Court,. (zeg) (Entered: 11/23/2021) |

| 11/23/2021 | 46 | MOTION to Stay *Pending Appeal and Motion for Expedited Consideration* by SEMINOLE TRIBE OF FLORIDA. (Attachments: # 1 Declaration of Marcellus W. Osceola, Jr., # 2 Text of Proposed Order)(Webster, Joseph) (Entered: 11/23/2021) |
|---|---|---|
| 11/24/2021 | | USCA Case Number 21-5265 for 44 Notice of Appeal to DC Circuit Court, filed by SEMINOLE TRIBE OF FLORIDA. (zeg) (Entered: 11/24/2021) |
| 11/24/2021 | 47 | ORDER denying the Seminole Tribe of Florida's 46 Motion for Stay Pending Appeal. See text for details. Signed by Judge Dabney L. Friedrich on November 24, 2021. (lcdlf1) (Entered: 11/24/2021) |
| 12/01/2021 | 48 | Supplemental Record on Appeal transmitted to US Court of Appeals re 46 MOTION to Stay *Pending Appeal and Motion for Expedited Consideration*, USCA Case Number, 47 Order on Motion to Stay ;USCA Case Number 21-05265. (zeg) (Main Document 48 replaced on 12/1/2021) (zeg). (Entered: 12/01/2021) |
| 01/06/2022 | 🔒 49 | TRANSCRIPT OF MOTIONS HEARING before Judge Dabney L. Friedrich held on 11/05/2021. Page Numbers: 1-68. Date of Issuance:01/06/2022. Court Reporter: Sara Wick, telephone number 202-354-3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. Afte r 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/27/2022. Redacted Transcript Deadline set for 2/6/2022. Release of Transcript Restriction set for 4/6/2022.(Wick, Sara) (Entered: 01/06/2022) |
| 01/19/2022 | 50 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 42 Order on Motion to Dismiss,, Order on Motion to Intervene,, Order on Motion for Summary Judgment,, Order on Motion for Preliminary Injunction, 43 Memorandum & Opinion, by DEPARTMENT OF THE INTERIOR, DEB HAALAND. Fee Status: No Fee Paid. Parties have been notified. (Ross, Rebecca) (Entered: 01/19/2022) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WEST FLAGLER ASSOCIATES, LTD., d/b/a MAGIC CITY CASINO; AND BONITA-FORT MYERS CORPORATION, d/b/a BONITA SPRINGS POKER ROOM, ) | |
| *Plaintiffs*, ) | |
| v. ) | Civil Action No. 1:21-cv-02192-DLF |
| DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior; and THE UNITED STATES DEPARTMENT OF THE INTERIOR, ) | |
| *Federal Defendants*. ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Federal Defendants Deb Haaland, in her official capacity as Secretary of the Interior, and the United States Department of the Interior, by and through their undersigned counsel, hereby appeal to the United States Court of Appeals to the District of Columbia Circuit from the Order and Memorandum Opinion entered in the above-named action on November 22, 2021 (ECF Nos. 42 and 43), granting Plaintiffs' Motion for Summary Judgment; denying Federal Defendants' Motion to Dismiss, and denying as moot the Seminole Tribe of Florida's Motion for Limited Intervention.

Respectfully submitted this 19th day of January, 2022.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rebecca M. Ross
REBECCA M. ROSS, Trial Attorney
HILLARY K. HOFFMAN, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
Telephone:  (202) 616-3148
rebecca.ross@usdoj.gov
hillary.hoffman@usdoj.gov
*Attorneys for Federal Defendants*

OF COUNSEL:
JODY H. SCHWARZ
Senior Attorney
Office of the Solicitor
Division of Indian Affairs

**CERTIFICATE OF SERVICE**

I, Rebecca M. Ross, hereby certify that on January 19, 2022, I caused the foregoing

NOTICE OF APPEAL to be sent electronically to the registered participants as identified on the

Notice of Electronic Filing.

/s/ *Rebecca M. Ross*
REBECCA M. ROSS, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

## JFUNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WEST FLAGLER ASSOCIATES *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEB HAALAND, <br> Secretary, U.S. Department of the Interior, <br> *et al.*, <br><br> *Defendants.* | No. 21-cv-2192 (DLF) |
| MONTERRA MF, LLC *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEB HAALAND, <br> Secretary, U.S. Department of the Interior, <br> *et al.*, <br> *Defendants.* | No. 21-cv-2513 (DLF) |

## <u>MEMORANDUM OPINION</u>

In August 2021, the Secretary of the Interior approved a gaming compact between the State of Florida and the Seminole Tribe of Florida. The Compact authorizes the Tribe to offer online sports betting throughout the State, including to bettors located off tribal lands. In these related cases, the plaintiffs argue that the Compact violates the Indian Gaming Regulatory Act, the Unlawful Internet Gambling Enforcement Act, the Wire Act, and the Equal Protection Clause. They accordingly ask this Court to "set aside" the Secretary's approval of the Compact pursuant to the Administrative Procedure Act. 5 U.S.C. § 706(2)(A).

Before the Court are the plaintiffs' Motions for Summary Judgment in both the *West Flagler* case and the *Monterra* case, Dkt. 19 (*West Flagler*), Dkt. 37 (*Monterra*); the Tribe's respective Motions to Intervene, Dkt. 13 (*West Flagler*), Dkt. 31 (*Monterra*); and the Secretary's respective Motions to Dismiss, Dkt. 25 (*West Flagler*), Dkt. 35 (*Monterra*).[1]  For the reasons that follow, the Court will hold that the Compact violates IGRA and grant the *West Flagler* plaintiffs' motion for summary judgment.  Additionally, the Court will deny the *Monterra* plaintiffs' motion as moot, deny the Tribe's motions, and deny the Secretary's motions.

## I.    BACKGROUND

### A.    Statutory Background

The Indian Gaming Regulation Act (IGRA) "creates a framework for regulating gaming activity on Indian lands."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).  To that end, the Act divides gaming activities into three classes.  *See* 25 U.S.C §§ 2710(a), 2710(d)(1).  Class III gaming, the kind involved here, includes both casino games and sports betting.  *See id.* §§ 2703(6)–(8); 25 C.F.R. § 502.4(c).  To host class III gaming "on Indian lands," a tribe must "enter[] into" a compact with the state in which its lands are located.  25 U.S.C. § 2710(d)(1)(C).  These compacts "prescribe[] rules for operating gaming, allocate[] law enforcement authority between the tribe and State, and provide[] remedies for breach of the agreement's terms."  *Bay Mills*, 572 U.S. at 785 (citation omitted).  As relevant here, a compact may take effect only after the Secretary of the Interior has both approved its terms and noticed its approval in the Federal Register.  *See* 25 U.S.C § 2710(d)(3)(B).

---

[1] The Court resolves these cases together because they challenge the same gaming compact, raise overlapping questions of law, and seek overlapping forms of relief.  For clarity, the Court will use parentheticals to identify the case name with which each filing is associated.

IGRA closely regulates the Secretary's review of gaming compacts. To start, it provides that the Secretary may disapprove a compact "only if [it] violates" another provision of IGRA, "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands," or "the trust obligations of the United States to Indians." *Id.* § 2710(d)(8)(B). IGRA also provides that the Secretary must either approve or disapprove each compact within 45 days of receiving it. *See id.* § 2710(d)(8)(C). Otherwise, the compact shall "be considered to have been approved by the Secretary, but only to the extent the compact is consistent with" IGRA. *Id.* The D.C. Circuit has squarely held, first, that these default approvals are "reviewable" in federal court and, second, that the Secretary "must . . . disapprove" unlawful compacts. *Amador Cty. v. Salazar*, 640 F.3d 373, 381–83 (D.C. Cir. 2011).

### B.    Factual Background

This case concerns a class III gaming compact between the State of Florida and the Seminole Tribe of Florida. *See* Compl. Ex. A (Compact), Dkt. 1-1 (*West Flagler*). Before the Compact took effect, Florida law prohibited wagering on "any trial or contest of skill, speed[,] power or endurance." *See* Fl. Stat. § 849.14 (2020). Although that prohibition contained a narrow exception for horse racing, dog racing, and jai alai, *see id.* § 550.155(1), it barred betting on all major sports, including football, baseball, and basketball, *see id.* § 849.14; *see also* State of Fl. Amicus Br. at 1, 8, Dkt. 28 (*West Flagler*). The Florida Constitution also limited the conditions in which the State could expand sports betting going forward. *See* Fl. Const. art. X, § 30(a). Specifically, it provided that the State could only expand such betting through a "citizens' initiative," *id.* §§ 30(a)–(b), with the caveat that "nothing herein . . . limit[s] the ability of the state or Native American tribes to negotiate gaming compacts" under IGRA, *id.* § 30(c).

The compact in this case expanded the Tribe's ability to host sports betting throughout the State.  In relevant part, the Compact defines "sports betting" to mean "wagering on any past or future professional sport or athletic event, competition or contest," Compact § III(CC); classifies "sports betting" as a "covered game," *id.* § III(F); and authorizes the Tribe "to operate Covered Games on its Indian lands, as defined in [IGRA]," *id.* § IV(A).  The Compact also provides that all in-state wagers on sporting events "shall be deemed . . . to be exclusively conducted by the Tribe at its Facilities where the sports book(s) . . . are located," even those that are made "using an electronic device" "by a Patron physically located in the State but not on Indian lands." *Id.* § III(CC)(2); *see also id.* § IV(A) (providing that "wagers on Sports Betting . . . shall be deemed to take place exclusively where received").  In this manner, the Compact authorizes online sports betting throughout the State.  And because the State has not entered a similar agreement with any other entity, the Compact grants the Tribe a monopoly over both all online betting and all wagers on major sporting events.  *See* Tribe's Mot. to Intervene at 1–3, Dkt. 13 (*West Flagler*).

On June 21, 2021, the Secretary of the Interior received a copy of the Compact.  *See* Compl. Ex. F (Approval Letter) at 1, Dkt. 1-6 (*West Flagler*).  Because the Secretary took no action on it within forty-five days, *see id.*, she approved the Compact by default on August 5, *see* 25 U.S.C § 2710(d)(8)(C).  The next day, the Secretary explained her no-action decision in a letter to the Tribe.  *See generally* Approval Letter.  The letter reasoned that IGRA allows the Tribe to offer online sports betting to persons who are not physically located on its tribal lands. *Id.* at 6–8.  To support that conclusion, the letter noted that IGRA allows states and tribes to negotiate the "allocation of criminal and civil jurisdiction," 25 U.S.C. § 2710(d)(3)(c)(i)-(ii), emphasized that Florida consented to the Compact, and argued that "IGRA should not be an

impediment to tribes that seek to modernize their gaming offerings." *Id.* at 7. At the same time, the letter insisted that Florida residents could not place sports bets while "physically located on *another Tribe's* Indian lands." *Id.* at 8 & n.14 (emphasis added). To do so, it reasoned, would violate IGRA's instruction that gaming is "lawful on Indian lands" only if such gaming is authorized by the "Indian tribe having jurisdiction over such lands." *Id.* (quoting 25 U.S.C. § 2710(d)(1)(A)(i)).

On August 11, the Secretary published notice of the Compact in the Federal Register. *See* Indian Gaming; Approval by Operation of Law of Tribal-State Class III Gaming Compact, 86 Fed. Reg. 44,037 (Aug. 11, 2021). At that point, the Compact took effect and acquired the force of law. *See* 25 U.S.C. § 2710(d)(3)(B). Pursuant to that Compact, as well as a Florida statute that implements its terms, *see* Fl. Stat. § 285.710(13)(b), online sports betting is now available in Florida. Although the Tribe initially represented that it would not offer such betting until November 15, *see* Pls.' Mot. for Summ. J. Ex. C (Savin Decl.) ¶ 23, Dkt. 19-3 (*West Flagler*), it in fact launched online betting on November 1, *see* Pls.' Notice of Material Factual Development at 1 & Ex. A, Dkt. 39 (*West Flagler*).

### C.    Procedural History

On August 16, plaintiffs West Flagler Associates and Bonita-Fort Myers Corporation brought a civil action to challenge the Secretary's approval of the Compact. *See* West Flagler Compl. Both entities own brick-and-mortar casinos in Florida. *See* Savin Decl. ¶¶ 3, 15. To establish Article III standing, they allege that the Compact's allowance for online betting will divert business from their facilities. *See id.* ¶¶ 25–29. On the merits, they argue that the Compact's authorization of online betting violates IGRA, the Unlawful Internet Gambling Enforcement Act (UIGEA), the Wire Act, and the Equal Protection Clause. *See* Compl. ¶¶ 124–

28; Pls.' Mot. for Summ. J. at 18–38, Dkt. 19 (*West Flagler*).  Of these, their leading argument is that the Compact violates IGRA because it authorizes class III gambling outside of "Indian lands."  Pls.' Mot. for Summ. J. at 18 (quoting 25 U.S.C. § 2710(d)(8)(A)).

On September 17, the Tribe moved to intervene for the limited purpose of filing a motion to dismiss.  *See* Tribe's Mot. to Intervene, Dkt. 13 (*West Flagler*).  The Tribe argues that it may intervene as of right because it has an economic interest in the Compact and because the Secretary will not adequately protect that interest.  *See id.* at 9–13; *see also* Fed. R. Civ. P. 24(a). The Tribe further argues that it is an indispensable party to this litigation, *see* Fed. R. Civ. P. 19, but that its sovereign immunity prevents its joinder.  *See* Tribe's Proposed Mot. to Dismiss at 4– 11, Dkt. 13-4 (*West Flagler*).  Finally, the Tribe argues that filing its motion to intervene did not waive its sovereign immunity.  *See id.* at 5–6.  To the contrary, it argues that "limited intervention [is] an appropriate mechanism through which parties may file motions to dismiss under Rule 19 . . . based on sovereign immunity."  Tribe's Mot. to Intervene at 5.  *See also* Tribe's Mot. to Intervene, Dkt. 31, and Proposed Mot. to Dismiss, Dkt. 31-4 (raising the same argument in the *Monterra* litigation).

On September 27, Monterra MF and its co-plaintiffs filed a separate challenge to the Secretary's approval.  *See* Compl., Dkt. 1 (*Monterra*).  All but one of these co-plaintiffs live, work, or own property near Florida casinos.  *See id.* ¶¶ 22–29.  The remaining plaintiff, No Casinos, is a nonprofit organization that opposes the expansion of gambling in Florida.  *See id.* ¶ 30.  To establish Article III standing, these plaintiffs allege that the expansion of gambling in Florida will increase neighborhood traffic, increase criminal activity, and reduce their property values.  *See* Pls.' Mem. in Supp. of Mot. for Summ. J. at 12, Dkt. 37-4 (*Monterra*).  On the merits, they join the *West Flagler* plaintiffs in arguing that the Compact's online gambling rules

violate IGRA, UIGEA, and the Wire Act. *See id.* at 15–23. They also argue that the Compact's expansion of in-person gambling violates both the Florida Constitution and a separate provision of IGRA, which conditions the lawfulness of class III gaming on whether the state "permits such gaming for any purpose by any person, organization, or entity," 25 U.S.C. § 2710(d)(1)(B). *See id.* at 23–28.

The *West Flagler* plaintiffs moved for summary judgment on September 21. Dkt. 19 (*West Flagler*). The *Monterra* plaintiffs followed suit on October 15. Dkt. 35 (*Monterra*). The Secretary then moved to dismiss both plaintiffs' cases for lack of standing. *See* Gov't's Mot. to Dismiss at 8–17, Dkt. 25 (*West Flagler*); Gov't's Mot. to Dismiss at 8–15, Dkt. 35 (*Monterra*). The Secretary also argued that the plaintiffs failed to state a claim under IGRA, that IGRA does not require her to consider questions of state law, and that West Flagler's constitutional argument fails. *See* Gov't's Mot. at 17–31 (*West Flagler*); Gov't's Mot. at 15–19 (*Monterra*). The Secretary did not, however, address whether the online gaming contemplated by the Compact occurs on or off "Indian lands," 25 U.S.C. § 2710(d)(8)(A).

On November 5, the Court held a hearing on the above motions.[2] The cases are now ripe for review.

## II.  LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A

---

[2] At the hearing, government counsel was unable to take a position on the location of online gaming under the Compact. *See* Rough Hr'g Tr. at 51–53. The Court thus directed counsel to file a supplemental brief on the merits on or before November 9. *See* Min. Order of Nov. 5, 2021. Counsel has since done so. *See* Dkt. 40–41 (*West Flagler*); Dkt. 52–53 (*Monterra*).

"material" fact is one with potential to change the substantive outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

In an Administrative Procedure Act case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).  The Court will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or "unsupported by substantial evidence," *id.* § 706(2)(E).

## III.    ANALYSIS

### A.    West Flagler Has Article III Standing

Before reaching the merits of either action, this Court must first determine whether at least one plaintiff has Article III standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  To establish standing, a plaintiff must demonstrate that he has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  The plaintiff must also establish that there is "a causal connection between the injury and the conduct complained of" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 560–61 (internal quotation marks and citation omitted).  Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* at 561.  As such, at the

summary judgment stage, a plaintiff "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal quotation marks and citation omitted).

Under the "basic law of economics," *New World Radio, Inc. v. FCC*, 294 F.3d 164, 172 (D.C. Cir. 2002) (citation omitted), an "actual or imminent increase in competition" establishes an injury in fact, *Am. Inst. of Certified Pub. Accts. v. IRS*, 804 F.3d 1193, 1197 (D.C. Cir. 2015). Litigants accordingly suffer an injury "when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (internal quotation marks and citation omitted). Because "a loss of even a small amount of money is ordinarily an injury," *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017), any increase in competition suffices to establish Article III standing, *see Ipsen Biopharmaceuticals, Inc. v. Becerra*, 2021 WL 4399531, at *8 (D.D.C. Sept. 24, 2021) (citation omitted).

Here, West Flagler alleges that the Compact "will divert business that would have been spent at [its facilities] and cause it to be spent on online sports gaming offered by the Tribe." Savin Decl. ¶ 25. In its view, this diversion will occur because some customers "will prefer the ease of online gaming" to gaming in-person at West Flagler's casino. *Id.* That prediction is reasonable and hardly "speculative." *Lujan*, 504 U.S. at 561. Indeed, West Flagler surveyed its patrons to prove that very point. *See* West Flagler Mot. for Summ. J. Ex. D (Chavez Decl.), Dkt. 19-4. The survey found that between ten and fifteen percent of those patrons would "wager online and shift a non-zero amount of their current gambling spending away from" games West Flagler currently offers. *Id.* at 10. The survey further explained that the above percentage rests on "conservative" assumptions and "likely understates the full universe of individuals whose

behavior would change." *Id.* at 11.  Without discussing those assumptions in detail, the Court reads the survey to show a substantial probability that authorizing online gambling has caused West Flagler some competitive injury.

The Secretary's objections to standing do not persuade.

First, West Flagler's survey supports its bottom-line conclusion.  Although the Secretary challenges the survey's methodology, *see* Gov't's Mot. at 10–15 (*West Flagler*), West Flagler retained an expert to both design the survey's approach and defend it in exacting detail, *see* Chavez Decl. at 3–7.  Many of the Secretary's objections to that approach lack any merit.[3]  And even if they had merit, each of them concerns only to the "magnitude" of West Flagler's competitive injury, "which has no bearing on whether it [] established Article III standing." *Ipsen Biopharmaceuticals*, 2021 WL 4399531, at *8 (citing *Czyzewski*, 137 S. Ct. at 983).  In other words, even if the survey sampled an unrepresentative segment of the casino's patrons, *see* Gov't's Mot. to Dismiss at 11 n.6, it still shows that at least one of those patrons will divert some of his gambling spend to online sports betting.  That "loss of even a small amount of money" is enough for competitive standing. *Czyzewski*, 137 S. Ct. at 983.

Second, West Flagler's injury does not "depend[] on [its] own business decisions." *See* Gov't's Mot. to Dismiss at 15.  It is true that West Flagler could offer sports betting in its casino by partnering with the Tribe. *See id.*  But West Flagler has shown a substantial probability that this partnership would leave it less profitable than it was before. *See* Savin Decl. ¶¶ 34–38.

---

[3] For instance, the Secretary challenges the inference, from a respondent's answer that he would "open an online sports wagering account," Chavez Decl. at 9, that he would "*actually* place bets online," Gov't's Mot. at 13 (emphasis in original).  But placing bets online is the obvious purpose of opening an online betting account.  And nothing in the requirement of an "imminent" injury, as described in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), requires ignoring this common-sense connection.

Under the partnership, the Tribe would place sports-betting kiosks in West Flagler's casino and receive up to 40% of the revenue that the kiosks generate. *See* Compact § III(CC)(3)–(4); Savin Decl. ¶ 36. That arrangement would both require substantial upfront investments and substantially decrease the average, long-term yield from the games West Flagler offers. *See* Savin. Decl. ¶¶ 34, 36–37. For those reasons, forcing West Flagler to choose between entering the partnership and losing further competitive ground is itself an injury. That injury is amplified by the Secretary's earlier suggestion that this kind of partnership may independently violate IGRA.[4] *See* Approval Letter at 11–12. And in any event, even if West Flagler could offer in-person sports betting on the same terms as the Tribe, its inability to host *online* sports betting would still create a competitive injury. *See supra*.

For the reasons above, the Court finds that West Flagler has adequately established a competitive injury. It also finds that this injury was both caused by the conduct challenged in this action and redressable by a favorable decision on the merits. *See Lujan*, 504 U.S. at 560–61. On that first point, there is a "causal connection" between West Flagler's injury and the Secretary's approval of the gaming Compact, *id.*, without which the Tribe could not offer online sports betting, 25 U.S.C. § 2710(d)(1)(C). And on the second, setting aside the Secretary's approval would prevent the Tribe from offering such betting, at least under the current Compact. Because that result would fully redress West Flagler's injury, West Flagler has Article III standing. *See Lujan*, 504 U.S. at 560–61.

This Court need not address whether the other plaintiffs in these actions have standing.

---

[4] The Secretary suggested that this kind of partnership may violate 25 U.S.C. § 2710(b)(2)(A) by giving non-Indian entities a proprietary interest in Indian gaming. *See* Approval Letter at 11–12. The Secretary never addresses the tension between encouraging West Flagler to enter such a partnership in this litigation and advising that such partnerships are unlawful elsewhere.

As a general matter, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). Although the *West Flagler* and *Monterra* suits raise different claims, they seek the same relief—principally, the vacatur of the Secretary's default approval. *See* Compl. at 42 (*West Flagler*); Compl. at 37, Dkt. 1 (*Monterra*). And because the Court will grant that relief in the *West Flagler* action, it has no occasion to consider the separate arguments in the *Monterra* filing, let alone whether the *Monterra* plaintiffs independently have Article III standing. *See Louie v. Dickson*, 964 F.3d 50, 55 (D.C. Cir. 2020) (noting that a case is moot when a court "cannot grant any relief beyond that already afforded").

### B.      The Tribe Is Not an Indispensable Party

Next, the Court must resolve the Tribe's motion to intervene, *see* Dkt. 13, and motion to dismiss, *see* Dkt. 13-4. As both parties acknowledge, federal courts disagree on whether a sovereign may intervene in an action while preserving its sovereign immunity. *Compare*, *e.g.*, *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483 (6th Cir. 2002) (holding that "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction"), *with MGM Glob. Resorts Dev., LLC v. DOI*, 2020 WL 5545496, at *5–6 (D.D.C. Sept. 16, 2020) (declining to adopt an "'all or nothing' approach to intervention"). At the same time, controlling precedent makes clear that courts may address whether a person is required in or indispensable to an action *sua sponte*. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join."); *see also Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 772 n.6 (D.C. Cir. 1986) (finding an "independent duty to raise" an "indispensable party claim" based on tribal immunity). In this case, the Tribe moves to intervene solely to argue

for dismissal on the ground that it is a required and indispensable party.  Accordingly, to conserve judicial resources, the Court will exercise its discretion to decide whether the Tribe is a required and indispensable party before resolving its motion to intervene.

The Federal Rules of Civil Procedure require joining each person that has "an interest relating to the subject of the action" if that person is subject to suit and if "disposing of the action in [his] absence" might "impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  The Tribe is a "required party," in this respect, because it "has an interest in the validity of [its] compact . . ., and [its] interest would be directly affected by the relief that [West Flagler] seeks."  *Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kansas v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995).  The Federal Rules further provide that, if a required party "cannot be joined," the court must "determine whether, in equity and good conscience, the action . . . should be dismissed."  Fed. R. Civ. P. 19(b).  In this case, the Tribe cannot be joined because it "enjoys sovereign immunity."  *Kickapoo Tribe*, 43 F.3d at 1495; *see Bay Mills Indian Cmty.*, 572 U.S. at 788 (noting that tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers" (citation omitted)).  Accordingly, to determine whether this action "should be dismissed," the Court must determine whether "equity and good conscience" permit the action to proceed in the Tribe's absence.  Fed. R. Civ. P. 19(b).

Federal Rule 19(b) lists four factors that bear on whether a party is indispensable.  *See* Fed. R. Civ. P. 19(b).  They are, first, "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;" second, "the extent to which any prejudice could be lessened or avoided;" third, "whether a judgment rendered in the person's absence would be adequate;" and fourth, "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  *Id.*  Although the Federal Rules present these

factors as non-exclusive, the D.C. Circuit has held that "there is very little room for balancing of other factors" where a necessary party is immune from suit.  *Kickapoo Tribe*, 43 F.3d at 1496.

Beginning with the first factor, resolving this case in the present posture would not prejudice the Tribe.  *See* Fed. R. Civ. P. 19(b)(1)–(2).  Although the Tribe argues that this case implicates its sovereign immunity, *see* Proposed Mot. to Dismiss at 8–9, the Tribe is not a party to this case, and the plaintiffs make no attempt to bind either the Tribe or its agents.  *See Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009) ("[S]overeign immunity is an immunity from suit."); *see also Mowrer v. DOT*, 14 F.4th 723, 741–43 (D.C. Cir. 2021) (Katsas, J., concurring) (explaining that sovereign immunity is "effectively a rule of personal jurisdiction").  Further, unlike in *Republic of Philippines v. Pimentel*, this case does not resolve the ownership of any asset to which the Tribe has a "nonfrivolous, substantive claim," which would indirectly violate the Tribe's immunity.  553 U.S. at 868–69.  Instead, the plaintiffs challenge a decision that IGRA commits to the Secretary and for which that statute provides "law to apply" in federal court, *Amador Cty.*, 640 F.3d at 381 (citing 25 U.S.C. § 2710(d)(8)(C)).  In these circumstances, holding that the *federal* government erred in applying *federal* law would fully respect the Tribe's sovereign immunity.

Moreover, although the Tribe has a financial interest in the Compact, it is unclear how proceeding in its absence would harm that interest.  The first factor in Rule 19(b) asks whether a party suffers prejudice from the fact that an adverse decision is "rendered in [its] absence," not simply from the fact that a decision is adverse.  Fed. R. Civ. P. 19(b)(1); *see also* Fed. R. Civ. P. 19(a)(1)(B)(i) (similarly asking whether "a person's absence may . . . impair or impede [his] ability to protect [an] interest").  Here, the Tribe's absence is not prejudicial because both the Secretary and the State of Florida have defended the Compact on its merits.  *See* Gov't Mot. to

Dismiss at 17–31; Fl. Amicus Br., Dkt. 28; Gov't's Suppl. Memo, Dkt. 41 (all *West Flagler*).

The Secretary and the State share the Tribe's position on the key issue in this case—*i.e.*, that the

Compact is consistent with IGRA.  The Tribe never identifies how its litigation interests differ

from those of the other sovereigns.  *See* Tribe's Reply in Supp. of Mot. to Intervene at 11–13,

Dkt. 24 (*West Flagler*).  And although the Tribe asks this Court to simply assume that their

interests conflict, *see id.* at 11, its request is inconsistent with applying Rule 19(b) based on

"practical considerations in the context of particular litigation," as controlling precedent requires,

*Kickapoo Tribe*, 43 F.3d at 1495 (citation omitted).  In these circumstances, where there is "no

conflict . . . between the Secretary's interest and the interest of the nonparty Tribe[]," the D.C.

Circuit has held that the Secretary may "adequately represent" the Tribe's interests.[5]  *Ramah*

*Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996); *see also Sac & Fox Nation*

*of Missouri v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) (finding that the potential prejudice

to a tribe's interest was reduced by "the presence of the Secretary as a party defendant" with

"virtually identical" interests).  The Court thus finds that the first Rule 19(b) factor favors

permitting this litigation to proceed.

The second Rule 19(b) factor does not alter this analysis.  Having found that the extent of

any prejudice to the Tribe does not warrant dismissal, it makes little sense to ask whether

"protective provisions in [this Court's] judgment" or "shaping [its] relief" would lessen that

---

[5] The Tribe cites *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015), to argue that courts "look skeptically on government entities serving as adequate advocates for private parties."  *Id.* at 321; *see* Tribe's Proposed Mot. to Dismiss at 3–4.  But *Crossroads* noted that skepticism in explaining why an absent party could intervene under Federal Rule of Civil Procedure 24(a), which is allowed more liberally than dismissal under Rule 19(b).  *See id.* (noting that the adequacy requirement in Rule 24(a) is "not onerous" and that movants "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation").

prejudice.  Fed. R. Civ. P. 19(b)(2).  The ability to minimize prejudice, in other words, bears on indispensability only when there is prejudice to be minimized.

Moreover, because the Court can issue an "adequate" judgment in the Tribe's absence, the third Rule 19(b) factor also favors allowing this action to proceed.  Fed. R. Civ. P. 19(b)(3).  As used in this context, "adequacy refers to the public stake in settling disputes by wholes, whenever possible."  *Pimentel*, 553 U.S. at 870 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968)).  The adequacy requirement thus furthers the "social interest in the efficient administration of justice and the avoidance of multiple litigation."  *Id.* (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 738 (1977)).  Here, the *West Flagler* plaintiffs challenge an action by the Secretary and obtaining relief against the Secretary would fully redress their injury.  Those plaintiffs have indicated no interest in suing the Tribe, and the Tribe's sovereign immunity would block most efforts to that effect, *see Bay Mills*, 572 U.S. at 788–89.  Accordingly, there is no possibility that the failure to join the Tribe would produce "multiple litigation."  *Pimentel*, 553 U.S. at 870 (citation omitted).

Finally, because the plaintiffs would have no "adequate remedy if the action were dismissed for nonjoinder," the fourth Rule 19(b) factor also favors proceeding.  Fed. R. Civ. P. 19(b)(4).  Dismissing this suit would not allow the plaintiffs to proceed in an alternate forum, for example, after curing a defect in personal jurisdiction.  To the contrary, holding that the Tribe is indispensable in this case, where the Tribe has made no particularized showing of prejudice, would require treating tribes as indispensable in *every* case that challenges the Secretary's approval of a gaming compact.  And under that rule, those approvals will *never* be subject to judicial review because the nonjoinder of a tribe will *always* require dismissal.  The D.C. Circuit,

which reached the merits in another compact-approval case, has not adopted that extreme and unworkable conclusion.  *See Amador Cty.*, 640 F.3d at 378–84.

The Tribe's remaining arguments, both of which rely on unpublished and out-of-circuit decisions, do not persuade.  To start, the Tribe invokes *Friends of Amador County v. Salazar*, 554 F. App'x 562 (9th Cir. 2014), which held that the Secretary could not adequately represent a tribe's interest in a challenge to an IGRA gaming compact, *see id.* at 564–66.  But there, the government's responses at a status conference "caused the district court to suspect" that the government would litigate the case in line with "its national Indian policy, even if contrary to the Tribe's interests."  *Id.* at 564.  Consistent with that suspicion, the government later failed to "appear at oral argument or file any brief in the appeal."  *Id.*  There is no similar evidence of "divergent interests" in this case.  *Id.*  The Tribe also cites a decision from the Northern District of Florida, which found that a tribe was indispensable to an IGRA compact-approval case while taking no position on whether the tribe's interests diverged from the Secretary's.  *See PPI, Inc. v. Kempthorne*, No. 4:08-cv-248, 2008 WL 2705431 (N.D. Fl. 2008).  But that decision erred in holding that the judicial review of a no-action approval would violate the tribe's "sovereign right not to have its legal duties judicially determined without consent," *id.* at *4, and also failed to address most of the considerations discussed above.  Accordingly, the Court will not follow the decision here.

For the reasons above, the Court finds that "equity and good conscience" permit this action to continue in the Tribe's absence.  Fed. R. Civ. P. 19(b).  This conclusion resolves the Tribe's motion to intervene.  Because the Tribe moved to intervene solely to move for dismissal, because the Tribe seeks dismissal on the sole ground that it is indispensable, and because the Tribe is not indispensable, the Tribe's motion for limited intervention is denied as moot.

C.      **The Compact violates IGRA by authorizing gaming off Indian lands**

On the merits, it is well-settled that IGRA authorizes sports betting only on Indian lands. This requirement stems from IGRA § 2710(d)(8)(A), which authorizes the Secretary to approve compacts "governing gaming on Indian lands."  25 U.S.C. § 2710(d)(8)(A).  It is repeated in IGRA § 2710(d)(1), which lists the conditions under which "[c]lass III gaming activities shall be lawful on Indian lands."  *Id.* § 2710(d)(1).  Altogether, over a dozen provisions in IGRA regulate gaming on "Indian lands,"[6] and none regulate gaming in another location.  Indeed, if there were any doubt on the issue, the Supreme Court has emphasized that "[e]verything—literally everything—in IGRA affords tools . . . to regulate gaming on Indian lands, and nowhere else." *Bay Mills*, 572 U.S. at 795.

It is equally clear that the Secretary must reject compacts that violate IGRA's terms.  The D.C. Circuit addressed this very issue in *Amador County v. Salazar*, which held that IGRA imposes "an obligation on the Secretary to affirmatively disapprove any compact" that is inconsistent with its terms, 640 F.3d at 382.  The Circuit drew this obligation from IGRA § 2710(d)(8)(C), which provides that secretarial inaction may approve a compact "only to the extent the compact is consistent with" the Act, 25 U.S.C. § 2710(d)(8)(C).  *See Amador County*, 640 F.3d at 381–82.  And in explaining the obligation, the court held that the above provision creates "law to apply" for the review of secretarial inaction and emphasized that the Secretary "may not allow a compact that violates [the provision's] caveat to go into effect."  *Id.* at 381. Because *Amador County* controls here, and because IRGA authorizes gaming only on Indian lands, it follows that the Secretary must reject any gaming compact that authorizes gaming at any

---

[6] These provisions include 25 U.S.C. § 2710(a)(1), (a)(2), (b)(1), (b)(2), (b)(4), (d)(1), (d)(2)(A), (d)(2)(C), (d)(3)(A), (d)(5), (d)(7)(A)(ii), (d)(8)(A).

other location.

The instant Compact attempts to authorize sports betting both on and off Indian lands.  In its own words, the Compact authorizes such betting by patrons who are "physically located in the State [of Florida] but *not on* [*the Tribe's*] *Indian Lands*."  Compact § III(CC)(2) (emphasis added).  That italicized phrase is no slip of the tongue, but instead describes the basic consequence of authorizing online betting throughout the State.  Most locations in Florida are not Indian lands, which IGRA defines to mean lands "within the limits of any Indian reservation," "held in trust by the United States for the benefit of any Indian tribe," or "over which an Indian tribe exercises governmental power," 25 U.S.C. § 2703(4).  And although the Compact "deem[s]" all sports betting to occur at the location of the Tribe's "sports book(s)" and supporting servers, *see* Compact § III(CC)(2), this Court cannot accept that fiction.  When a federal statute authorizes an activity only at specific locations, parties may not evade that limitation by "deeming" their activity to occur where it, as a factual matter, does not.  *See CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 291 (2011) ("[A] statute should be interpreted so as not to render one part inoperative.").  Accordingly, because the Compact allows patrons to wager throughout Florida, including at locations that are not Indian lands, the Compact violates IGRA's "Indian lands" requirement.

The Supreme Court's decision in *Michigan v. Bay Mills Indian Community* confirms that conclusion.  In that case, the State of Michigan sought to enjoin class III gaming at a casino that was operated by an Indian tribe but located outside Indian lands.  *Bay Mills*, 572 U.S. at 791–93.  To do so, it invoked a provision of IGRA that abrogates sovereign immunity for "gaming activity located on Indian lands," 25 U.S.C. § 2710(d)(7)(A)(ii), under the theory that the casino was "authorized, licensed, and operated" from the tribe's reservation, *Bay Mills*, 572 U.S. at 792.

The Court held that the provision did not apply.  The Court explained that the phrase "gaming activity" in IGRA describes "the stuff involved in playing class III games," not the administrative actions that support them.  *Id.*  And because the casino's gaming activity occurred *off* Indian lands, the Court held that IGRA's abrogation of immunity for gaming *on* Indian lands did not apply.  *Id.* at 791–792.  This same reasoning dooms the instant Compact, which rests on the theory that online betting occurs not where patrons actually play class III games, but instead at the location of the Tribe's sportsbook and servers.  Because the Compact authorizes patrons to wager *off* Indian lands, and because those bets clearly qualify as "gaming," 25 U.S.C. § 2710(d)(8)(A), *Bay Mills* makes clear that the instant Compact authorizes gaming *off* Indian lands.

The Secretary's Approval Letter, as submitted to the Tribe on August 6, 2021, lacks a plausible defense of the Compact's scope.  First, the letter notes that IGRA allows gaming compacts to govern the "application" of state and tribal laws that are relevant to class III gaming and the "allocation of criminal and civil jurisdiction" between states and tribes with respect to enforcing those laws, 25 U.S.C. § 2710(d)(3)(c)(i)-(ii).  *See* Approval Letter at 7.  But those provisions, which concern states and tribes' regulatory responsibilities, say nothing about whether gaming activity occurs on "Indian lands," 25 U.S.C. § 2710(d)(8)(A).  Second, the Approval Letter notes that "[m]ultiple states have enacted laws that deem a bet to have occurred at the location of the [hosting] servers" and argues that the "Compact reflects this modern understanding of how to regulate online gaming."  Approval Letter at 8.  But regardless of what states have done in their own jurisdictions, changes in state law do not affect the federal-law issues in this case.  Finally, the Approval Letter argues that online sports betting has practical benefits.  *See id.* at 8–9.  But "[s]uch policy arguments, though proper for legislative

consideration, are irrelevant" here.  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 470 (1978).[7]

The Secretary's lead argument in this litigation fares no better.  That argument insists that the Compact authorizes only the online gaming activities that occur on Indian lands, including the receipt of online sports bets that are placed elsewhere.  *See* Gov't's Supplementary Mem. at 9, Dkt. 41 (*West Flagler*).  The Secretary further argues that a Florida statute permits the remaining gaming activities, which include placing those bets in the first instance.  *See id.* at 9–10 (citing Fl. Stat. § 285.710(13)(b)).  Finally, the Secretary argues that the sole purpose of the Compact's "deeming" language is to divide regulatory responsibilities between the State and the Tribe.  *See id.* at 12.  For these reasons, the Secretary argues that all sports betting in Florida, including both placing bets and processing them, is lawful where it occurs.

The principal problem with the above argument is that it is incompatible with the Compact's text.  The interpretation of tribal-state gaming compacts is a question of federal law.  *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1075–82 (9th Cir. 2010) (reviewing the interpretation of a compact *de novo*).  And contrary to the Secretary's position, the plain text of the Compact affirmatively authorizes sports betting both on and off Indian lands.  This authorization appears in Section IV(A) of the Compact, which provides the Tribe "is authorized to operate Covered Games on its Indian lands," Compact § IV(A)—a category that includes sports betting, *see id.* § III(F)(5).  Section IV(A) then provides, in its very next sentence, that sports wagers "made by players physically located within the State . . . shall be deemed to take place . . . on Indian Lands" at the "location of the servers or

---

[7] The Approval Letter also argues that patrons may not wager online while "physically located on another Tribe's Indian lands," Approval Letter at 8 & n.14, on the theory that IGRA allows gaming "on Indian lands" only if that gaming is authorized by the "Indian tribe having jurisdiction over such lands," *id.* (quoting 25 U.S.C. § 2710(d)(1)(A)(i)).  That argument concedes that online betting occurs at the bettor's location.

other devices used to conduct such wagering activity." *Id.* § IV(A).  By simultaneously authorizing sports betting on Indian lands and deeming gaming across Florida to occur on those same lands, Section IV(A) purports to authorize sports betting throughout the State.

Other provisions in the Compact make clear that the "deemed" clause in Section IV(A) plays an authorizing, rather than regulatory role.  *See* Gov't's Suppl. Mem. at 4.  The title of Section IV, "Authorization and Location of Covered Games," suggests that the location of gaming is relevant to its authorization.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998).  Other provisions of the Compact carefully divide regulatory responsibilities between the Tribe and the State.  These responsibilities include promulgating rules on who can participate in sports betting, *see id.* § V(A)(2)(e)–(f), the determination of odds "at which wagers may be placed," *id.* § V(A)(2)(d), the reporting of abnormal betting activity, *see id.* § V(A)(2)(j), and the prevention of compulsive gambling, *see id.* § V(D).  They also include the resolution of patron disputes, *see id.* § VI, the enforcement of the Compact's provisions, *see id.* § VII, and the regular auditing of gaming activities, *see id.* § VIII.  Because the Compact allocates these responsibilities in such fine detail, the Court will not ascribe that same function to the Compact's "deemed" clause, which would render that clause superfluous, *see Corley v. United States*, 556 U.S. 303, 314 (2009).

The final problem with the Secretary's argument is that, although it attempts to read the Compact *in pari materia* with Florida law, its account of that law is inconsistent with the Florida Constitution.  Article X, Section 30 of that Constitution provides that the State may expand sports betting only through a citizen's initiative or an IGRA gaming compact.  *See* Fl. Const. art. X, §§ 30(a)–(c).  And because no citizens' initiative has approved online sports betting, such betting can be lawful in Florida only if it is authorized by a gaming compact.  *See id.* Against this

backdrop, it makes little sense to argue that the Florida Legislature authorized sports betting independently of the instant Compact. *See* Gov't's Suppl. Mem. at 4. To the contrary, the better explanation of the Legislature's conduct is that it intended to remove any state-law barriers to the gaming it understood the Compact to authorize. *See* Fl. Stat. § 285.710(13)(b) (providing that games "conducted pursuant to" the Compact "do not violate the laws of this state"). It is important to be clear: this Court is not issuing a final decision on any question of Florida constitutional law. Nonetheless, to the degree that the Secretary invokes Florida law to explain the Compact's terms, her argument misses the mark.

For the reasons above, the Court concludes that the Compact authorizes gaming both on and off Indian lands. The Compact accordingly violates IGRA's "Indian lands" requirement, which means that the Secretary had an affirmative duty to reject it. This disposition warrants granting the *West Flagler* plaintiffs' motion for summary judgment and eliminates any need to address their other arguments on the merits.

### D.    The Appropriate Remedy Is to Vacate the Compact

The last issue in this case is the plaintiffs' remedy. The issue is governed by § 706 of the APA, which directs courts to "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A). The "agency action" under review is the Secretary's default approval of the Compact. *See* Compl. ¶ 1 (*West Flagler*). *Amador County* confirms that vacating the Secretary's approval is appropriate. *See* 640 F.3d at 378 (explaining that, if a plaintiff successfully challenges a default approval, "the Secretary would have to reject the compact"). And because the Tribe may offer online gaming "only with secretarial approval of the compact," *id.*; *see also* 25 U.S.C. § 2710(d)(1)(C), vacating the Secretary's approval will fully redress the *West Flagler* plaintiffs' injury. For those reasons, the Court concludes that the

appropriate remedy is to set aside the Secretary's default approval of the Compact.[8]

The remedy also resolves the *Monterra* action.  It is true that the *Monterra* plaintiffs have challenged the Compact under a broader legal theory than is addressed in this opinion.  *See* Mem. in Supp. at 23–28 (*Monterra*).  But those plaintiffs seek the same relief that this opinion provides.  *See* Compl. ¶ 139 (*Monterra*) (requesting an "order setting aside defendants' unlawful approval of the 2021 Compact").  And because vacating the Compact fully redresses the injuries that those plaintiffs allege, their request for summary judgment on other grounds is dismissed as moot.  *See Dickson*, 964 F.3d at 55.

*          *          *

In the Court's understanding, the practical effect of this remedy is to reinstate the Tribe's prior gaming compact, which took effect in 2010, *see* Indian Gaming, 75 Fed. Reg. 38,833 (July 6, 2010), and which may remain in effect until 2030, *see* Compl. Ex. D. (Prior Compact) § XVI(B), Dkt. 1-4 (*West Flagle*r).  *See* Fl. Stat. § 285.710(3)(b).  In that respect, this decision restores the legal status of class III gaming in Florida to where it was on August 4, 2021—one day before the Secretary approved the new compact by inaction.  Because the more recent Compact is no longer in effect, continuing to offer online sports betting would violate federal law.  *See* 25 U.S.C. § 2710(d)(1)(C) (providing that "[c]lass III gaming activities shall be lawful on Indian lands only if . . . [they are] conducted in conformance with a Tribal-State compact . . . that is in effect").

---

[8] At oral argument, the *West Flagler* plaintiffs suggested that the Court could set aside the compact only to the extent that it conflicts with IGRA.  But the Secretary forfeited any request for severance by omitting it from its motions to dismiss, its corresponding replies, and its supplemental briefs.  In any event, the Court reads *Amador County*, which identifies the appropriate relief in this case as ordering the Secretary "to reject the compact," as foreclosing line-by-line review of the Compact's terms.  *See* 640 F.3d at 378.

This decision does not foreclose other avenues for authorizing online sports betting in Florida. The State and the Tribe may agree to a new compact, with the Secretary's approval, that allows online gaming solely on Indian lands. Alternatively, Florida citizens may authorize such betting across their State through a citizens' initiative. *See* Fl. Const. art. X, §§ 30(c). What the Secretary may not do, however, is approve future compacts that authorize conduct outside IGRA's scope. And IGRA, as the Supreme Court explained in *Bay Mills*, authorizes gaming "on Indian lands, and nowhere else." 572 U.S. at 795.

## CONCLUSION

For the foregoing reasons, the *West Flagler* plaintiffs' Motion for Summary Judgment is granted, the *Monterra* plaintiffs' Motion for Summary Judgment is denied as moot, the Tribes' Motions to Intervene are denied, and the Secretary's Motions to Dismiss are denied. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

November 22, 2021

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WEST FLAGLER ASSOCIATES *et al.*,

          *Plaintiffs*,

    v.

DEB HAALAND,
Secretary, U.S. Department of the Interior,
*et al.*,

          *Defendants*.

No. 21-cv-2192 (DLF)

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is

**ORDERED** that the plaintiffs' Motion for Summary Judgment, Dkt. 19, is **GRANTED**.

It is further

**ORDERED** that the Seminole Tribe of Florida's Motion for Limited Intervention, Dkt. 13, is **DENIED** as moot.  It is further

**ORDERED** that the defendants' Motion to Dismiss, Dkt. 25, is **DENIED**.

The Clerk of Court is directed to close this case.

DABNEY L. FRIEDRICH
United States District Judge

November 22, 2021